UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NICHA LEASER, et al.,                            No. 2:20-cv-02502-TLN-AC

        Plaintiffs,

    v.                                                   **ORDER**

PRIME ASCOT, L.P, et al.,

        Defendants.

This matter is before the Court on Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, Prime Administration, LLC, Prime Campina, L.P., Prime Campina Acquisition, LLC, Prime Cassanna, L.P., Prime Oceanside Acquisition, LLC, Prime Clairemont, L.P., Prime Clairemont Acquisition, LLC, Prime Detroit, LLC, Prime Mesa, L.P., Prime Old County, L.P., Prime Old County Acquisition, LLC, Prime Peninsula, L.P., Prime Channel Islands Acquisition, LLC, Prime Rivershore SPC, LLC, Prime Spain Glen Drive, LLC, Prime Spectrum, LLC, Prime Tennyson, LLC, Prime Toyon Housing Partners, L.P., Prime Toyon Acquisition, LLC, Prime Vista Montana, LLC, Prime Waterview, LLC, Prime Wellington Park, LLC, Prime/Coral Bay, L.P., Coral Acquisition, Inc., Prime Devonshire SPE, LLC, Prime/Scrc, L.P., Prime/Scrc SPE, L.P., Prime/South Coast, L.P., Prime/South Coast Holding, LLC, and Prime Victoria, LLC's (collectively, "Defendants") Motions to Dismiss.  (ECF Nos. 6, 16.)  Plaintiffs Nicha Leaser ("Leaser"), Atchara Wongsaroj

("Wongsaroj"), Katina Magee ("Magee")[1], and Joyce Eisman ("Eisman") (collectively, "Plaintiffs") filed oppositions.  (ECF Nos. 11, 17.)  Defendants filed replies.  (ECF Nos. 12, 19.)  Also before the Court is Defendants' Motion to Stay Discovery.  (ECF No. 20.)  This motion is also fully briefed.  (ECF Nos. 21, 23.)  For the reasons set forth below, Defendants' First Motion to Dismiss (ECF No. 6) is GRANTED in part and DENIED in part, Defendants' Second Motion to Dismiss (ECF No. 16) is DENIED, and Defendants' Motion to Stay Discovery (ECF No. 20) is DENIED as moot.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Leaser, Wongsaroj, and Magee were tenants at an apartment complex located at 2000 Ascot Parkway, Vallejo, California, 94551, known as Blue Rock Village ("Blue Rock").  (ECF No. 1-2 at 4–6.)  Eisman was a tenant at an apartment complex located at 6200 W. 3rd Street, Los Angeles, California, 90036, known as Park LaBrea.  (*Id.*)  Plaintiffs allege their "class action lawsuit is brought on behalf of all the tenants Defendants systematically overcharged for improper and unlawful late fees, early termination fees, improper rent charges, and from whom Defendants withheld full, fair, and timely refunds of security deposits."  (*Id.* at 3–4.)  Plaintiffs further allege "Defendants' management policies and practices . . . have led to disgusting infestations of vermin at these properties, which Defendants caused and routinely failed to disclose to prospective tenants, including Plaintiffs."  (*Id.*)

On May 5, 2018, Plaintiffs filed the instant action in San Francisco County Superior Court.[2]  (ECF No. 1-1.)  On November 20, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC") in Solano County Superior Court.[3]  (ECF No. 1-2.)  The FAC alleges the

---

[1]     Both parties spell this Plaintiff's name as "Katina McGee."  (ECF No. 6 at 11; ECF No. 11 at 6.)  However, it is spelled "Katina Magee" in Plaintiffs' FAC.  (ECF No. 1-2.)  For the purposes of this Order, the Court will use "Katina Magee."  Plaintiffs are directed to provide the correct spelling of this name in any and all future filings related to the instant case.

[2]     The initial Complaint was filed against Prime Ascot, L.P., Prime Ascot Acquisition, LLC, and Prime Administration, LLC (the "Original Defendants"), who Plaintiffs allege owned or managed Blue Rock.  (ECF No. 1-1.)

[3]     The action was transferred to Solano County Superior Court on December 26, 2018.  The FAC also names Prime/Park LaBrea Titleholder, LLC as the entity from whom Eisman leased an

2

1   following claims: (1) tortious breach of warranty of habitability; (2) tortious breach of warranty

2   of quiet possession and enjoyment; (3) negligence; (4) nuisance; (5) intentional

3   misrepresentation; (6) breach of contract; (7) violation of California Civil Code § 1950.5 ("§

4   1950.5"); and (8) violation of the California Unfair Competition Law ("UCL"), California

5   Business & Professions Code §§ 17200–10.  (*Id.* at 23–37.)

6        On December 17, 2020, Defendants removed the action to this Court pursuant to the Class

7   Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (ECF No. 1.)  On December 23, 2020,

8   Defendants filed the first motion to dismiss.  (ECF No. 6.)  On May 13, 2021, Defendants filed

9   the second motion to dismiss.  (ECF No. 16.)  On June 9, 2021, Defendants filed the motion to

10  stay discovery.  (ECF No. 20.)  The Court will first address the motions to dismiss and then

11  address the motion to stay discovery.

12        **II.    MOTIONS TO DISMISS**

13            A.    Legal Standards

14                 i.    *Motion to Dismiss Under Federal Rule of Civil Procedure ("Rule")*

15                      *12(b)(1)*

16        A Rule 12(b)(1) motion challenges a federal court's jurisdiction to decide claims alleged

17  in the complaint.  Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any

18  time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  If a plaintiff

19  lacks standing under Article III of the United States Constitution, then the Court lacks subject

20  matter jurisdiction and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't*,

21  523 U.S. 83, 102–04 (1998).  To satisfy Article III standing, a plaintiff must allege: (1) an injury-

22  in-fact that is concrete and particularized, as well as actual or imminent, not conjectural or

23  hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is

24  redressable by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48

25  (2016); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  Plaintiff must "clearly

26

27  apartment.  Prime/Park LaBrea Titleholder, LLC and the Original Defendants shall be referred to
    as the "Blue Rock/Park LaBrea Defendants."  The remaining 29 Defendants shall be referred to
28  as the "Standing Defendants."

1   . . . allege facts demonstrating each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal

2   quotations omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

3                    *ii.        Motion to Dismiss Under Rule 12(b)(6)*

4           A motion to dismiss for failure to state a claim upon which relief can be granted under

5   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

6   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

7   "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

8   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

9   complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

10  which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

11  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

12  motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

13  *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

14          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

15  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

16  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

17  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

18  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

19  relief."  *Twombly*, 550 U.S. at 570.

20          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

21  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

22  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

23  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

24  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

25  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

26  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

27  statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

28  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

                                             4

been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### iii.     Motion to Strike Under Rule 12(f)

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court will only consider striking a defense or allegation if it fits within one of these five categories. *Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in

federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also* Fed. R. Civ. P. 15(a)(2). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See generally Whittlestone, Inc.*, 618 F.3d at 974–75.

### B.     First Motion to Dismiss

Defendants argue in the first motion to dismiss that: (1) Plaintiffs lack standing to sue any of the Standing Defendants because they had no lease or other dealings with them; (2) the class allegations against the Standing Defendants should be stricken pursuant to Rule 12(f) or Rule 23(d)(1)(D); (3) Plaintiffs cannot state a claim against the Standing Defendants under a secondary liability theory and all related allegations should be stricken; (4) the "unfairness" prong of the UCL fails against all Defendants because the FAC does not allege an unfair business practice; and (5) the security deposit claim fails against any of the Defendants besides Plaintiffs' actual landlords (Prime Ascot and Prime/Park LaBrea Titleholder, LLC).

With respect to the motion to strike the class allegations under Rule 12(f) or Rule 23(d)(1)(D), the Court DENIES it as premature. *See In re Land Rover LR3 Tire Wear Prods. Liability Litig.*, No. 09-2008 AG, 2012 WL 5473736, at *2 (C.D. Cal. Oct. 24, 2012) (finding granting of motions to strike class allegations "rare before class certification" and "more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record" (internal quotation omitted)); *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (stating that courts have made it clear that "dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery'" (citations omitted)). The Court will address each of the remaining

1    arguments in turn.

2                           i.       *Standing*

3          Defendants argue Plaintiffs "do not allege any lease agreement, contact[,] or interaction

4    with any of the Standing Defendants" and Plaintiffs' injuries "can be linked or traced *solely* to the

5    Blue Rock/Park LaBrea Defendants."  (ECF No. 6 at 15 (emphasis in original).)  Defendants

6    contend there must be at least one named plaintiff who can assert a claim against every named

7    defendant in class action cases, even if "defendants are closely-related corporate entities or

8    engaged in common, agreed-upon practices."  (*Id.* at 15–16.)  Defendants maintain, therefore, that

9    the § 1950.5 and UCL claims must be dismissed with respect to the Standing Defendants.  (*Id.* at

10   17.)  Defendants further argue *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973),

11   and its progeny do not confer standing to Plaintiffs through the juridical links doctrine, which

12   only applies in a Rule 23 context.[4]  (*Id.*)

13         In opposition, Plaintiffs assert Defendants interpret Article III standing narrowly, which

14   ignores theories of secondary liability, such as aiding and abetting, which are available in UCL

15   claims.  (ECF No. 11 at 11–13.)   Plaintiffs further argue they have sufficiently pleaded

16   traceability as the Standing Defendants "aided and abetted" Prime Administration, LLC and the

17   other Defendants.[5]  (*Id.* at 14–15.)

18         In reply, Defendants argue (1) Ninth Circuit law provides a plaintiff does not have

19   standing to sue if she cannot trace an alleged injury to a defendant's actions and (2) allegations of

20   a conspiracy and aiding and abetting are insufficient if the defendant had nothing to do with the

21   [4]     The Court agrees.  The juridical links doctrine provides that "a plaintiff who has no cause
22   of action against the defendant [cannot] fairly and adequately protect the interests of those who do
     have such causes of action," except where "all injuries are the result of a conspiracy or concerted
23   schemes between the defendants" and where "all defendants are 'juridically related' so that a
     single resolution of the dispute would be expeditious."  *La Mar*, 489 F.2d at 466.  While some
24   courts have applied the juridical links doctrine to standing, the Ninth Circuit has not.  *See*
     *Bahamas Surgery Ctr., LLC v. Kimberly–Clark Corp.*, 820 F. App'x 563, 566–67 n.4 (9th Cir.
25   2020) (finding the juridical links doctrine "irrelevant" to the question of the plaintiff's standing).

26   [5]     While Plaintiffs argue they have adequately demonstrated injury in fact and redressability
27   (ECF No. 11 at 14–15), Defendants do not contest the elements of injury and fact and
     redressability in their motion to dismiss (*see* ECF No. 6).  Accordingly, the Court's analysis of
28   standing will be limited to the inquiry regarding traceability.

                                            7

1    plaintiff.  (ECF No. 12 at 6–7 (citing *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013); *Doe v.*

2    *Walmart Inc.*, No. 18-CV-02125-LHK, 2019 WL 499754 (N.D. Feb. 8, 2019)).)  Defendants

3    contend that if Plaintiffs "could somehow manage to allege facts showing the Standing

4    Defendants substantially assisted the Blue Rock/Park LaBrea Defendants' alleged late fee and

5    security deposit violations, . . . Plaintiffs might be able to state a claim . . . But even then, their

6    standing would be limited to suing them only to recover fees and security deposits that tenants

7    like themselves paid to the Blue Rock/Park LaBrea Defendants."  (*Id.* at 7.)

8            To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2)

9    that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

10   redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

11   "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with

12   the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v.*

13   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In class actions, "the named representatives

14   must allege and show that they personally have been injured."  *Lierboe v. State Farm Mut. Auto.*

15   *Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736–37

16   (9th Cir. 1978)).  The "injury must have actually occurred or must occur imminently;

17   hypothetical, speculative or other 'possible future' injuries do not count in the standings

18   calculus."  *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002)

19   (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

20           "California . . . 'has adopted the common law rule' that '[l]iability may [ . . . ] be imposed

21   on one who aids and abets the commission of an intentional tort if the person [ . . . ] knows the

22   other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement

23   to the other to so act.'"  *Solarmore Mgmt. Servs. Inc. v. Bankruptcy Estate of DC Solar Sols., Inc.*,

24   No. , 2022 WL 358245, at *5 (E.D. Cal. Feb. 7, 2022) (quoting *Casey v. U.S. Bank Nat'l Assn.*,

25   127 Cal. App. 4th 1138, 1144 (2005)).  "To satisfy the knowledge prong, the defendant must have

26   actual knowledge of the specific primary wrong the defendant substantially assisted."  *Id.*

27   (internal quotation marks and citation omitted).  Here, the FAC alleges the following with respect

28   to "aiding and abetting":

[Prime Administration] today owns and operates over 15,000 units in California, Oregon, Washington, and Nevada . . . the same group of individuals operates and manages both Prime Administration and the entities holding title to the Prime Properties . . . these limited partnerships and limited liability company titleholders are merely instrumentalities of Prime Administration, are all part of the same scheme, and are controlled and managed collectively. To the extent the nominal titleholders have any independent existence, they are co-conspirators and aiders and abettors of Prime Administration in committing the conduct described in [the FAC]. The nominal titleholders knowingly participated in the common scheme and giving substantial assistance and encouragement to Prime Administration, including allowing Prime Administration to implement and effectuate the unfair and unlawful policies and practices described in this [FAC] at the various Prime Properties owned by the nominal titleholders.

(ECF No. 1-2 at 11–12.) The FAC further alleges "Defendants all knowingly aided and abetted the violations of law described in [the FAC] and knowingly aided and abetted the conduct related to the scheme, agreed to commit the unlawful and unfair conduct, and gave substantial assistance and encouragement in committing the unlawful and unfair conduct." (*Id.* at 15.) Based on the foregoing allegations, specifically that "[t]he nominal titleholders knowingly participated in the common scheme and giving substantial assistance and encouragement to Prime Administration," it is a reasonable inference that Plaintiff alleges the Standing Defendants and the Blue Rock/Park LaBrea Defendants knew "the other's conduct constitute[d] a breach of a duty and g[a]ve[] substantial assistance or encouragement to the other to so act.'" *Solarmore Mgmt. Servs. Inc.*, 2022 WL 358245, at *5. The Court therefore finds Plaintiffs adequately pleaded that the Standing Defendants aided and abetted the alleged unlawful conduct. Accordingly, Defendants' motion to dismiss the claims against the Standing Defendants is DENIED.

*ii.*      *Secondary Liability Theory*

Defendants argue that "[b]ecause the Standing Defendants have no lease agreements with . . . Plaintiffs, are not . . . Plaintiffs' landlords, and have no other dealings with . . . Plaintiffs, the [§] 1950.5 and UCL claims against the Standing Defendant rely entirely on secondary liability theories." (ECF No. 6 at 21.) Defendants further argue that Plaintiffs' "allegations of conspiracy, alter ego, and aiding and abetting liability in the FAC are all woefully deficient and cannot establish cognizable claims against the Standing Defendants" and such allegations should be

9

1  stricken.  (*Id.*)

2      Plaintiffs do not address this argument in their opposition, but ask for "leave to conduct

3  discovery to further prove the obviously intertwined relationships among the parties, and more

4  specifically, their aiding and abetting of one another, their conspiracy, and their status as alter

5  egos of one another."  (ECF No. 11 at 25.)

6      As previously noted, the Court finds that Plaintiffs have adequately established aiding and

7  abetting liability.  Accordingly, Defendants' motion to strike the allegations of conspiracy, alter

8  ego, and aiding and abetting liability is DENIED.

9              *iii.*        *Claim Eight: Violation of UCL*

10      Defendants argue Plaintiffs' UCL claim fails because the FAC does not allege an unfair

11  business practice and instead only states conclusory allegations.  (ECF No. 6 at 27–28.)  In

12  opposition, Plaintiffs maintain they have pleaded enough facts, as they allege "Prime will assess

13  late fees even when its tenants timely pay rent online, and assess late fees based on charges

14  assessed after the due date for rent payment" and "Prime ignored or prevented Plaintiffs and class

15  members from accomplishing the early termination process despite their best efforts to do so, and

16  improperly charged them because of it."  (ECF No. 11 at 23–24 (citing ECF No. 1-2 ¶¶ 56 n.4,

17  57, 75, 94).)

18      The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal.

19  Bus. & Prof. Code § 17200.  California courts employ three different tests to evaluate whether a

20  business practice is "unfair" under the UCL.  *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp.

21  3d 903, 919 (E.D. Cal. 2020).  First, "[t]he balancing test determines whether the alleged practice

22  is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and

23  requires the court to weigh the utility of the defendant's alleged conduct against the gravity of

24  harm to the alleged victim."  *Id.* at 919–20 (citing *Drum v. San Fernando Valley Bar Ass'n*, 182

25  Cal. App. 4th 247, 257 (2010)).  Second, the Federal Trade Commission ("FTC") test uses the

26  definition of unfair in § 5 of the Federal Trade Commission Act "and requires that: (1) the

27  consumer injury be substantial; (2) the injury must not be outweighed by any countervailing

28  benefits to consumers or competition; and (3) it must be an injury that consumers themselves

could not reasonably have avoided." *Id.* at 920 (citing *Drum*, 182 Cal. App. 4th at 257).  Third, "the public policy test requires that the public policy which is a predicate to consumer unfair competition under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.* (citing *Drum*, 182 Cal. App. 4th at 257).  The Ninth Circuit has approved of the balancing test and the public policy test in consumer actions. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007)).

Here, Plaintiffs allege online reviews "from various Prime Properties discuss the assessment of improper late fees, . . . improper early termination fees, unlawful rent charges after providing thirty (30) days notice to vacate, [and] failure to return security deposits or provide an itemized statement of deductions from security deposits or receipt related thereto within 21 days." (ECF No. 1-2 ¶¶ 56–57.)  Plaintiffs further allege:

> During the time that Leaser and Wongsaroj occupied the apartment, Defendants charged Leaser and Wongsaroj improper and exorbitant late fees, based on assessments for charges for sewer, water, and garbage.  The late fees were caused because charges would be posted by Defendants to Leaser's and Wongsaroj's accounts after they were due and thus could not be paid on time.

(*Id.* at ¶ 75.)  Finally, Plaintiffs allege:

> Defendants charged Eisman an early termination fee and a late fee despite Eisman providing 30 days advance[] notice.  More than 21 days after vacating her apartment, Eisman was provided a final account statement that improperly listed her date of giving notice as May 30, 2017, rather than April 6, 2017, and improperly listed her move out date as May 25, 2017 (i.e., before Eisman allegedly provided notice on May 30, 2017).  Defendants deducted these charges from Eisman's security deposit, which was wholly retained by Defendants.

(*Id.* at 95 (emphasis omitted).)  Based on the foregoing allegations of improperly charging tenants fees and charges, failing to return security deposits or providing an itemized statement of deductions therefrom, the Court finds Plaintiffs adequately pleaded these practices are "substantially injurious to consumers" and that the utility of Defendants' alleged conduct is minimal relative to the gravity of harm alleged by Plaintiffs. *See Roper*, 510 F. Supp. 3d at 919–20.  Accordingly, Defendants' motion to dismiss Plaintiffs' claim under the unfair prong of the

11

1    UCL is DENIED.

2                              *iv.*        *Claim Seven: Security Deposit Claim*

3           Defendants argue that Plaintiffs "fail[] to state a claim against any of the Defendants

4    besides their actual landlords with whom they had rental agreements" and Plaintiffs "admit their

5    rental agreements were with Prime Ascot and Prime/Park LaBrea Titleholder, LLC only, yet they

6    assert their [§] 1950.5 claim collectively against 'Defendants.'"  (ECF No. 6 at 28–29.)

7    Defendants contend § 1950.5 "imposes obligations only on '*the landlord*' with regard to 'security

8    *for a rental agreement.*'"  (*Id.* at 29 (emphasis in original) (citing Cal. Civ. Code § 1950.5).)

9           In opposition, Plaintiffs argue, among other things, that the subparagraphs of § 1950.5

10   identify "the 'landlord' as the one that 'before the end of the lease term . . . shall notify the tenant

11   in writing of the tenant's option to request an initial inspection" and Prime Administration — not

12   Prime Ascot, L.P. — corresponded with tenants about those matters.  (*Id.* at 22 (citing Cal. Civ.

13   Code § 1950.5(f)(1); ECF No. 11-1).)  Plaintiffs cite to the declaration of their attorney, Ethan T.

14   Litney, in support of this proposition, in which he avers that "[i]f Plaintiffs were granted leave to

15   amend, they could allege facts and provide documents supporting that Prime Administration

16   personnel corresponded with Plaintiffs about security deposits and final inspections, provided

17   Plaintiffs with itemized statements relating to deductions, and returned partial security deposits."

18   (ECF No. 11-1 at 2.)

19          California Civil Code § 1950.5 outlines the proper procedures by which residential

20   landlords and tenants must handle security deposits.  "Pursuant to this statute, security deposits

21   must be refunded to the tenant at the termination of the tenancy after the landlord makes lawful

22   deductions that are enumerated in subdivision (b).  Cal. Civ. Code § 1950.5(b), (e), (g) . . . At the

23   termination of the lease, the landlord must deliver to the tenant a written itemized statement of the

24   amount of the deposit, its disposition, and the balance due the tenant.  *Id.* § 1950.5(f), (g)."  *Andy*

25   *Jang v. Asset Campus Housing, Inc.*, No. CV 15-01927 BRO (PJWx), 2015 WL 12914161, at *4

26   (C.D. Cal. May 14, 2015) (citing *Leasure v. Willmark Communities, Inc.*, No. 11-CV-00443 BEN

27   (DHB), 2013 WL 6097944 (S.D. Cal. Mar. 14, 2013)).

28   ///

                                                     12

1     A review of the FAC reveals that Plaintiffs generally allege that "Defendants routinely

2  demanded security deposits from tenants and then failed to comply with California law regarding

3  the charging and refunding of those security deposits.  For example, on information and belief,

4  Defendants would often refuse to provide a properly itemized statement of deductions from

5  tenants' security deposits within 21 days.  This violates, at a minimum, Civil Code [§] 1950.5 and

6  requires the return of every victim's security deposit, in full."  (ECF No. 1-2 at 5.)  Defendants

7  are correct that Plaintiffs do not adequately allege that any other entity other than Prime Ascot

8  and Prime/Park LaBrea Titleholder, LLC was a "landlord" subject to the provisions of § 1950.5.

9  Accordingly, Defendants' motion to dismiss Plaintiffs' security deposit claim is GRANTED.

10  However, because Plaintiffs' counsel avers that Plaintiffs can allege further facts to state a §

11  1950.5 claim against Prime Administration, it is granted with leave to amend.  *See Lopez*, 203

12  F.3d at 1130.

13           C.     Second Motion to Dismiss

14                  i.      *Whether Defendants Can Bring a Subsequent Motion to Dismiss*

15     As an initial matter, Plaintiffs argue in their opposition that Defendants' Rule 12(b)(1)

16  motion is a de facto Rule 12(b)(6) motion that is untimely and should be denied, as "Rule

17  12(g)(2) provides that a party who makes a motion under Rule 12 cannot make a subsequent Rule

18  12 motion raising a defense or objection that was available to that party but omitted from its

19  earlier motion."  (ECF No. 17 at 11–12.)  Plaintiffs contend Defendants are arguing the merits as

20  well as affirmative defenses before filing an answer and are asking the Court to review extrinsic

21  evidence on a Rule 12(b)(6) motion, but make no argument that the extrinsic evidence is subject

22  to an exception.  (*Id.* at 12–13.)  Plaintiffs assert Defendants' attempt to "shoehorn a Rule

23  23(d)(1)(D) attack on Plaintiffs' typicality" is improper for a Rule 12(b)(1) motion.  (*Id.* at 13.)

24  Plaintiffs finally maintain "the jurisdiction[al] and substantive issues are . . . significantly

25  intertwined," and thus resolution under Rule 12(b)(1) is inappropriate.  (*Id.*)

26     In reply, Defendants contend the motion is a factual attack on Plaintiffs' Article III

27  standing properly raised under Rule 12(b)(1) and in such a factual attack, the Court "may review

28  evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction

1    without converting the motion to dismiss into a summary judgment motion."  (ECF No. 19 at 6–

2    7.)  Defendants maintain the jurisdictional and substantive issues are not "intertwined," as

3    "Defendants are not claiming that Plaintiffs lack standing because the challenged late fees or

4    early termination option fees are legal" but that "Plaintiffs did not suffer any injury because they

5    did not pay the fees they seek to challenge."  (*Id.* at 7.)

6          The Court agrees with Defendants that their arguments challenging Plaintiffs' standing is

7    properly brought as a Rule 12(b)(1) motion and the Court must dismiss the action if it

8    "determines at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).  Thus,

9    the Court agrees to rule on this motion.  However, Defendants' Rule 12(f) motion to strike the

10   class allegations relating to early termination options and late fees is improper because this

11   defense or objection was available to Defendants when they filed their first motion to dismiss.

12   Fed. R. Civ. P. 12(g)(2).  Accordingly, Defendants' motion to strike is DENIED.  To the extent

13   the motion attempts to function as a statutory standing challenge or a Rule 12(b)(6) motion to

14   dispute the merits of Plaintiffs' claims, the Court declines to consider and address such arguments

15   as improper because they were available to Defendants when they filed their first motion to

16   dismiss.  *See* Fed. R. Civ. P. 12(g)(2).  To the extent the motion attempts to function as a Rule

17   23(d)(1)(D) to eliminate class allegations, the Court again DENIES it as premature.  *See In re*

18   *Land Rover LR3 Tire Wear Prods. Liability Litig.*, 2012 WL 5473736, at *2; *In re Wal-Mart*

19   *Stores, Inc.*, 505 F. Supp. 2d at 615.

20               *ii.      Defendants' Rule 12(b)(1) Motion*

21         Defendants argue in their second motion to dismiss that Plaintiff's claim for breach of

22   contract must be dismissed to the extent it is based upon Plaintiffs paying early termination fees

23   to the Blue Rock/Park LaBrea Defendants and Plaintiff's UCL claim must be dismissed to the

24   extent it is based upon Plaintiffs paying early termination fees or late fees to the Blue Rock/Park

25   LaBrea Defendants.  (*See* ECF No. 16.)  With respect to the breach of contract claim, Defendants

26   argue Plaintiffs cannot "establish standing because none of them in fact paid an early termination

27   option fee to the Blue Rock/Park LaBrea Defendants, or to any Defendant, so none of them

28   suffered the requisite injury in fact."  (ECF No. 16 at 14–15.)  Defendants contend only Eisman

14

alleges she was charged this fee after she gave notice she was terminating her lease early, but being charged a fee does not confer standing unless the fee was actually paid. (*Id.* at 14.) With respect to the UCL claim, Defendants argue no Plaintiff paid an early termination option fee and therefore no Plaintiff has standing to pursue claims related to late fees. (*Id.* at 15–16.) Defendants contend Magee is the only Plaintiff who alleges she paid a late fee at Blue Rock but she signed a Release Agreement on January 12, 2017, with Blue Rock to move to another apartment at no charge in exchange for a release of all claims arising under or relating to her lease. (*Id.* at 16.)

In opposition, Plaintiffs do not differentiate their arguments by claim but rather generally argue they have adequately pleaded injury in fact with respect to the early termination fees and late fees. (*See* ECF No. 17.) Plaintiffs assert "there is at least a material dispute" as to whether Leaser and Wongsaroj paid the early termination fee as they contend they paid the early termination fee via their security deposit, which grants them Article III standing to bring claims for assessment of illegal termination fees, including under the UCL. (*Id.* at 14.) Plaintiffs further contend Leaser and Wongsaroj were charged an improper late fee and had to spend substantial time and effort to get Defendants to remove these fees from their accounts, which confers them with Article III standing to bring claims for late fees. (*Id.*) Plaintiffs contend Magee has standing to bring claims based on improper late fees assessed but not paid because they were a part of the reason she did not receive a refund of her security deposit and her credit was damaged when Defendants reported the debt to credit reporting agencies. (*Id.* at 17.)[6]

As previously stated, in class actions, "the named representatives must allege and show that they personally have been injured." *Lierboe*, 350 F.3d at 1022. The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future'

---

[6]   Plaintiffs make a number of other arguments regarding the legality of the transfer and release agreement (*id.* at 16–17) that the Court declines to address here because it finds Magee adequately establishes standing based on the allegations pleaded in the FAC.

Additionally, neither Plaintiffs nor Defendants contend that the traceability and redressability elements of standing are at issue and therefore the Court's analysis will be limited to the injury in fact element of standing.

1   injuries do not count in the standings calculus." *Schmier*, 279 F.3d at 820.

2        With respect to the early termination fees, Plaintiffs contend Defendants initially charged

3   Leaser and Wongsaroj an "early termination fee" of $1390.00 as shown in Defendants' final

4   account statement dated November 20, 2017. (ECF No. 17 at 14; ECF No. 17-1 at 9.) Plaintiffs'

5   counsel then objected to the fee in a letter dated December 25, 2017, stating "Blue Rock is not

6   entitled to use a security deposit to pay an alleged 'early termination fee.'" (ECF No. 17-1 at 11–

7   12.) Leaser and Wongsaroj were then issued a revised final account statement dated December

8   15, 2017, that reflects Leaser and Wongsaroj are owed a refund of $13.28 after the total deposits

9   are deducted from the "[b]alance at move-out" and "[t]otal additional charges/credits/payments."

10  (*Id.* at 14.) Leaser avers in her declaration that she never received the refund. (ECF No. 17-2 at

11  2.) The FAC further alleges:

12          Defendants charged Eisman an early termination fee and late fee
            despite Eisman providing 30 days advanced notice. More than 21
13          days after vacating her apartment, Eisman was provided a final
            account statement that improperly listed her date of giving notice as
14          May 30, 2017, rather than April 6, 2017, and improperly listed her
            move out date as May 25, 2017 (i.e., before Eisman allegedly
15          provided notice on May 30, 2017). Defendants deducted these
            charges from Eisman's security deposit, which was wholly retained
16          by Defendants.

17  (ECF No. 1-2 at 20 (emphasis removed).) The Court finds the foregoing is sufficient for Leaser,

18  Wongsaroj, and Eisman to allege that they have each been personally injured by the assessment

19  of early termination fees. *Lierboe*, 350 F.3d at 1022.

20        With respect to the late fees, Leaser avers in her declaration that she "was charged a late

21  fee relating to the alleged late payment of rent" and supports this statement with an email to Blue

22  Rock dated October 18, 2017, in which she states "please let me know when you have removed

23  the late fee from my account." (ECF No. 17-2 at 2, 12.) The FAC alleges:

24          During the time that Leaser and Wongsaroj occupied the apartment,
            Defendants charged Leaser and Wongsaroj improper and exorbitant
25          late fees, based on assessments for charges for sewer, water, and
            garbage. The late fees were caused because charges would be posted
26          by Defendants to Leaser's and Wongsaroj's account after they were
            due and thus could not be paid on time . . . These fees of $75 were
27          unconscionably large, given the amount of damages involved and the
            amount of damages, if any, Defendants would suffer because of late
28          payment . . . Leaser and Wongsaroj would typically challenge the

1
2

> late fees, and the fees would be removed.  But Defendants had and
> have a policy of improperly charging other tenants for these fees and
> collecting them, and not all were challenged.

3

4

(ECF No. 1-2 at 17.)  The FAC further alleges the following after Magee withheld rent on the

5

basis that the premises were infested with vermin and uninhabitable:

6

7

8

> Defendants refused to acknowledge that this condition was their
> responsibility . . . and charged Magee exorbitant 'late' fee penalties
> relating to the rent.  This was not the first time Defendants had
> charged Magee exorbitant late fees.  Previously, Defendants had
> charged Magee late fee penalties despite Magee only having paid
> rent a few days late, which she paid to Defendants.

9

(*Id.* at 19.)  The Court finds the foregoing is sufficient for Leaser, Wongsaroj, and Magee to

10

establish that they have each been personally injured by the assessment of late fees.  *Lierboe*, 350

11

F.3d at 1022.

12

Based on the foregoing, Plaintiffs have clearly alleged facts to support the element of

13

injury in fact.  *See Spokeo, Inc.*, 136 S. Ct. at 1547.  Accordingly, Defendants' motion to dismiss

14

Plaintiffs' breach of contract and UCL claims for lack of standing is DENIED.

15

**III.    MOTION TO STAY DISCOVERY**

16

Defendants request a "limited and temporary stay of discovery . . . until this Court

17

resolves the question of whether Plaintiffs have Article III standing to pursue those claims and

18

Defendants file an answer to Plaintiffs' complaint."  (ECF No. 20 at 8.)  Defendants argue a stay

19

is "clearly appropriate and justified because [their] two [m]otions to [d]ismiss are likely to

20

dispose of, or at least significantly narrow, most of the claims to which Plaintiffs' discovery is

21

directed, and the motions can be decided without any discovery."  (*Id.* at 8.)  As the Court has

22

now ruled on Defendants' two pending motions to dismiss, Defendants' request is DENIED as

23

moot.

24

**IV.    CONCLUSION**

25

For the foregoing reasons, the Court hereby DENIES Defendants' Second Motion to

26

Dismiss (ECF No. 16), and DENIES as moot Defendants' Motion to Stay Discovery (ECF No.

27

20).  The Court further GRANTS in part and DENIES in part Defendants' First Motion to

28

Dismiss (ECF No. 6) as follows:

1. Defendants' motion to dismiss the claims against the Standing Defendants based on standing is DENIED;

2. Defendants' motion to strike the allegations of conspiracy, alter ego, and aiding and abetting liability is DENIED;

3. Defendants' motion to strike the class allegations under Rule 12(f) or Rule 23(d)(1)(D) is DENIED;

4. Defendants' motion to dismiss Plaintiffs' claim under the unfair prong of the UCL is DENIED; and

5. Defendants' motion to dismiss Plaintiffs' security deposit claim is GRANTED with leave to amend.

Plaintiffs may file an amended complaint consistent with this Court's ruling not more than 30 days from the electronic filing date of this Order. Defendants shall file a responsive pleading not more than 21 days after the electronic filing date of the amended complaint.

IT IS SO ORDERED.

DATED: March 3, 2022

Troy L. Nunley
United States District Judge