**NICHOLAS & TOMASEVIC, LLP**
  Craig M. Nicholas (SBN 178444)
  Alex Tomasevic (SBN 245598)
  Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiffs,
NICHA LEASER, ATCHARA WONGSAROJ,
KATINA MAGEE, and JOYCE EISMAN

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHA LEASER, ATCHARA WONGSAROJ, KATINA MAGEE, and JOYCE EISMAN, individually, and on behalf of others similarly situated,<br><br>                 Plaintiffs,<br><br>vs.<br><br>PRIME ASCOT, L.P., a California limited partnership; PRIME ASCOT ACQUISITION, LLC, a Delaware limited liability company; PRIME/PARK LABREA TITLEHOLDER, LLC, a Delaware limited liability company (originally sued as Doe 1); PRIME ADMINISTRATION, LLC, a Delaware limited liability company;  PRIME CAMPINA, L.P., a California limited partnership (originally sued as Doe 2); PRIME CAMPINA ACQUISITIONS, LLC, a Delaware limited liability company (originally sued as Doe 3); PRIME CASSANNA, L.P., a California limited partnership (originally sued as Doe 4); PRIME OCEANSIDE ACQUISITION, LLC, a Delaware limited liability company (originally sued as Doe 5); PRIME CLAIREMONT, L.P., a California limited partnership (originally sued as Doe 6); PRIME CLAIREMONT ACQUISITION, LLC, a Delaware limited liability company (originally sued as Doe 7); PRIME DETROIT, LLC, a Delaware limited liability company (originally sued as Doe 8); PRIME MESA, L.P., a California limited partnership (originally sued as Doe 9); PRIME OLD COUNTY, L.P., a California limited partnership (originally sued as Doe 10); PRIME | Case No. 2:20-cv-02502-TLN-AC<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1.  **TORTIOUS BREACH OF WARRANTY OF HABITABILITY;**<br>2.  **TORTIOUS BREACH OF WARRANTY OF QUIET POSSESSION AND ENJOYMENT;**<br>3.  **NEGLIGENCE;**<br>4.  **NUISANCE;**<br>5.  **INTENTIONAL MISREPRESENTATION;**<br>6.  **BREACH OF CONTRACT;**<br>7.  **VIOLATION OF CIVIL CODE SECTION 1950.5;**<br>8.  **VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200 ET SET.**<br><br>**JURY TRIAL DEMANDED**<br><br>**Judge**: Hon. Troy L. Nunley<br><br>**Action Removed**: December 17, 2020 |

1  OLD COUNTY ACQUISITION, LLC, a
   Delaware limited liability company (originally
2  sued as Doe 11); PRIME PENINSULA, L.P., a
   California limited partnership (originally sued
3  as Doe 12); PRIME CHANNEL ISLANDS
   ACQUISITION, LLC, a Delaware limited
4  liability company (originally sued as Doe 13);
   PRIME RIVERSHORE SPE, LLC, a Delaware
5  limited liability company (originally sued as
   Doe 14); PRIME SPAIN GLEN DRIVE, LLC,
6  a Delaware limited liability company (originally
   sued as Doe 15); PRIME SPECTRUM, LLC, a
7  Delaware limited liability company (originally
   sued as Doe 16); PRIME TENNYSON, LLC, a
8  Delaware limited liability company (originally
   sued as Doe 17); PRIME TOYON HOUSING
9  PARTNERS, L.P., a California limited
   partnership (originally sued as Doe 18); PRIME
10 TOYON ACQUISITION, LLC, a Delaware
   limited liability company (originally sued as
11 Doe 19); PRIME VISTA MONTANA, LLC, a
   Delaware limited liability company (originally
12 sued as Doe 20); PRIME WATERVIEW, LLC,
   a Delaware limited liability company (originally
13 sued as Doe 21); PRIME WELLINGTON
   PARK, LLC, a Delaware limited liability
14 company (originally sued as Doe 22);
   PRIME/CORAL BAY, L.P., a California
15 limited partnership (originally sued as Doe 23);
   CORAL ACQUISITION, INC., a California
16 corporation (originally sued as Doe 24);
   PRIME/DEVONSHIRE SPE, LLC, a Delaware
17 limited liability company (originally sued as
   Doe 25); PRIME/SCRC, L.P., a California
18 limited partnership (originally sued as Doe 26);
   PRIME/SCRC SPE, LLC, a Delaware limited
19 liability company (originally sued as Doe 27);
   PRIME/SOUTH COAST, L.P. a California
20 limited partnership (originally sued as Doe 28);
   PRIME SOUTH COAST HOLDING, LLC, a
21 Delaware limited liability company (originally
   sued as Doe 29); PRIME VICTORIA, LLC, a
22 Delaware limited liability company (originally
   sued as Doe 30) and Does 31 through 50,
23 inclusive,

24                       Defendants.

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT

## NATURE OF CLAIMS

1.      Defendants manage a portfolio of multi-family residential properties in California. This class action lawsuit is brought on behalf of all the tenants Defendants systematically overcharged for improper and unlawful late fees, early termination fees, improper rent charges, and from whom Defendants withheld full, fair, and timely refunds of security deposits. The suit also addresses Defendants' management policies and practices that have led to disgusting infestations of vermin at these properties, which Defendants caused and routinely failed to disclose to prospective tenants, including Plaintiffs.

2.      Plaintiffs Nicha Leaser, Atchara Wongsaroj, Katina Magee, and Joyce Eisman are Defendants' former tenants, and victims.

3.      Defendant Prime Administration, LLC functions as the "Prime Group" – and largely operates and manages the multi-family residential apartment properties in California that are the subject of this litigation.

4.      Together, Defendants systematically, and as a matter of common policy and practice, overcharged tenants exorbitant penalties for late payment of rent. Defendants' late fees are void under California law because, among other things, they are excessive and bear no relation to any actual damages incurred by Defendants when rent or other charges are paid late. Further, on information and belief, Defendants intentionally apply California tenants' payment to their previously recorded debt first (including the assessed penalties), rather than the rent due for the month in which payment is actually made.

5.      Defendants also improperly charged tenants "early termination" fees even when tenants provided adequate notice of termination, in violation of the Defendants' leases. This too violated California law, including Civil Code section 1951.2.

6.      Moreover, Defendants had a policy and practice of charging early termination fees regardless of the damages, if any, felt by Defendants by such "early" breaking of leases. As Defendants do not allow their tenants to sublease or assign their residences under Defendants' form lease agreements, Defendants had and have a duty to attempt to re-rent tenants' apartments to mitigate any potential damages from broken leases. But, on information and belief, Defendants

routinely imposed a *full* early termination fee on former tenants notwithstanding Defendants' efforts or lack thereof to mitigate damages.  Upon information and belief, sometimes Defendants even collected double rent on one unit – one payment from the "early termination fee" taken from the former tenant, plus again in the form of regular rent covering the same time period and collected from the new tenant taking over the unit.  This practice amounts to assessing, yet again, another illegal penalty void under California Civil Code § 1671(d) because it is excessive and bears no relation to any actual damages incurred by Defendants when tenants terminate their lease early.

7.    Defendants, including Prime Administration, LLC, routinely demanded and collected security deposits from tenants and then failed to comply with California law regarding the charging and refunding of those security deposits. For example, on information and belief, Defendants, including Prime Administration, LLC, would often refuse to provide a properly itemized statement of deductions from tenants' security deposits within 21 days. This violates, at a minimum, Civil Code section 1950.5 and requires the return of every victim's security deposit, in full.

8.    Finally, Defendants moved Plaintiffs Leaser, Wongsaroj, and Magee (and others) into vermin-infested units that, in reality, were uninhabitable. Plaintiffs did not discover these infestations until after they moved into their apartments. Plaintiffs are informed and believe that Defendants were aware of these infestations but failed to warn them and other prospective tenants of the uninhabitable conditions. Defendants' conduct, even if not intentional, was at least negligent and constitutes, at a minimum, a tortious breach of Defendants' warranty of habitability and warranty of quiet possession and enjoyment, and also constitutes a nuisance.

9.    The above policies and practices also constitute "unfair competition" under the California Business and Professions Code. Further, Plaintiffs are also informed and believe that Defendants knowingly, intentionally, and regularly engaged in the above-alleged conduct in bad faith. Plaintiffs now bring this case to recoup the money they and their fellow tenants are owed and to stop the unlawful behavior.

## **PARTIES**

10.    Plaintiff Nicha Leaser ("Leaser") is an individual, who resided at a Prime Group apartment located at 2000 Ascot Parkway, Vallejo, CA 94591, that was owned, managed, and

SECOND AMENDED CLASS ACTION COMPLAINT

maintained by Defendants. She brings this lawsuit on her own behalf and on behalf of all others similarly situated.

11.    Plaintiff Atchara Wongsaroj ("Wongsaroj") is an individual, who also resided at a Prime Group apartment at 2000 Ascot Parkway, Vallejo, CA 94591, that was owned, managed, and maintained by Defendants. She brings this lawsuit on her own behalf and on behalf of all others similarly situated.

12.    Plaintiff Katina Magee ("Magee") is an individual, who resided at the same Prime Group apartment as Leaser and Wongsaroj, located at 2000 Ascot Parkway, Vallejo, CA 94591, that was owned, managed, and maintained by Defendants. She brings this lawsuit on her own behalf and on behalf of all others similarly situated.

13.    Plaintiff Joyce Eisman ("Eisman") is an individual, who resided at another Prime Group apartment located at 6200 W. 3rd Street, Los Angeles, CA 90036, that was owned, managed, and maintained by Defendants. She brings this lawsuit on her own behalf and on behalf of all others similarly situated.

14.    Defendant Prime Ascot, L.P., is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at 2000 Ascot Parkway, Vallejo, CA 94591, named Blue Rock Village.

15.    Defendant Prime Ascot Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Ascot, L.P.

16.    Defendant Prime/Park LaBrea Titleholder, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at 6200 W. 3rd Street, Los Angeles, CA 90036, named Park LaBrea. Defendant Prime/Park LaBrea Titleholder, LLC is being substituted for the entity originally sued as "Doe 1."

17.    Defendant Prime Administration, LLC is a Delaware limited liability company with a principal place of business in California.

18.    Defendant Prime Campina, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near

9076 Campina Dr, La Mesa, CA 91942, named Park Grossmont. Defendant Prime Campina, L.P. is being substituted for the entity originally sued as "Doe 2."

19.     Defendant Prime Campina Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Campina, L.P. Defendant Prime Campina Acquisition, LLC is being substituted for the entity originally sued as "Doe 3."

20.     Defendant Prime Cassanna, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 4302 Cassanna Way, Oceanside, CA 92057, named Montecito Village. Defendant Prime Cassanna, L.P. is being substituted for the entity originally sued as "Doe 4."

21.     Defendant Prime Oceanside Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendants Prime Cassanna, L.P, and Prime Mesa, L.P. Defendant Prime Oceanside Acquisition, LLC is being substituted for the entity originally sued as "Doe 5."

22.     Defendant Prime Clairemont, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 3103 Clairemont Drive, San Diego, CA 92117, named Coral Bay Summit Apartments. Defendant Prime Clairemont, L.P. is being substituted for the entity originally sued as "Doe 6."

23.     Defendant Prime Clairemont Acquisitions, LLC is a California limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Clairemont, L.P. Defendant Prime Clairemont Acquisitions, LLC is being substituted for the entity originally sued as "Doe 7."

24.     Defendant Prime Detroit, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 1441 Detroit Ave, Concord, CA 94520, named Concord 1441. Defendant Prime Detroit, LLC is being substituted for the entity originally sued as "Doe 8."

25.     Defendant Prime Mesa, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near

3901 Mesa Dr, Oceanside, CA 92056, named Villages of Monterey. Defendant Prime Mesa, L.P. is being substituted for the entity originally sued as "Doe 9."

26.     Defendant Prime Old County, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 649 Old County Rd, Belmont, CA 94002, named The Madison Belmont. Defendant Prime Old County, L.P. is being substituted for the entity originally sued as "Doe 10."

27.     Defendant Prime Old County Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Old County, L.P. Defendant Prime Old County Acquisition, LLC is being substituted for the entity originally sued as "Doe 11."

28.     Defendant Prime Peninsula, L.P is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 3100 Peninsula Rd, Oxnard, CA 93035, named Paz Mar. Defendant Prime Peninsula, L.P. is being substituted for the entity originally sued as "Doe 12."

29.     Defendant Prime Channel Islands Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Peninsula, L.P. Defendant Prime Channel Islands Acquisition, LLC is being substituted for the entity originally sued as "Doe 13."

30.     Defendant Prime Rivershore SPE, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 1123 Shoreview Ct, Bay Point, CA 94565, named Rivershore. Defendant Prime Rivershore SPE, LLC is being substituted for the entity originally sued as "Doe 14."

31.     Defendant Prime Spain Glen Drive, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 550 River Glen Dr, Napa, CA 94558, named Kentwood Apartments. Defendant Prime Spain Glen Drive, LLC is being substituted for the entity originally sued as "Doe 15."

32.     Defendant Prime Spectrum, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located

at or near 8811 Spectrum Center Blvd, San Diego, CA 92123, named Avion at Spectrum. Defendant Prime Spectrum, LLC is being substituted for the entity originally sued as "Doe 16."

33.    Defendant Prime Tennyson, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 655 Tennyson Rd, Hayward, CA 94544, named MetroSix55. Defendant Prime Tennyson, LLC is being substituted for the entity originally sued as "Doe 17."

34.    Defendant Prime Toyon Housing Partners, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 448 Toyon Ave, San Jose, CA 95127, named Fairway Glen. Defendant Prime Toyon Housing Partners, L.P. is being substituted for the entity originally sued as "Doe 18."

35.    Defendant Prime Toyon Acquisition, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime Toyon Housing Partners, L.P. Defendant Prime Toyon Acquisition, LLC is being substituted for the entity originally sued as "Doe 19."

36.    Defendant Prime Vista Montana, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 1 Vista Montana, San Jose, CA 95134, named Domain Apartments. Defendant Prime Vista Montana, LLC is being substituted for the entity originally sued as "Doe 20."

37.    Defendant Prime Waterview, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 801 Southampton Rd, Benicia, CA 94510, named Waterview. Defendant Prime Waterview, LLC is being substituted for the entity originally sued as "Doe 21."

38.    Defendant Prime Wellington Park, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 8600 International Avenue, Canoga Park, CA 91304, named Fountain Park. Defendant Prime Wellington Park, LLC is being substituted for the entity originally sued as "Doe 22."

39.    Defendant Prime/Coral Bay, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at 3309

Cowley Way, San Diego, CA 92117, named Coral Bay Apartments. Defendant Prime/Coral Bay, L.P. is being substituted for the entity originally sued as "Doe 23."

40.    Defendant Coral Acquisition, Inc. is a California corporation with its principal place of business in California, and is the general partner of Prime/Coral Bay, L.P. Defendant Coral Acquisition, Inc. is being substituted for the entity originally sued as "Doe 24."

41.    Defendant Prime Devonshire SPE, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 18013 Devonshire St, Northridge, CA 91325, named Cambridge on Devonshire. Defendant Prime Devonshire SPE, LLC is being substituted for the entity originally sued as "Doe 25."

42.    Defendant Prime/SCRC, L.P. is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 3800 S Flower St, Santa Ana, CA 92707, named Courtyards at South Coast. Defendant Prime/SCRC, L.P. is being substituted for the entity originally sued as "Doe 26."

43.    Defendant Prime/SCRC SPE, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Defendant Prime/SCRC, L.P. Defendant Prime/SCRC SPE, LLC is being substituted for the entity originally sued as "Doe 27."

44.    Defendant Prime/South Coast, L.P is a California limited partnership with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 1101 W Stevens Ave, Santa Ana, CA 92707, named South Coast Racquet Club. Defendant Prime/South Coast, L.P. is being substituted for the entity originally sued as "Doe 28."

45.    Defendant Prime/South Coast Holding, LLC is a Delaware limited liability company with its principal place of business in California, and is the general partner of Prime/South Coast, L.P. Defendant Prime/South Coast Holding, LLC is being substituted for the entity originally sued as "Doe 29."

46.    Defendant Prime Victoria, LLC is a Delaware limited liability company with its principal place of business in California, and is the titleholder of a Prime Group apartment located at or near 555 South Park Victoria Drive, Milpitas, CA 95035, named 555 Apartment Homes.

Defendant Prime Victoria, LLC is being substituted for the entity originally sued as "Doe 30."

**FACTUAL BACKGROUND**

**DEFENDANTS' MULTI-FAMILY RESIDENTIAL PROPERTY ENTERPRISE**

47.    The Prime Group is a multi-family residential property enterprise throughout the State of California, including the following apartment complexes: Avion at Spectrum, Blue Rock Village, Cambridge at Devonshire, Concord 1441, Coral Bay Apartments, Coral Bay Summit Apartments, Courtyards at South Coast, Domain Apartments, Fairway Glen, Fountain Park, Kentwood Apartments, MetroSix55, Montecito Village, Park Grossmont, Park LaBrea, Paz Mar, Rivershore, South Coast Racquet Club, The Madison Belmont, Villages of Monterey, Waterview, and 555 Apartment Homes (collectively the "Prime Properties").[1]

48.    Plaintiffs are informed and believe that all Prime Properties are primarily operated and managed through the same Defendant, Prime Administration, LLC ("Prime Administration").

49.    The Prime Properties are owned by the separate limited partnerships or limited liability company Defendants named in this Complaint, but on information and belief are all ultimately controlled and operated by Prime Administration, who publicly does business as the various Prime Properties, and also does business as the Prime Group and Prime Residential, as depicted below.



---

[1] All of these properties can be viewed at the "Prime Group Residential" or "Prime Residential" website under its "Find A Home" webpage, located at: https://www.primeapts.com/community-search-list-view.aspx.

50.    Relevantly, the Prime Group website (www.primegrp.com) states: "Prime Residential [i.e., a d/b/a of Prime Administration, LLC] focuses on long-term ownership of multifamily investments in major markets along the west coast. The firm today *owns and operates* over 15,000 units in California, Oregon, Washington, and Nevada" (emphasis added). Further, the Prime Residential website (www.primegrp.com/prime-residential/) states: "Prime Residential owns more than 15,000 units located in over 30 communities across the West Coast, utilizing its in-house management platform to drive cash flow growth over long hold periods. Founded in 1989, Prime Residential creates value through *disciplined acquisitions, thoughtful capital structures*, targeted reinvestment, *and superior management*" (emphasis added). Indeed, on information and belief, the same group of individuals operates and manages both Prime Administration and the entities holding title to the Prime Properties. On information and belief, these limited partnerships and limited liability company titleholders are merely instrumentalities of Prime Administration, are all part of the same scheme, and are controlled and managed collectively. To the extent the nominal titleholders have any independent existence, they are co-conspirators and aiders and abettors of Prime Administration in committing the conduct described in this Complaint. The nominal titleholders knowingly participating in the common scheme and giving substantial assistance and encouragement to Prime Administration, including allowing Prime Administration to implement and effectuate the unfair and unlawful policies and practices described in this Complaint at the various Prime Properties owned by the nominal titleholders.

51.    The aforementioned limited partnerships and limited liability companies that hold title to the Prime Properties, which are also named Defendants, are usually named for the Prime Property at issue, typically using the street address or name of the property in the name of the entity, as described above. For example, the limited partnership nominally affiliated with Blue Rock Village is Defendant Prime Ascot, L.P., whereas that property is located on Ascot Parkway.

52.    In addition to Prime Administration's public admissions, common operation, management, and control of the Prime Properties can also be discerned by Defendants' own lease agreements. On information and belief, at any time, the Prime Properties' leases utilize substantially the same form, i.e. form leases where the information regarding the lessors (Defendants), lessees

1  (Plaintiffs and other tenants), the term of the lease, and the base rent are simply imported into each

2  lease form.

3        53.     Sometimes the leases are grouped into regions containing many of the Prime

4  Properties.  For example, Plaintiffs Leaser and Wongsaroj signed a lease agreement that clearly

5  refers to itself as a "Nor[thern]Cal[ifornia] Lease Packet" and a "No[rthern]Cal[ifornia] Lease

6  Agreement," demonstrating that the same lease terms applied at the time to at least the Prime

7  Properties located in the northern portion of California.[2] The lease forms themselves also have the

8  words "Prime Residential" stamped in the top left corner of every page (a d/b/a of Prime

9  Administration, LLC), and identify the "company" on the lease as "Prime Administration LLC dba

10 Prime Group."

11       54.     On information and belief, important management decisions and policies are not

12 usually specific to a particular Prime Property, but are common and shared among all Prime

13 Properties. As described above, the same group of individuals appears to manage and operate all of

14 the Prime Properties. As an additional example, Defendants also use the same employees or agents

15 identified as "management" at any particular property to inform tenants of Defendants' policies and

16 procedures at many or all of the Prime Properties, and address negative feedback from residents on

17 public forums.[3]

18       55.     Further, review websites such as Yelp.com, Apartments.com, Apartmentratings.com,

19 etc., provide additional evidence that the Prime Properties utilize common policies and practices,

20 and demonstrate that residents of all of the Prime Properties in California are similarly affected.

21       56.     Indeed, myriad reviews from various Prime Properties discuss the assessment of

22 improper late fees.[4]

23 [2] See Plaintiff Leaser and Wongsaroj's lease agreement, which is attached as Attachment A and
   incorporated by reference into this Complaint.

24

25 [3] The Prime Group website identifies a common team of employees for "Prime Residential"
   (https://www.primegrp.com/team/). Also, on Yelp.com the same account with the same profile
   photograph identifies itself as the one "Business Manager" of most, if not all, of the Prime
26 Properties.

27 [4] Demonstrative examples include the following: "This place continues to frustrate, disappoint and
   over charge, I was charged a $60.00 late fee for short paying by $0.34, yes THIRTY FOUR
   CENTS." (Yelp Review of Park La Brea, available at: https://www.yelp.com/biz/park-la-brea-
28 apartments-los-angeles-5?hrid=QVvQ9DfJZvDaMhNjCeyAyQ); "We took our rent this month
   (under new management) on the 4th and were charged a $250 late fee. WTF!??? Who charges that

57.    Similarly, online reviews from various Prime Properties discuss the assessment of improper early termination fees,[5] unlawful rent charges after providing thirty (30) days notice to vacate,[6] failure to return security deposits or provide an itemized statement of deductions from security deposits or receipts related thereto within 21 days.[7]

---

much!????? That's highway robbery. That's GREED." (Yelp review of MetroSix55, available at: https://www.yelp.com/biz/metro-six55-apartments-hayward-2?hrid=ozHbe0gG-Vl71PTSgefsPQ).); "[T]hey called and said I owe a late fee and non sufficient fund. I had the money in the bank. So I went to speak to the office and was told that I entered the wrong account number. So I guess I'm supposed to just take their word for that because they told me they cannot show me the "wrong account" I entered due to privacy. So I paid almost $200 extra." (Yelp review of Montecito Village, available at: https://www.yelp.com/biz/montecito-village-oceanside?hrid=RQZtJSsBPm-5yYEbbnqtOA.); "[I] paid my rent on time through the application, the system took a few days to process it and they charged me a late fee." (Yelp Review of The Villages of Monterey: https://www.yelp.com/biz/the-villages-of-monterey-oceanside?hrid=vZD8AEi 2M7wHFXqxPRMcA.). "When you complain or refuse to pay a late fee, they charge you another late fee because they withhold late fee from your rent to make it seem like you didn't pay your rent in full." (Yelp Review of Park LaBrea, available at: https://www.yelp.com/biz/park-la-brea-apartments-los-angeles-5?hrid=g8bcsxk6-Lg0hG1pgq4RRw.)

[5] Demonstrative examples include the following: "[W]e had enough and went to go see PLB management about getting an early termination of our lease. At this point, neither of us were even living in there, it was so awful … PLB basically ignored our attempts to try to legally file to end our lease early." (Yelp Review of Park La Brea, available at: https://www.yelp.com/biz/park-la-brea-apartments-los-angeles-5?hrid=O6iOf6NQE6wlkj8eCzhbCg); "Never responded to our 30 day notice, we were told we would NOT be charged an early termination fee because we moved out for very serious reasons....black mold growing all over the apartment, they refuse to take care of the issue, the ac leaks, the heater could not be turned on because of the smoke smell and the fact that it set off the fire detectors each time, it was infested with roaches and other bugs, the security guard kept taking pictures of my roommates daughter which is very unsettling, now that we've moved they're trying to add on an early termination fee." (Yelp Review of Rivershore, available at: https://www.yelp.com/biz/rivershore-apartments-bay-point?hrid=rCDwZ2c6C6vBA8yfQdc4ew.)

[6] Demonstrative examples include the following: "[Final statement] listed that I extended my stay for an additional 2 weeks after my lease and that was where the additional prorated charges stemmed. I vacated the apartment 2 weeks BEFORE my lease ended and returned my keys and fobs night before the end date." (Yelp Review of MetroSix55, available at: https://www.yelp.com/biz/metro-six55-apartments-hayward-2?hrid=o1dD25piQaetyQEleAehTg; "She claimed that we owed them close to $800 when that's actually what they owed US because they had failed to prorate our last month. She was very rude and insistent that we owed them money along with late fees. She refused to listen to anything we had to say or even try to understand." (Yelp Review of The Villages at Monterey: https://www.yelp.com/biz/the-villages-of-monterey-oceanside?hrid=0txrJPjg_JCwV8x398WUnQ.).

[7] Demonstrative examples include the following: "They also didn't return our security deposit within 21 days of vacating the premises as required by California State law, and nobody in the office knew anything about it, bothered to find out, or offer any help rectifying the situation." (Yelp Review of Coral Bay Apartments, available at: https://www.yelp.com/biz/coral-bay-apartments-san-diego?hrid=8iomyp2GjHTut1_UXQP1Cw.); "What do you know...MONTHS later still no return of our deposit. Don't tell me to contact the manager-THEY NEVER RETURN EMAILS OR CALLS." (Yelp Review of Courtyards at South Coast, available at: https://www.yelp.com/biz/courtyards-at-south-coast-apartments-santa-ana-2?hrid=kesMgbBGxuKzWO1Mj22uiA.) "It's been THREE MONTHS and they still haven't

58.    Defendants all knowingly participated in the common scheme described herein, including, on information and belief, the application of common unlawful and unfair policies and practices to the tenants of all of the Prime Properties, which were primarily administered and effectuated by Prime Administration. Defendants all knowingly aided and abetted the violations of law described in this Complaint and knowingly aided and abetted the conduct related to the scheme, agreed to commit the unlawful and unfair conduct, and gave substantial assistance and encouragement in committing the unlawful and unfair conduct.

59.    Further, at all times mentioned, Defendants were the agents, servants, or employees for one another, and acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. In particular, Prime Administration acted as the agent of all other named Defendants in administrating and effectuating the unfair and unlawful conduct described here, which was committed within the scope of Prime Administration's agency and actual and apparent authority.

60.    In addition, on information and belief, Defendants furnished the means and induced one another to commit violations of the California Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) (the "UCL") described in this Complaint, and all Defendants directly and indirectly benefited from Plaintiffs' and the proposed class members' losses related to the unfair and unlawful business practices described in this Complaint.

## MORE ALLEGATIONS SPECIFIC TO PLAINTIFFS' TENANCIES

### Plaintiffs Leaser and Wongsaroj

61.    Shortly before May 25, 2017, Plaintiffs Leaser and Wongsaroj entered into a written lease agreement with Defendant Prime Ascot, L.P. for an apartment that at all times was to be occupied by Wongsaroj (the "Leaser Apartment"). Leaser and Wongsaroj both advised Defendants that Wongsaroj would be occupying the Leaser Apartment. The term of the lease was for approximately one year, beginning on May 28, 2017 and ending on May 15, 2018. The monthly rent

returned the remaining security deposit owed to us. I called Domain office and the receptionist said that she doesn't know because Carla has been out for a month." (Yelp Review of Domain Apartments, available at: https://www.yelp.com/biz/domain-apartments-san-diego-4?hrid=VjYvz6L6DZxHNDAeEtwtnA.).

was $1,390.00, with an application fee of $80.00 and a security deposit of $500.00. On or about May 25, 2017, Prime Administration collected a $200 security deposit from Leaser and Wongsaroj in connection with their application and lease. On information and belief, the lease Leaser and Wongsaroj signed was a standard form lease that Defendants used for all apartments at Blue Rock Village. Leaser and Wongsaroj are also informed and believe and thereon allege that the lease they signed was substantially similar to the lease that Defendants use for all of the Prime Properties in the State of California, including those entered into by Plaintiffs Magee and Eisman.

62.    Wongsaroj moved into the apartment in early June 2017. The cost of the move was approximately $ 1,237.50 paid to the moving company, plus several hundred dollars in incidental expenses.

63.    Unbeknownst to Leaser and Wongsaroj, at the time Wongsaroj moved in, the Leaser Apartment was infested with mice. The infestation rendered the Leaser Apartment uninhabitable. Leaser and Wongsaroj did not discover the infestation until after Wongsaroj moved into the Leaser Apartment.

64.    Leaser and Wongsaroj are informed and believe and thereon allege that the entire building within Blue Rock Village in which the Leaser Apartment is located was infested with mice at the time Leaser and Wongsaroj signed the lease, and that Defendants knew of the infestation at that time. Despite this knowledge, Defendants failed to disclose the infestation to Leaser and Wongsaroj. In addition, Leaser and Wongsaroj would not have signed the lease, and Wongsaroj would not have moved into the Leaser Apartment, had Leaser and Wongsaroj known of the infestation.

65.    Leaser and Wongsaroj complained to Defendants on many occasions about the mouse infestation, both orally and in writing. Despite their complaints, Defendants failed to remedy the condition and make the Leaser Apartment habitable.

66.    Wongsaroj's and Leaser's conduct did not contribute to the presence of the mice in the Leaser Apartment or the building where the Leaser Apartment is situated.

67.    Wongsaroj suffers from an emotional illness, and her therapist recommended that Wongsaroj obtain an emotional support animal. Wongsaroj obtained a dog as an emotional support animal and advised Defendants of this on May 29, 2017.

68.    The infestation of mice in the Leaser Apartment aggravated Wongsaroj's emotional condition, and caused her a loss of sleep, nausea, vomiting, headaches, and anxiety.

69.    Wongsaroj also stopped cooking and eating in the Leaser Apartment as a result of the infestation, due to a fear of contamination.

70.    The infestation of mice also damaged and/or destroyed personal property belonging to Wongsaroj, including a collection of books in the Thai language that cannot be replaced.

71.    Leaser and Wongsaroj are further informed and believe and thereon allege that Defendants at all times have known of the infestation in Blue Rock Village, failed to take adequate steps to address the infestation, and continued to rent apartments in Blue Rock Village to prospective and actual tenants (such as Plaintiffs Leaser, Wongsaroj, and Magee) while knowing that the infestation continued unresolved.

72.    Defendants' failure to remediate the infestation caused Wongsaroj to move out of the Leaser Apartment on November 5, 2017. Wongsaroj and Leaser promptly notified Prime Administration of their move after they had vacated the Leaser Apartment, and promptly returned the keys to the Leaser Apartment. As such, Wongsaroj and Leaser vacated the Apartment on November 5, 2017. The cost of the move to Leaser and Wongsaroj was $1,100.00.

73.    Wongsaroj moved into an apartment comparable to the one she had at the Blue Rock Village, but her monthly rent has increased to $1,625.00 per month.

74.    Leaser and Wongsaroj paid rent in full for the Leaser Apartment between May 25, 2017 and November 30, 2017 in the amount of $8,519.35. Further, Leaser and Wongsaroj were also charged an additional $44.84 for rent for December 1, 2017.

75.    During the time that Leaser and Wongsaroj occupied the apartment, Defendants charged Leaser and Wongsaroj improper and exorbitant late fees, based on assessments for charges for sewer, water, and garbage. The late fees were caused because charges would be posted by

Defendants to Leaser's and Wongsaroj's accounts after they were due and thus could not be paid on time.

76.    These fees of $75 were unconscionably large, given the amount of the charges involved and the amount of damages, if any, Defendants would suffer because of any late payment.

77.    Leaser and Wongsaroj would typically challenge the late fees, and the fees would be removed. But Defendants had and have a policy of improperly charging other tenants for these fees and collecting them, and not all were challenged.

78.    On or about December 1, 2017, Leaser and Wongsaroj received a letter from Prime Administration through its employee Michael Denham, including an attached "final account statement" itemizing certain charges/deductions from their security deposit. The December 1 correspondence from Denham included a large "PRIME group" graphic and Denham's "primegrp.com" email address. The charges on the final account statement included the following:

       a.     A charge for rent for December 1, to December 9, 2017, of $417.00.

       b.     An early termination fee of $1,390.00.

       c.     A carpet cleaning charge of $75.00.

       d.     A charge of $40.00 for other cleaning.

       e.     A charge of $160.83 for the pro-rated estimated cost of repainting the Leaser Apartment prorated based on a 36-month useful life.

79.    Defendants, including Prime Administration,  refused to give Leaser and Wongsaroj any of the receipts for the alleged expenses or deductions from the security deposit, as required by California Civil Code section 1950.5. Defendant Prime Administration also mailed the final account statement including notice of charges to the security deposit outside of the 21-day window allowed pursuant to California Civil Code section 1950.5(g). On or about December 15, 2017, Leaser and Wongsaroj's then-counsel sent correspondence via email to Prime Administration objecting to Prime Administration's use of Leaser and Wongsaroj's security deposit to pay an early termination fee, as well as objecting to the propriety of certain charges listed on the final account statement, among other issues. On or about December 15, 2017, Michael Denham prepared a "revised" final account statement that removed the early termination fee charge and lowered the rent charge to $44.84 to

reflect the fact that a new resident had moved into Leaser and Wongsaroj's apartment on December 2, 2017; these changes resulted in Leaser and Wongsaroj being owed a refund of $13.28 based on the revised final account statement. Leaser and Wongsaroj never received any refund.

80.    Defendants, including Prime Administration, have failed to return all monies owed Leaser's and Wongsaroj, including their security deposit which was improperly withheld and improperly charged, including a charge for a prorated amount for painting based on a 36-month useful life. Leaser and Wongsaroj have been damaged and lost money or property as a result of Defendants' business practices.

**Plaintiff Magee**

81.    On or around August 2016, Plaintiff Magee entered into a written lease agreement with Defendant Prime Ascot, L.P. for an apartment (the "Magee Apartment") in the same complex as Leaser and Wongsaroj. Magee does not have a copy of her lease agreement, but on information and belief it is substantially similar to Attachment A. The term of the lease was approximately one year, beginning on or around August 1, 2016. The monthly rent was $1,646.00. Magee was never warned or informed of any vermin infestation prior to executing the lease agreement. On or about July 15, 2016, Defendant Prime Administration collected a $40 application fee and a $99 security deposit from Magee in connection with her application and lease.

82.    Notably, the Magee Apartment was over 300 feet away from the Leaser Apartment across the Blue Rock Village complex.

83.    Shortly after moving into her apartment, when Magee was approximately six months pregnant, a mouse ran over her foot while she was cooking breakfast. This troubling incident led Magee to find out that her apartment suffered from a serious infestation of mice, resulting in visible mice damage, visible mice feces, and the presence of mice in the open in the apartment.

84.    Magee's conduct did not contribute to the presence of the mice in the Magee Apartment or the building where the Magee Apartment is situated.

85.    Magee brought this issue to Defendants' attention, including providing pictures of the several mice she caught in the open to Defendants. Defendants promised to move Magee to a different unit on multiple occasions, but ultimately failed to do so.

SECOND AMENDED CLASS ACTION COMPLAINT

86.    On December 17, 2016 Magee was so frustrated by the infestation that she sent an email to management stating, in pertinent part:

> I am furious! I am tired of dealing with this. This is not okay at all in any way, shape, form or fashion! I am letting you know that I refuse to pay rent in a place where every single month I am dealing with this. I have children who live in this unit! No one from management seems to care about my family's safety nor health in these apartments because if anyone did, this issue would've been resolved!

87.    Eventually Magee withheld rent on the basis that the premises were infested with vermin and uninhabitable, and implored Defendants to transfer her to another apartment. Defendants ultimately offered Magee to transfer to another unit at the same monthly rent. However, as the offered unit was smaller and had downgraded features, Magee declined the transfer as it was not comparable to her current unit, and continued to withhold rent.

88.    During this time, Defendants refused to acknowledge that this condition was their responsibility, refused to disclose that other tenants were having the same problem at the same property, and charged Magee exorbitant "late" fee penalties relating to the rent. This was not the first time Defendants had charged Magee exorbitant late fees.  Previously, Defendants had charged Magee late fee penalties despite Magee only having paid rent a few days late, which she paid to Defendants.

89.    Eventually Defendants admitted "there ha[d] been an emergence of field mice." Yet they argued that Magee's apartment was "habitable" notwithstanding the infestation and improperly threatened to evict Magee for withholding rent.

90.    Defendants, including Prime Administration, ultimately evicted Magee on April 27, 2017 and Prime Administration retained her entire security deposit. On or about May 5, 2017, Prime Administration sent Magee correspondence through Michael Denham, on letterhead that included Prime Administration's "PRIME group" logo. In the correspondence, Prime Administration, identified certain charges to Magee's account/deductions from Magee's security deposit in a final account statement. Michael Denham prepared the final account statement on or about May 5, 2017, identifying deductions/charges made by Prime Administration in relation to late fees, legal charges, and other charges ostensibly relating to the condition of Magee's apartment, including cleaning and

1   painting, among others. As it did with Ms. Leaser and Ms. Wongsaroj, Prime Administration

2   withheld Magee's security deposit without providing the documentation or information required

3   under California Civil Code 1950.5. Indeed, it was Defendants' (including Prime Administration's)

4   common practice and policy not to properly document any security deposit charges thereby

5   disqualifying Defendants from ever being able to keep *any* of those security deposits. Moreover,

6   Defendants, including Prime Administration, continue to attempt to collect from Magee. Magee has

7   been damaged by Defendants' practices and has lost money or property as a result.

8        91.    Further, Magee is informed and believes that Defendants either did not engage in a

9   reasonable endeavor to determine Defendants' average costs from late payment of rent prior to

10  charging Magee late fees, or that Defendants charged Magee late fees knowing that the late fees

11  Magee was charged and paid were not a reasonable estimate of Defendants' costs from Magee's

12  alleged late payment of rent.

13                              **Plaintiff Eisman**

14       92.    On or about August 2015, Plaintiff Eisman entered into a written lease agreement

15  with Defendant Prime/Park LaBrea Titleholder, LLC for an apartment at their Park LaBrea property.

16  Eisman does not have a copy of her lease agreement, but on information and belief it is substantially

17  similar to Attachment A. On or about August 1, 2015, Prime Administration, doing business as

18  "Prime Group," collected a $40 application fee from Eisman, and collected $500 of Eisman's

19  security deposit in connection with Plaintiff Eisman's application and lease, where Plaintiff Eisman

20  provided her credit card information. On or about September 4, 2015, Prime Administration

21  collected another $500 of Ms. Eisman's total $1,000 security deposit via Cashier's Check. Collection

22  of the $500 security deposit was confirmed in Prime Administration's electronic systems (including

23  the specific number of the cashier's check) at the time by Evelyn Sterud, an individual who publicly

24  holds themselves out as and is believed to be a current or former employee of Prime Administration

25  and who was acting on Prime Administration's behalf.

26       93.    On April 6, 2017, Eisman visited Defendants' management office and filled out

27  paperwork to exercise her option to terminate her lease early under her written lease agreement by

28

1   providing 30 days advanced notice. On May 6, 2017, Eisman moved out of her apartment and
2   returned her keys and gate remote control to Defendants.

3       94.    Defendants, including Prime Administration, charged Eisman an early termination
4   fee and a late fee despite Eisman providing 30 days advanced notice. More than 21 days after
5   vacating her apartment, Eisman was provided a final account statement by Prime Administration
6   that improperly listed her date of giving notice as May 30, 2017, rather than April 6, 2017, and
7   improperly listed her move out date as May 25, 2017 (i.e., *before* Eisman allegedly provided notice
8   on May 30, 2017). Eisman's final account statement was prepared on or about May 30, 2017, by
9   Ileana Firchau, an individual who publicly holds themselves out as and is believed to be a current or
10  former employee of Prime Administration that was acting on Prime Administration's behalf. The
11  final account statement included identification of certain charges to Eisman's account/deductions
12  from Eisman's security deposit. Eisman also corresponded with Prime Administration about the
13  accuracy of her final account statement and the deductions/charges made by Prime Administration
14  in relation the condition of her apartment, including carpet replacement, and painting, among other
15  deductions/charges she disputed.

16      95.    Defendants, including Prime Administration, deducted these early termination fee
17  and late fee charges from Eisman's security deposit, which was wholly retained by Defendants.

18      96.    Defendants, including Prime Administration, also charged Eisman an additional
19  $1,200 for cleaning, carpet replacement, item removal, and painting. Even though Eisman returned
20  her keys and gate remote when she vacated her apartment, she was also charged $100 by Prime
21  Administration for allegedly failing to return these items. Prime Administration, again, refused to
22  provide Eisman the information required under California Civil Code 1950.5 in relation to its
23  retention of her security deposit and have continued to attempt to collect money from Eisman.
24  Eisman has been damaged as a result of Defendants' practices and has lost money or property as a
25  result.

26      97.    Further, Eisman is informed and believes that Defendants either did not engage in a
27  reasonable endeavor to determine Defendants' average costs from late payment of rent prior to
28  charging Eisman late fees, or that Defendants charged Eisman late fees knowing that the late fees

1  Eisman was charged and paid were not a reasonable estimate of Defendants' costs from Eisman's

2  alleged late payment of rent.

3  **CLASS ALLEGATIONS**

4      98.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules

5  of Civil Procedure on behalf of the following proposed classes:

6     The Habitability Class

7      a.    All persons who leased an apartment at Blue Rock Village who experienced an

8  infestation of vermin during the class period[8];

9     The Excessive Fees Class

10      b.    All persons who leased an apartment at one of the Prime Properties in California,

11  who during the class period paid at least one of the following:

12              i.  late fees; including late fees for late rent or based on assessments for charges

13                   for sewer, water, and garbage;

14             ii.  an "early termination fee";

15            iii.  fees or charges to cover rent for any day after the 30th day following the

16                   tenant's notice of intent to vacate;

17     The Security Deposit Class

18      c.    All persons who leased an apartment at one of the Prime Properties in California,

19  who during the class period, did not receive a full refund of their security deposit and was not

20  personally delivered or mailed an itemized statement indicating the basis for, and the amount of the

21  security deposit retained within 21 days.    Within this class exists a "paint charges" sub-class

22  including all members of this Security Deposit Class who had deductions made from their security

23  deposits for prorated re-painting of their apartment based on a 36-month useful life for the paint.

24      99.    Excluded from these classes are any and all officers or directors of any of the

25  Defendants, or members of the immediate families of those officers and directors, as well as the

26  Judge assigned to this case and his or her immediate family.

27

28  [8] "Class period" means the maximum time allowable under the appropriate statutes of limitations periods after adding all appropriate tolling.

100.     The members of each class are so numerous that joinder of all members is impracticable. The Prime Properties operated by Defendants collectively are estimated to contain over 10,000 apartments. The exact number of aggregate class members will be determined by appropriate discovery but is expected to exceed 10,000 persons. Members of the proposed classes can be identified from records maintained by Defendants and can be notified of the pendency of this action by mail using a form of notice typically used in class action litigation.

101.     Plaintiffs' claims are typical of the claims of the members of the class, as all members of the each class are similarly affected by Defendants' wrongful conduct as alleged herein.

102.     Plaintiffs can and will fairly and adequately protect the interests of the members of the class and have no interests antagonistic to or in conflict with those members.

103.     Plaintiffs' counsel are competent to handle a class action.

104.     Common questions of law and fact exist as to all members of each class. In addition, these common questions predominate over any questions solely affecting individual class members. Among the questions of law and fact common to the class are:

a.     Whether the apartments at Blue Rock Village complex were rendered uninhabitable due to rodent or vermin infestation at any period;

b.     Whether Defendants' late fees/penalties, including those imposed on assessments for sewer, water, and garbage, were improper and exorbitant liquidated damages;

c.     Whether Defendants' early termination fees are legal;

d.     Whether Defendants have a policy or practice of charging tenants rent for any period of time beyond 30 days after providing Defendants notice of their intent to vacate;

e.     Whether the above policies violate Defendants' form lease agreements;

f.     Whether properly itemization for deductions from security deposits are timely provided to Defendants' tenants;

g.     Whether notices of charges to security deposits to tenants were timely mailed out or personally delivered to former tenants; and

h.     Whether the above-mentioned policies and practices violate the UCL as unfair or unlawful practices.

105.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all members is impracticable, the damage suffered by individual members may be relatively small, and the expense and burden of individual litigation make it impossible for members of the classes to individually redress the wrongs done to them. Plaintiffs are informed and believe and thereon allege that there will be no difficulty in management of this action as a class action.

<strong><u>CAUSES OF ACTION</u></strong>

<strong><u>FIRST CAUSE OF ACTION</u></strong>

(Tortious Breach of Warranty of Habitability)

(By Plaintiffs Leaser, Wongsaroj, and Magee on behalf of themselves and the Habitability Class against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime Administration, LLC, and Does 31 through 50, inclusive)

106.    Plaintiffs incorporate herein by reference all of the allegations set forth above, as though fully set forth below.

107.    The lease described above for the Leaser Apartment, the Magee Apartment, and the leases for each member of the Habitability Class all contain an implied warranty of habitability, as well as the warranty of habitability set forth in sections 1941 and 1941.1 of the California Civil Code.

108.    The Defendants named in this cause of action breached the warranties described above by failing to rent an apartment to members of the Habitability Class that was free of vermin, and failing to rid the apartment of vermin during the respective tenancies of the members of the Habitability Class. The breach of the implied warranty of habitability described in this paragraph was a violation of California Civil Code section 1941.1(6), as the apartments in question were not kept sanitary and free from vermin.

109.    Leaser, Wongsaroj, and Magee repeatedly advised the Defendants named in this cause of action about the infestation of mice in their apartments at Blue Rock Village. Leaser, Wongsaroj, and Magee are informed and believe and thereon allege that other members of the Habitability Class also advised these Defendants about this infestation.

110.    Defendants failed to remediate the infestation within a reasonable period of time, and indeed, failed to remedy the condition at all.

111.    As a proximate result of these breaches, Wongsaroj, Leaser, Magee, and the Habitability Class have suffered damages in an amount according to proof, including an over-payment of rent for their apartments, emotional distress to Wongsaroj, the loss of certain personal property belonging to Wongsaroj, constructive eviction, and moving expenses both in and out of the Apartment and other apartments that members of the Habitability Class had occupied. The breach also constituted a constructive eviction of Leaser, Wongsaroj, Magee, and other members of the Habitability Class.

112.    Total damages to Leaser and Wongsaroj alone as a proximate result of the breach are in no event less than $20,000.00.

113.    Leaser, Wongsaroj, and Magee are informed and believe and thereon allege that the damages to members of the Habitability Class proximately caused by this breach are in no event less than one million dollars ($1,000,000.00).

114.    Leaser, Wongsaroj, and Magee are informed and believe and therefore allege that the lease applicable to the Habitability Class members contains a provision allowing the lessor to recover attorney's fees and costs to enforce the lease agreement. Under California Civil Code 1717, this provision must be interpreted as awarding attorney's fees and costs to the party who is determined to be the party prevailing on the lease, whether or not they are the party specified in the lease to recover attorney's fees. Leaser, Wongsaroj, and Magee are therefore entitled to an award of reasonable attorney's fees and costs in this action. Leaser, Wongsaroj, and Magee are also informed and believe and thereon allege that they are entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5, as this action will result in the enforcement of an important right affecting the public interest.

115.    Prime Ascot Acquisition, LLC is liable to Leaser, Wongsaroj, Magee, and the other members of the Habitability Class as the general partner of Prime Ascot, L.P.

116.    The breach of the implied warranty by the Defendants named herein was tortious, malicious, and oppressive, and entitles Leaser, Wongsaroj, Magee, and members of the Habitability Class to an award of punitive damages in an amount according to proof.

**SECOND CAUSE OF ACTION**

(Tortious Breach of Warranty of Quiet Possession and Enjoyment)

(By Plaintiffs Leaser, Wongsaroj, and Magee on behalf of themselves and the Habitability Class against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime Administration, LLC, and Does 31 through 50, inclusive)

117.    Leaser, Wongsaroj, and Magee incorporate herein by reference all of the allegations set forth above, as though fully set forth below. The lease described above for the Leaser Apartment, the Magee Apartment, and the lease for each member of the Habitability Class, contains an implied warranty of quiet possession and enjoyment, which is breached by any interference by the landlord that deprives the tenant of the beneficial enjoyment of the premises or renders it unfit for habitation.

118.    The Defendants named in this cause of action breached the implied warranty of quiet possession and enjoyment by failing to remedy the infestation of mice, despite their knowledge thereof.

119.    As a proximate result of these Defendants' breach, Wongsaroj, Leaser, Magee, and the Habitability Class have suffered damages in an amount according to proof, including an over-payment of rent for the apartments of Wongsaroj, Leaser, Magee and the Habitability Class, emotional distress to Wongsaroj, the loss of certain personal property belonging to Wongsaroj, and moving expenses both in and out of the Leaser Apartment, the Magee Apartment, and apartments that members of the Habitability Class had occupied. The breach also constituted a constructive eviction of Leaser, Wongsaroj, Magee, and other members of the Habitability Class.

120.    Leaser, Wongsaroj, and Magee are informed and believe and therefore allege that the lease applicable to the Habitability Class members contains a provision allowing the Lessor to recover attorney's fees and costs to enforce the lease agreement. Under California Civil Code 1717, this provision must be interpreted as awarding attorney's fees and costs to the party who is determined to be the party prevailing on the lease, whether or not they are the party specified in the

lease to recover attorney's fees. Leaser, Wongsaroj, and Magee are therefore entitled to an award of reasonable attorney's fees and costs in this action. Leaser, Wongsaroj, and Magee are also informed and believe and thereon allege that they are entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5, as this action will result in the enforcement of an important right affecting the public interest.

121.    Total damages to Leaser and Wongsaroj alone as a proximate result of the breach are in no event less than $20,000.00.

122.    Leaser and Wongsaroj are informed and believe and thereon allege that the damages to members of the Habitability class proximately caused by this breach are in no event less than one million dollars ($1,000,000.00).

123.    Prime Ascot Acquisition, LLC is liable to Leaser, Wongsaroj, Magee, and all other members of the Habitability Class as the general partner of Prime Ascot, L.P.

124.    The breach of the implied warranty of quiet enjoyment and possession by the Defendants named in this cause of action was tortious, malicious, and oppressive, and entitles Leaser, Wongsaroj, Magee, and members of the Habitability Class to an award of punitive damages in an amount according to proof.

## **THIRD CAUSE OF ACTION**

(Negligence)

(By Plaintiffs Leaser, Wongsaroj, and Magee on behalf of themselves and the Habitability

Class against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC,

Prime Administration, LLC, and Does 31 through 50, inclusive)

125.    Leaser, Wongsaroj, and Magee incorporate herein by reference all of the allegations set forth above, as though fully set forth below.

126.    The Defendants named in this cause of action owed Leaser, Wongsaroj, Magee, and each member of the Habitability Class a duty to provide a safe apartment free of vermin, under the standards set forth in Civil Code sections 1941 and 1941.1.

127.    The Defendants named in this cause of action breached this duty by providing Leaser, Wongsaroj, Magee, and each member of the Habitability Class with a vermin-infested apartment, and by failing to rid the apartment of the vermin.

128.    As a proximate result of this breach, Wongsaroj, Leaser, Magee, and the Habitability Class have suffered damages in an amount according to proof, including an over-payment of rent for the Leaser Apartment, the Magee Apartment and the other apartments rented to members of the Habitability Class, emotional distress to Wongsaroj, the loss of certain personal property belonging to Wongsaroj, and moving expenses both in and out of the Leaser Apartment, the Magee Apartment, and other apartments that members of the Habitability Class had occupied. The breach also constituted a constructive eviction of Leaser, Wongsaroj, Magee, and other members of the Habitability Class.

129.    Total damages to Wongsaroj and Leaser as a result of this negligence are at least twenty thousand dollars ($20,000.00).

130.    Leaser, Wongsaroj, and Magee are informed and believe and thereon allege that the damages to members of the Habitability Class proximately caused by this negligence are in no event less than one million dollars ($1,000,000.00).

131.    Prime Ascot Acquisition, LLC is liable to Leaser, Wongsaroj, Magee, and all other members of the Habitability Class as the general partner of Prime Ascot, L.P.

**FOURTH CAUSE OF ACTION**

(Nuisance)

(By Plaintiffs Leaser, Wongsaroj, and Magee on behalf of themselves and the Habitability

Class against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC,

Prime Administration, LLC, and Does 31 through 50, inclusive)

132.    Leaser, Wongsaroj, and Magee incorporate herein by reference all of the allegations set forth above, as though fully set forth herein.

133.    The Defendants named in this cause of action caused and allowed a nuisance to remain in the Blue Rock Village complex, by allowing an infestation of vermin to occur and by failing to take appropriate steps to eliminate the infestation.

134.    As a proximate result of this nuisance, Wongsaroj, Leaser, Magee, and members of the Habitability Class have suffered damages in an amount according to proof, including an over-payment of rent for the Leaser Apartment, the Magee Apartment, and the other apartments rented by members of the Habitability Class, emotional distress to Wongsaroj, the loss of certain personal property belonging to Wongsaroj, and moving expenses both in and out of the Leaser Apartment, the Magee Apartment, and other apartments that members of the Habitability Class had occupied. The breach also constituted a constructive eviction of Leaser, Wongsaroj, Magee, and other members of the Habitability Class.

135.    Total damages to Wongsaroj and Leaser as a result of this nuisance are at least twenty thousand dollars ($20,000.00).

136.    Leaser, Wongsaroj, and Magee are informed and believe and thereon allege that the damages to members of the Habitability class proximately caused by this nuisance are in no event less than one million dollars ($1,000,000.00).

137.    Prime Ascot Acquisition, LLC is liable to Leaser, Wongsaroj, Magee, and all other members of the Habitability Class as the general partner of Prime Ascot, L.P.

138.    Plaintiffs are also informed and believe and thereon allege that they are entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5, as this action will result in the enforcement of an important right affecting the public interest.

139.    The conduct of the defendants named herein with respect to this nuisance was tortious, malicious, and oppressive, and entitles Leaser, Wongsaroj, Magee, and members of the Habitability Class to an award of punitive damages in an amount according to proof.

## **FIFTH CAUSE OF ACTION**

(Intentional Misrepresentation)

(By Plaintiffs Leaser and Wongsaroj on behalf of themselves and the Habitability Class

against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC,

Prime Administration, LLC, and Does 31 through 50 inclusive)

140.    Leaser and Wongsaroj incorporate herein by reference all of the allegations set forth above, as though fully set forth below.

141.    The Defendants named in this cause of action knew, as of May 25, 2017, that the Leaser Apartment suffered from a mice infestation and was uninhabitable as a result. The Defendants named in this cause of action also intentionally failed to disclose this fact to Leaser and Wongsaroj, who were ignorant of this fact at that time.

142.    Leaser and Wongsaroj justifiably relied on the silence of the Defendants named in this cause of action by signing their respective leases, and Wongsaroj further relied on this silence by moving into the Leaser Apartment. Neither Leaser or Wongsaroj would have done these things had the Defendants named in this cause of action disclosed the infestation.

143.    As a proximate result of the misrepresentation by the Defendants named in this cause of action, Leaser and Wongsaroj have suffered damages in an amount according to proof, including an over-payment of rent for the Leaser Apartment, emotional distress to Wongsaroj,  the loss of certain personal property belonging to Wongsaroj, and moving expenses both in and out of the Leaser Apartment. Total damages to Wongsaroj and Leaser as a result of the misrepresentation are in no event less than twenty thousand dollars ($20,000.00).

144.    Prime Ascot Acquisition, LLC is liable to Leaser and Wongsaroj as the general partner of Prime Ascot, L.P.

145.    The conduct of the Defendants named in this cause of action was tortious, fraudulent, malicious, and oppressive, and entitles Leaser and Wongsaroj to an award of punitive damages in an amount according to proof.

## **SIXTH CAUSE OF ACTION**

### (Breach of Contract)

(By Plaintiffs Leaser, Wongsaroj, Magee, and Eisman on behalf of themselves and Excessive Fees Class and the Security Deposit Class, against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC,  and Does 31 through 50, inclusive)

146.    Plaintiffs incorporate herein by reference all of the allegations set forth above, as though fully set forth below.

147.    This cause of action relates to Plaintiffs, and each of the members of the Excessive Fees Class and Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea, owned and/or operated by one or more of the named Defendants.

148.    Plaintiffs performed their obligations under their lease, or the performance of those obligations were excused. Plaintiffs are informed and believe and thereon allege that the same is true for the other members of the Excessive Fees Class and the Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea.

149.    The requirements of Civil Code sections 1950.5, 1951.2, and 1951.4 are also implicitly a part of the lease agreement between the Defendants named in this cause of action and Plaintiffs and the members of the aforementioned proposed classes that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea.

150.    The named Defendants breached their leases with members of the Excessive Fees Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea by charging an "early termination fee" against class members' deposits for vacating their apartment before the end of the fixed term of their leases, even though the apartments were re-leased in less than one month and Defendants' damages from the early move out, if any, were far less than the fees charged.

151.    The named Defendants breached their leases with members of the Excessive Fees Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea by continuing to charge rent beyond the thirtieth (30th) day following the a member of these proposed classes providing a notice to vacate in accordance with the terms of their lease.

152.    The named Defendants breached their leases with members of the Excessive Fees Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea by improperly deducting their security deposits for painting charges based on an improper determination of useful life.

153.    The named Defendants breached their leases with members of the Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea by not timely providing tenants notice of the charges against their security deposits as described above.

154.    As a proximate result of these breaches, members of the Excessive Fees Class and Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea have suffered damages in an amount according to proof. Plaintiffs are informed and believe and thereon allege that these damages are in no event less than one million dollars ($1,000,000.00).

155.    Plaintiffs are informed and believe and therefore allege that the lease applicable to members of the Excessive Fees Class and Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea contains a provision allowing the Lessor to recover attorney's fees and costs to enforce the lease agreements. Under California Civil Code 1717, this provision must be interpreted as awarding attorney's fees and costs to the party who is determined to be the party prevailing on the lease, whether or not they are the party specified in the lease to recover attorney's fees. Plaintiffs are therefore entitled to an award of reasonable attorney's fees and costs in this action. Plaintiffs are also informed and believe and thereon allege that they are entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5, as this action will result in the enforcement of an important right affecting the public interest.

## SEVENTH CAUSE OF ACTION

### (Violation of Civil Code section 1950.5)

(By Plaintiffs Leaser, Wongsaroj, and Eisman on behalf of themselves and the Security Deposit Class, against Defendants Prime Administration, LLC; Prime Ascot, L.P., Prime Ascot Acquisition, LLC; and Prime/Park LaBrea Titleholder, LLC)

156.    Plaintiffs incorporate herein by reference all of the allegations set forth above, as though fully set forth below.

157.    California Civil Code section 1950.5 contains strict limitations on what items may be deducted from a tenant's security deposit, what must be provided to tenants when deductions are made for repairs, and the timing of the notice to a tenant as to these deductions.

158.    Specifically, pursuant to Civil Code section 1950.5(g)(1), within "21 calendar days after the tenant has vacated the premises… the landlord shall furnish the tenant, by personal delivery or by first class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any

remaining portion of the security to the tenant." Defendant Prime Administration, LLC is a "landlord" for the purposes of Civil Code section 1950.5 because, as described above, Prime Administration, LLC actively and directly demanded and collected security deposits from Plaintiffs.[9] Prime Administration, LLC also corresponded with Plaintiffs about security deposits, including claimed charges/deductions from security deposits, and provided Plaintiffs with itemized statements relating to claimed charges/deductions from security deposits. Prime Administration, LLC similarly collected security deposits and engaged in the above-described conduct in relation to all members of the Security Deposit Class that resided at the Prime Properties, including those residing at Prime Properties other than Blue Rock Village and Park La Brea. Defendant Prime Ascot, L.P. and Prime/Park LaBrea Titleholder, LLC are landlords subject to Section 1950.5 because, as described above, they are identified as the owners of Blue Rock Village and Park La Brea on the leases of tenants of those properties within the Security Deposit Class, which Defendants have acknowledged. *See* Dkt No. 6, p. 19 ("[Plaintiffs] fail[] to state a claim against any of the Defendants ***besides their actual landlords with whom they had rental agreements-***Prime Ascot, [L.P.] (Named Plaintiffs Leaser, Wongsaroj, and Magee) and Prime/Park LaBrea Titleholder, LLC (Named Plaintiff Eisman).") (emphasis added); Dkt. No. 26, p. 12 (acknowledging same). Defendant Prime Administration, LLC also, upon information and belief, sets the security deposit amounts, and sets and effectuates policies related to charges to and deductions from security deposits for every unit at every one of the Prime Properties in California.

159.    The requirements of Civil Code section 1950.5 are also implicitly a part of the lease agreement between the Defendants named in this cause of action and Plaintiffs. The same is true of the lease agreements between Defendants named in this case of action and all members of the Security Deposit Class.

160.    The Defendants named in this cause of action have violated section 1950.5 of the California Civil Code and breached their leases with the people described in the preceding paragraph in the following fashion:

---

[9] See *Zeff v. Greystar Real Estate Partners, LLC*, 2021 WL 632614, at *8 (N.D. Cal. Feb. 18, 2021) ("any individual or entity who collects a security deposit from a tenant may be held liable for violating the requirements of § 1950.5") (relying on *Kraus v. Trinity Mgmt. Servs. Inc.,* 57 Cal. App. 4th 709, 67 Cal.Rptr.2d 210 (1997)).

SECOND AMENDED CLASS ACTION COMPLAINT

a.     Defendants have violated section 1950.5 as to members of the Security Deposit Class by improperly deducting painting charges based on an improper useful life from members' security deposits.

b.     Defendants have violated section 1950.5 as to the members of the Security Deposit by not timely providing tenants with proper notice and documentation of the charges against their security deposits in compliance with section 1950.5, including as described above.

161.    As a proximate result of the failures described above, the members of the Security Deposit Class described herein have been injured in an amount according to proof. Plaintiffs are informed and believe and thereon allege that the total amount of damages is at least two million dollars ($2,000,000.00).

162.    The Defendants who are general partners of the limited partnership Defendants who nominally hold title to any Prime Properties are liable by virtue of their positions as general partners of such limited partnerships.

163.    Plaintiffs and the members of the Security Deposit Class described herein are entitled to attorney's fees as a result of the provision for such in their respective leases as described above. Plaintiffs are also entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5, as this action will result in the enforcement of an important right affecting the public interest.

164.    The conduct of the Defendants named in this cause of action was undertaken in "bad faith," as that term is used in Civil Code section 1950.5(1), and entitles Plaintiffs and the other members of the proposed classes named herein to statutory damages equal to twice the amount of the security, in addition to their actual damages.

165.    The conduct of the Defendants named in this cause of action was oppressive and malicious and entitles Plaintiffs and the other members of the proposed classes named herein to punitive damages in an amount according to proof.

1

**EIGHTH CAUSE OF ACTION**

2

(Violation of Business & Professions Code section 17200 et seq.)

3

(By Plaintiffs on behalf of themselves and all classes and subclasses as against all Defendants)

4      166.    Plaintiffs incorporate herein by reference all of the allegations set forth above, as

5 though fully set forth below.

6      167.    The UCL prohibits businesses from engaging in any unlawful, unfair, or fraudulent

7 business acts or practices.

8      168.    As described above, Defendants have leased apartments to Leaser, Wongsaroj,

9 Magee, and members of the Habitability Class in the Blue Rock Village complex that are infested

10 with mice and other vermin, all in violation of California Civil Code section 1941.1(6). The rental

11 of apartments in violation of this code section is therefore an unlawful business practice under

12 California Business and Professions Code section 17200. In addition, these business practices are

13 unfair in that: (1) the practices offend established public policies regarding the protection of tenants,

14 (2) the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious

15 to tenants, and (3) and the injury to tenants is substantial, and is not outweighed by any

16 countervailing benefits of Defendants' practices to consumers or competition. These practices result

17 in charging tenants unfair amounts of rent, leading to constructive and actual evictions of tenants

18 and improper collection actions by the Defendants. These harms to the tenants greatly outweigh the

19 utility, if any, of the practices.

20      169.    Separately, as described above, Defendants engaged in a policy and practice of

21 imposing and collecting excessive late rent and late utility payment penalties (aka late fees) from

22 Plaintiffs and members of the Excessive Fees Class that constitute unlawful acts and practices

23 prohibited by California Civil Code section 1671 and, as such, are also prohibited by the UCL.

24      170.    Separately, the Defendants' policy and practice with respect to imposing excessive

25 late fees is also "unfair" because it has a great and deleterious effect on its victims (including

26 Plaintiffs, the Excessive Fees Class, and law-abiding competitors) and it has no legal justification.

27 The Defendants' motives in imposing these fees are driven purely by anticipated profits and without

28 regard to their legality. These fees are particularly unfair in instances where the late fees stem from

sewer, water, or garbage charges that are added to tenants' accounts after they have paid their rent or after payment was already due. The fees are also penal in nature and violate the public policy embodied in California Civil Code section 1671.

171.    Further, on information and belief Defendants intentionally apply California tenants' payment to their previously recorded debt first (including the assessed penalties), rather than the rent due for the month in which payment is actually made. Unless an Excessive Fees Class member takes that into account in making their rent payment, the Defendants considers that month's "rent" as not paid in full and then assesses another late rent penalty despite tenants' full and timely monthly rent payment. As a result, the Defendants charge a late fee on a balance that may be smaller than the amount of the late fee to begin with.  As a result, tenants incur repeated late penalties. The only purpose of this policy and practice is to unduly penalize members of the Excessive Fees Class, not actually provide for any damages suffered by Defendant. The practice of charging late fees on outstanding late fees and other balance amounts other than the monthly rent itself is an also an unfair and illegal business practice no different than the "pyramiding" of late fees by banks that has similarly found to be unlawful.

172.    In addition, the Defendants' business policies and practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and tenants. Indeed, these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the Defendants as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from tenants, but also result in unfairly ruined credit and unlawful evictions. These harms to the tenants greatly outweigh the utility, if any, of the practice. Therefore, these practices are unfair in that: (1) the practices offend established public policies regarding the protection of tenants, (2) the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to tenants, and (3) and the injury to tenants is substantial, and is not outweighed by any countervailing benefits of Defendants' practices to consumers or competition.

173.    Separately, as described above, the Defendants also engaged in a policy and practice of improperly charging the Excessive Fees Class continued rent even when tenants provided adequate notice of termination, in violation of the Defendants' leases with its tenants. Because Defendants' policy and practice of charging such unlawful rent violates Civil Code § 1951.2, it is an unlawful business act or practice which causes Plaintiffs and members of the proposed classes to suffer financial injury, and is prohibited by the UCL. It is also an unfair business act or practice in violation of the UCL as: (1) the practices offend established public policies regarding the protection of tenants, (2) the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to tenants, and (3) and the injury to tenants is substantial, and is not outweighed by any countervailing benefits of Defendants' practices to consumers or competition.

174.    Separately, as described above, the Defendants also engaged in a policy and practice of charging the Excessive Fees Class early termination fees regardless of the damages, if any, suffered by Defendants by such "early" terminations of leases. As Defendants do not allow their tenants to sublease or assign their residences under their Defendants' form lease agreements, Defendants have a duty to attempt to re-lease tenants' apartments to mitigate their damages under Civil Code sections 1951.2 and 1951.4. Plaintiffs are informed and believe that Defendants' imposition of a full early termination fee notwithstanding Defendants efforts or lack thereof to mitigate damages is a liquidated damages penalty, and is void under California Civil Code § 1671(d) because it is excessive and bears no relation to any actual damages incurred by Defendants when tenants terminate their lease early Because Defendants' policy and practice of charging excessive early termination fees violates Civil Code § 1671(d), it is an unlawful business act or practice which causes Plaintiffs and other tenants financial injury, and is prohibited by the UCL. It is also an unfair business act or practice in violation of the UCL as: (1) the practices offend established public policies regarding the protection of tenants, (2) the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to tenants, and (3) and the injury to tenants is substantial, and is not outweighed by any countervailing benefits of Defendants' practices to consumers or competition.

175.    Separately, as described above, the Defendants also engaged in a policy and practice

of demanding and collecting security deposits from the Security Deposit Class and then failing to comply with California law regarding the charging and refunding of those security deposits, including but not limited to providing a properly itemized statement of deductions from tenants' security deposits within 21 days including applicable receipts. Because Defendants' policies and practices violates Civil Code 1950.5, it is an unlawful business act or practice prohibited by the UCL. It is also an unfair business act or practice in violation of the UCL as: (1) the practices offend established public policies regarding the protection of tenants, (2) the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to tenants, and (3) and the injury to tenants is substantial, and is not outweighed by any countervailing benefits of Defendants' practices to consumers or competition.

176.    Plaintiffs and the members of the Habitability Class, Excessive Fees Class, and Security Deposit Class have suffered injury in fact and lost money or property pursuant to California Business and Professions Code section 17204 as a result of Defendant's unlawful and/or unfair business acts or practices.

177.    As a result of these unlawful business acts and practices, the Defendants have reaped unfair benefits and illegal profits, at the expense of Plaintiffs and members of the proposed classes described in this cause of action. Plaintiffs and the members of the proposed classes are therefore entitled to an order of restitution requiring the Defendants to restore to Plaintiffs and members of the proposed classes the money which Defendants have acquired by means of their unlawful and unfair business acts and practices, including the amount of rent paid in excess of the fair rental value of the apartments rented by the members of the Habitability Class, excessive late penalties for payment of rent or utilities, early termination fees, and improperly withheld security deposits, with accrued interest. Plaintiffs are informed and believe and thereon allege that the total amount of restitution owed to Plaintiffs and the members of the proposed classes is at least two million dollars ($2,000,000.00).

178.    All such remedies are cumulative of relief available under other laws, pursuant to California Business and Professions Code section 17205.

SECOND AMENDED CLASS ACTION COMPLAINT

1    179.    Plaintiffs, on behalf of themselves and the members of the Habitability Class,

2  Excessive Fees Class, and Security Deposit Class are also entitled to and hereby seek injunctive

3  relief, including public injunctive relief, prohibiting further violations of Civil Codes sections 1671,

4  1941.1(6) and 1950.5.

5    180.    Plaintiffs are also entitled to attorney's fees under Code of Civil Procedure section

6  1021.5, as this action will result in the enforcement of an important right affecting the public interest.

7                                  **JURY DEMAND**

8    181.    Plaintiffs respectfully request a jury trial on all claims and issues so triable.

9                               **PRAYER FOR RELIEF**

10    WHEREFORE, Plaintiffs pray for judgment against Defendants and seek relief as follows:

11    1.    That the Court determine this action may be maintained as a class action under Rule

12  23 of the Federal Rules of Civil Procedure, define the proposed classes as requested above, and to

13  approve Plaintiffs' counsel as class counsel;

14    2.    For monetary damages in an amount according to proof, but in no event are less than

15  $20,000.00 for Leaser and Wongsaroj, and no less than Two Million Dollars ($2,000,000.00) for the

16  members of the various classes;

17    3.    For statutory damages for Plaintiffs and all affected class members pursuant to Civil

18  Code section 1950.5(1);

19    4.    For restitution under the Unfair Competition Law, Business & Professions Code

20  section 17200 et seq. as well as public injunctive relief under the UCL;

21    5.    For disgorgement of all monies by which Defendants have been unjustly enriched or

22  otherwise owe Plaintiffs and members of the various classes under a theory of quasi-contract;

23    6.    For exemplary damages in an amount according to proof;

24    7.    For reasonable attorney's fees and costs of suit;

25    8.    For pre-judgment interest;

26    9.    For an injunction prohibiting further breaches of California Civil Code sections 1671,

27  1941.1(6) and 1950.5 by any of the Defendants in this action, and requiring those Defendants to rent

28  apartments free of mice infestation, to cease from charging improper late fees and early termination

SECOND AMENDED CLASS ACTION COMPLAINT

1   fees, to cease from making the charges described above against security deposits, to provide all

2   tenants with receipts along with the statement as to their security deposit, and to provide those

3   statements and receipts within the time set by California Civil Code section 1950.5; and

4        10.    For such other and further relief as this Court deems just and proper.

5

6   Respectfully submitted:

7   DATED:  April 4, 2022              **NICHOLAS & TOMASEVIC, LLP**

8

9                                By:    ____*/s/ Ethan T. Litney*_____
                                        Craig M. Nicholas
10                                      Alex Tomasevic
                                        Ethan T. Litney
11                                      225 Broadway, Floor 19
                                        San Diego, California 92101
12                                      Telephone: (619) 325-0492
                                        Facsimile: (619) 325-0496
13                                      Email: cnicholas@nicholaslaw.org
                                        Email: atomasevic@nicholaslaw.org
14                                      Email: elitney@nicholaslaw.org

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT