1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    NICHA LEASER, et al.,                         No. 2:20-cv-02502-TLN-AC

12                   Plaintiffs,

13          v.                                        **ORDER**

14    PRIME ASCOT, L.P, et al.,

15                   Defendants.

16

17          This matter is before the Court on Defendants Prime Ascot, L.P., Prime Ascot

18    Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, Prime Administration, LLC, Prime

19    Campina, L.P., Prime Campina Acquisition, LLC, Prime Cassanna, L.P., Prime Oceanside

20    Acquisition, LLC, Prime Clairemont, L.P., Prime Clairemont Acquisition, LLC, Prime Detroit,

21    LLC, Prime Mesa, L.P., Prime Old County, L.P., Prime Old County Acquisition, LLC, Prime

22    Peninsula, L.P., Prime Channel Islands Acquisition, LLC, Prime Rivershore SPC, LLC, Prime

23    Spain Glen Drive, LLC, Prime Spectrum, LLC, Prime Tennyson, LLC, Prime Toyon Housing

24    Partners, L.P., Prime Toyon Acquisition, LLC, Prime Vista Montana, LLC, Prime Waterview,

25    LLC, Prime Wellington Park, LLC, Prime/Coral Bay, L.P., Coral Acquisition, Inc., Prime

26    Devonshire SPE, LLC, Prime/Scrc, L.P., Prime/Scrc SPE, L.P., Prime/South Coast, L.P.,

27    Prime/South Coast Holding, LLC, and Prime Victoria, LLC's (collectively, "Defendants")

28    Motion for Reconsideration.  (ECF No. 27.)  Plaintiffs Nicha Leaser ("Leaser"), Atchara

                                                  1

1    Wongsaroj ("Wongsaroj"), Katina Magee ("Magee"), and Joyce Eisman ("Eisman") (collectively,

2    "Plaintiffs") filed an opposition.  (ECF No. 28.)  Defendants filed a reply.  (ECF No. 31.)  For the

3    reasons set forth below, Defendants' motion is GRANTED.

4              I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

5              The Court need not recount the full factual background of this case as it is set forth in the

6    Court's March 4, 2022 Order.  (ECF No. 26.)  In short, Plaintiffs allege Defendants overcharged

7    for certain fees and charges, withheld security deposits, and failed to disclose vermin infestations

8    to prospective tenants.  (*See id.* at 2.)  Defendants sought to dismiss Plaintiffs' First Amended

9    Complaint ("FAC") on multiple grounds.  (ECF Nos. 6, 16.)

10             As relevant to the instant motion, Defendants argued in its first motion to dismiss that

11   Plaintiffs lacked standing to sue any of the Standing Defendants because they had no lease or

12   other dealings with them.  (ECF No. 6 at 15.)  In opposition, Plaintiffs asserted that Defendants

13   ignored theories of secondary liability, such as aiding and abetting.  (ECF No. 11 at 11–13.)  As

14   the Court previously noted, "California . . . 'has adopted the common law rule' that '[l]iability

15   may [ . . . ] be imposed on one who aids and abets the commission of an intentional tort if the

16   person [ . . . ] knows the other's conduct constitutes a breach of a duty and gives substantial

17   assistance or encouragement to the other to so act.'"  *Solarmore*, 2022 WL 358245, at \*5 (quoting

18   *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1144 (2005)).  "To satisfy the knowledge

19   prong, the defendant must have actual knowledge of the specific primary wrong the defendant

20   substantially assisted."  *Id.* (internal quotation marks and citation omitted).  Plaintiffs' FAC

21   alleges the following with respect to "aiding and abetting":

22             [Prime Administration] today owns and operates over 15,000 units
               in California, Oregon, Washington, and Nevada . . . the same group
23             of individuals operates and manages both Prime Administration and
               the entities holding title to the Prime Properties . . . these limited
24             partnerships and limited liability company titleholders are merely
               instrumentalities of Prime Administration, are all part of the same
25

26   ─────────────
     [1]    For the purposes of this Order, the Court will continue to refer to Prime Ascot, L.P., Prime
     Ascot Acquisition, LLC, Prime Administration, LLC, and Prime/Park LaBrea Titleholder, LLC
27   — the entities from which Plaintiffs leased an apartment — as the "Blue Rock/Park LaBrea
     Defendants."  The Court will also continue to refer to the remaining 29 Defendants as the
28   "Standing Defendants."

─────────────

2

1

2

3

4

5

6

> scheme, and are controlled and managed collectively.  To the extent the nominal titleholders have any independent existence, they are co-conspirators and aiders and abettors of Prime Administration in committing the conduct described in [the FAC].  The nominal titleholders knowingly participated in the common scheme and giving substantial assistance and encouragement to Prime Administration, including allowing Prime Administration to implement and effectuate the unfair and unlawful policies and practices described in this [FAC] at the various Prime Properties owned by the nominal titleholders.

7

8

9

10

11

12

13

(ECF No. 1-2 at 11–12.)  The FAC further alleges "Defendants all knowingly aided and abetted the violations of law described in [the FAC] and knowingly aided and abetted the conduct related to the scheme, agreed to commit the unlawful and unfair conduct, and gave substantial assistance and encouragement in committing the unlawful and unfair conduct." (*Id.* at 15.)  Based on the foregoing, the Court held Plaintiffs had standing because the Court found Plaintiffs adequately pleaded that the Standing Defendants aided and abetted the alleged unlawful conduct.  (ECF No. 26 at 6–8.)

14

15

16

On March 14, 2022, Defendants filed the instant motion for reconsideration, arguing the Court should reconsider its finding that Plaintiffs sufficiently alleged aiding and abetting liability.  (ECF No. 27.)

17        **II.        STANDARD OF LAW**

18

19

20

21

22

23

24

25

26

27

The Court may grant reconsideration under Federal Rules of Civil Procedure 59(e) or 60.  *See Schroeder v. McDonald*, 55 F.3d 454, 458–59 (9th Cir. 1995).  A motion to alter or amend a judgment under Rule 59(e) must be filed no later than twenty-eight days after the entry of judgment.  Fed. R. Civ. P. 59(e).  Therefore, a "motion for reconsideration" is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within twenty-eight days of entry of judgment; otherwise, it is treated as a Rule 60(b) motion for relief from judgment or order.  *Rishor v. Ferguson*, 822 F.3d 482, 490 (9th Cir. 2016); *see Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001).  Defendants' motion was filed within twenty-eight days of entry of judgment and is therefore construed as a motion to alter or amend the judgment under Rule 59(e).

28        ///

3

1    Rule 59(e) does not list specific grounds for a motion to amend or alter, therefore the

2    district court enjoys considerable discretion in granting or denying the motion.  *Allstate Ins. Co. v.*

3    *Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255

4    n.1 (9th Cir. 1999)).  Nevertheless, a motion for reconsideration under Rule 59(e) "should not be

5    granted, absent highly unusual circumstances, unless the district court is presented with newly

6    discovered evidence, committed *clear error*, or if there is an intervening change in the controlling

7    law." *McDowell*, 197 F.3d at 1255.  Further, "[a] motion for reconsideration may *not* be used to

8    raise arguments or present evidence for the first time when they could reasonably have been

9    raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

10   F.3d 873, 880 (9th Cir. 2009) (emphasis in original).

11       "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted:

12   (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment

13   rests; (2) if such motion is necessary to present newly discovered or previously unavailable

14   evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is

15   justified by an intervening change in controlling law." *Allstate Ins. Co.*, 634 F.3d at 1111.

16       **III.   ANALYSIS**

17       Defendants request reconsideration of the Court's ruling in its March 4, 2022 Order

18   denying the Standing Defendants' motion to dismiss pursuant to Rule 12(b)(1) based on the

19   finding that Plaintiffs sufficiently alleged aiding and abetting liability.  (*See* ECF No. 27.)

20   Defendants argue the Court committed clear error in its ruling and that they will be subject to

21   manifest injustice if discovery is allowed to proceed on the aiding and abetting liability claim.

22   (*Id.*)  The Court will consider each argument in turn.

23       A.    Whether the Court Committed Clear Error

24       Defendants argue the Court "committed clear error in applying the *Iqbal/Twombly*

25   standard to . . . Plaintiffs' aiding and abetting allegations and ruling those allegations were

26   sufficient." (*Id.* at 6.)  Defendants contend the allegations supporting Plaintiffs' aiding and

27   abetting claim are found in paragraphs 50 and 58 of the First Amended Complaint ("FAC") and

28   recite nothing more than the elements of the claim.  (*Id.* at 7.)  Defendants further argue Plaintiffs

4

1    "have not detailed *any* affirmative action taken by the Standing Defendants to assist or facilitate

2    the Blue Rock/Park LaBrea Defendants in wrongfully imposing the fees" on Plaintiffs nor have

3    Plaintiffs provided details "corroborating the Standing Defendants' alleged knowledge of the

4    Blue Rock/Park LaBrea Defendants' alleged primary wrong." (*Id.* at 9, 12.)  Defendants maintain

5    the plaintiffs in *Solarmore Mgmt. Servs. Inc. v. Bankruptcy Estate of DC Solar Sols., Inc.*, No.

6    2:19-cv-02544-JAM-DB, 2022 WL 358245 (E.D. Cal. Feb. 7, 2022) — the case this Court relied

7    in its March 4, 2022 Order — provided "specific factual allegations of substantial assistance in

8    the operative complaint" which stand "in stark contrast" to the "non-existent factual allegations of

9    substantial assistance in this case."[2]  (*Id.* at 10 n.6.)

10        In opposition, Plaintiffs assert Defendants have not met their burden to demonstrate clear

11   error as their motion fails to identify any controlling authority that was disregarded by the Court,

12   improperly repeats arguments already presented to the Court, and cites authorities that do not

13   support a reversal of the Court's finding that Plaintiffs adequately pleaded the claim.[3]  (ECF No.

14   28 at 11–17.)  Specifically, Plaintiff notes that this Court's analysis in *United States v. Amsurg*

15   *Corp.*, No. 2:12-cv-02218-TLN-CKD, 2016 WL 304567, at *3 (E.D. Cal. Jan. 26, 2016) is

16   instructive as it "recognized that non-controlling authority, even if persuasive, cannot alone

17   support a motion for reconsideration" and, as in *Amsurg*, the authorities cited by Defendants are

18   

19   [2]    Defendants also seek judicial notice of the Second Amended Complaint ("SAC") filed in
     *Solarmore*.  (ECF No. 27-1.)  This Court may take judicial notice of facts that can be "accurately
20   and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.
     Evid. 201(b)(2).  The Ninth Circuit has held that proceedings and determinations of the courts are
21   a matter of public record suitable for judicial notice.  *Emrich v. Touche Ross & Co.*, 846 F.2d
     1190, 1198 (9th Cir. 1988).  Defendants' request for judicial notice is GRANTED so that the
22   Court can compare the *Solarmore* SAC and the instant FAC.

23   
     [3]    Plaintiff notes that many of the authorities Defendants cite address aiding and abetting
24   fraud claims that implicate the heightened pleading requirements of Rule 9(b), which renders
     them distinguishable from this case.  (ECF No. 28 at 16.)  Indeed, Defendants cite a number of
25   cases in which courts granted motions to dismiss aiding and abetting claims for failure to comply
     with Rule 9(b).  (ECF No. 27 at 8 n.5.)  The Court agrees with Plaintiffs that the pleading
26   requirements of Rule 8 are applicable to the aiding and abetting claim and that such
     aforementioned cases are generally distinguishable.  The Court will only rely on cases in which
27   courts evaluated whether aiding and abetting claims were adequately pleaded pursuant to Rule 8
     and the standards articulated in *Iqbal*/*Twombly*.
28

1    not binding on the Court and should be ignored entirely.[4]  (*Id.* at 11, 13.)

2    In reply, Defendants note that because they "are seeking reconsideration on the grounds

3    that denial of the motion to dismiss with respect to the aiding and abetting claim was based on

4    clear error . . . by necessity, they must reiterate law and arguments from their prior motion, in

5    order to clarify and illuminate arguments . . . ." (ECF No. 31 at 5.)

6    In *Solarmore*, a plaintiff corporation that purchased mobile solar generators (the "Funds")

7    filed suit against three groups of defendants alleged to have perpetrated a fraudulent scheme

8    involving the sale of the generators.  2022 WL 358245, at *1.  One of the defendants (Heritage

9    Bank) — who plaintiff alleged aided and abetted the fraud — moved to dismiss the plaintiff's

10   aiding and abetting claims on the basis that the plaintiff failed to adequately allege the knowledge

11   prong.  *Id.*  The court noted the plaintiff's allegations that Heritage's employee (Kershaw) knew

12   that other defendants (the Carpoffs) were misappropriating funds from the plaintiff's account was

13   "corroborated by specific factual allegations."  *Id.* at *5 (citing SAC ¶¶ 261, 263–66, 269, 272–

14   74).  Some of the aforementioned paragraphs in the plaintiff's SAC state as follows:

15   
16   Kershaw developed an exceptionally close relationship with the Carpoffs.  Kershaw referred business opportunities to the Carpoffs and DC Solar, forwarded friend's resumes to DC Solar, wrote more than a dozen reference letters, and went on social outings with the Carpoffs . . .

17   

18   Kershaw provided the Carpoffs with substantial assistance in carrying out their fraud, including by:

19   

20   • Permitting the Carpoffs to withdraw [p]laintiff's money from its account.

21   • Kershaw allowed the Carpoffs to commingle their personal accounts and the DC Solar accounts in the same portfolio in violation of state law.

22   

23   

---

24   [4]    Defendants contend *Amsurg* is inapposite, as the issue in *Amsurg* "was whether the use of a 'catch-all certification' form was sufficient to impose liability under the False Claims Act" and

25   the Court concluded "its decision to find liability based on that certification was not clear error." (*See* ECF No. 31 at 4–5.)  The defendants in *Amsurg* sought reconsideration on the basis that the

26   Court committed a clear error of law, which the Court rejected, noting that it did not reject "any binding precedent in reaching its opinion."  2016 WL 304567 at *4–5.  Here, Defendants argue

27   the same — that the Court committed a clear error of law in its application of the *Iqbal/Twombly*

28   standard.

- Kershaw regularly warned the Carpoffs when Jansen or [p]laintiff were asking for information about [p]laintiff's account and the Fund accounts, despite Heritage knowing of Jansen's ownership of [p]laintiff and his role as managing member of each Fund.  On information and belief, Kershaw and the Carpoffs agreed to prevent Plaintiff from getting this information . . .

On information and belief, throughout its relationship with the Carpoffs, Heritage observed numerous red flags that Heritage knew or should have known that the Carpoffs were engaging in fraud and converting Plaintiff's assets, including:

- The Carpoffs attempted to obtain a $20 million line of credit from Heritage but refused to provide any documents establishing the existence of third-party leases.

- On April 10, 2017, Diana Kershaw, Senior Vice President at Heritage, informed the Carpoffs that the commingling of personal and business accounts by the Carpoffs violated Heritage Bank's guidelines.

- Heritage allowed the Carpoffs to access [p]laintiff's money in its Heritage account despite knowing of Jansen's ownership of [p]laintiff and without having the documentation and authorizations from Jansen as required by state banking law and Heritage Bank's own internal guidelines.

- In an October 10, 2015 email Kershaw noted that "there is a lot of online usage" occurring in the Carpoff's, DC Solar Enterprises, [p]laintiff, and the Funds' accounts . . .

Kershaw and Heritage hid the Carpoffs' fraud from Plaintiff by denying Jansen, the known owner of [p]laintiff, access to its banking records and statements . . .

In addition, Heritage continuously denied Jansen, the managing member of the Funds, access to the Fund banking records.  For example, in a June 22, 2017 email, Kershaw told Jansen that she would not provide him with banking records for the Funds unless the Carpoffs consented.

(SAC ¶¶ 261, 266, 269, 272–74.)

Plaintiffs state that *Benson*, another case cited by Defendants, supposedly has "allegations in support of aiding and abetting that are largely similar to those identified in the FAC, and those identified in the Court's [March 4, 2022] [O]rder."  (ECF No. 28 at 16–17 (citing ECF No. 1-2 ¶¶ 47–60; ECF No. 26 at 7–9; *Benson v. JPMorgan Chase Bank, N.A.*, Nos. C-095272 EMC, C-09-5560 EMC, 2010 WL 1526394, at *4 (N.D. Cal. Apr. 15, 2010)).)  The plaintiffs in *Benson*

alleged JPMorgan Chase Bank, N.A. ("JPMorgan") and Washington Mutual, Inc. ("WaMu")

aided and abetted a Ponzi scheme in which three nonparties (including William Wise) offered for

sale and sold fraudulent certificates of deposit ("CDs") to the plaintiffs.  2010 WL 1526394, at

*1.  A review of the factual allegations in *Benson* reveals that there are "multiple specific factual

allegations in plaintiffs' complaint that supported a plausible claim the alleged aiders and abetters

knew of the primary wrong."  (ECF No. 27 at 12.)  Namely, with respect to the knowledge prong:

> Plaintiffs allege that WaMu/JPMorgan knew that Mr. Wise and his associates were perpetrating the Ponzi scheme . . . whose funds were ultimately used by the Ponzi participants for their own personal benefit . . . [and] that, as a result of the audits, WaMu/JPMorgan knew that neither Mr. Wise, his associates, nor the Nevada LLCs were registered to sell securities, that investors nonetheless believed that they were purchasing CDs from the Ponzi participants, as reflected on the face of the checks being deposited into the accounts, and that all of the investor deposits were being commingled in the same accounts.

*Id.* at *3.  The court noted further allegations support WaMu/JPMorgan's actual knowledge of the

Ponzi scheme, as plaintiffs alleged "the bank maintained a close business relationship with Mr.

Wise and his associates and that considerable resources of the bank were consumed in the

management of the Nevada LLCs' accounts — Mr. Wise and associates were 'amongst the

largest accounts handled at the Napa branches.'"  *Id.* at *4.  Even though the court noted that

"ordinary business transactions" can satisfy the substantial assistance prong, it found plaintiffs

satisfied this prong by specifically detailing how the bank assisted the Ponzi participants:

> *e.g.*, allowing Mr. Wise and his associates to deposit investor monies into the Nevada LLCs' accounts, permitting them to commingle funds within the Nevada LLCs' accounts, allowing Mr. Wise and the Nevada LLCs to transfer large amounts of investment deposits to offshore banking accounts, allowing Mr. Wise to use investor monies to pay for personal expenses, and authorizing remote banking platforms that prevented oversight.

*Id.*  The court also noted the bank's assistance "gave a false sense of legitimacy to the illicit

activities, which allowed Mr. Wise and his associates to defraud [p]laintiffs."  *Id.*

In contrast, the court in *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1074–75,

1114–15 (C.D. Cal. 2002), considered claims by fifty former and current writers for television

programming against fifty separate entities in the television industry and granted plaintiffs'

1    claims for aiding and abetting violations of the Fair Employment and Housing Act ("FEHA") and

2    the New York Human Rights Law ("NYHRL").  The court noted that "substantial assistance or

3    encouragement" requires "more than the mere inaction of another party to prevent

4    discrimination," and plaintiffs did not allege "that any one particular employer or talent agency

5    has acted in any specific way to aid any other particular employer in discriminating against any

6    particular [p]laintiff or class of [p]laintiffs." *Id.* at 1115.  The court noted that while heightened

7    pleading was not required, it was insufficient for "[p]laintiffs [to] simply make conclusory

8    allegations that that groups of [d]efendants have provided 'substantial assistance and

9    encouragement' to other groups of [d]efendants." *Id.*

10         Further, in *Aaron v. La Moderna*, No. C 97-0233 FMS, 1997 WL 564064, at *11 (N.D.

11   Cal. Aug. 27, 1997), the court granted the defendants' motion to dismiss the plaintiff's aiding and

12   abetting a breach of fiduciary duty claim.  The plaintiffs alleged corporate defendants "knew of,

13   and substantially assisted, the individual defendants' breaches of their fiduciary duties" to

14   complete a corporate merger. *Id.*  The court found that "[r]egardless of whether or not [plaintiffs]

15   have successfully pled knowledge, [they] have pled no facts suggesting any actual act of

16   assistance or participation by the . . . [corporate] defendants in the allocation of the merger

17   consideration." *Id.*  The court found plaintiffs' suggestion in their opposition brief that the

18   corporate defendants' "alleged knowledge of the disputed allocation, and the [corporate]

19   defendants' motive to favor the common stockholders" to be speculative. *Id.*

20         This Court previously concluded that it was a reasonable inference that Plaintiffs alleged

21   the Standing Defendants and the Blue Rock/Park LaBrea Defendants "knew the other's conduct

22   constitute[d] a breach of duty and g[a]ve[] substantial assistance or encouragement to the other to

23   so act." *Solarmore*, 2022 WL 358245, at *5.  However, compared to the factual allegations

24   provided in the plaintiff's SAC in *Solarmore*, upon reconsideration the Court finds Plaintiffs'

25   aiding and abetting claim is inadequately pleaded.  Plaintiffs' factual allegations are more similar

26   to the allegations pleaded in *Wynn*.  With respect to the substantial assistance prong, the Court

27   finds that Plaintiffs do not adequately allege *how* the Standing Defendants provided "substantial

28   assistance or encouragement" to Prime Administration. *Id.*  Further, with respect to the

1    knowledge prong, the Court finds that Plaintiffs do not adequately allege *how* the Standing

2    Defendants possessed "actual knowledge of the specific primary wrong the [Standing

3    Defendants] substantially assisted." *See Solarmore*, 2022 WL 358245, at *5. Plaintiffs identify

4    paragraphs 47 through 60 as similar to the factual allegations in *Benson* (ECF No. 28 at 16), but

5    as the Court noted previously, the plaintiffs in *Benson* provided significantly more facts.

6    　　　Accordingly, the Court finds Plaintiffs did not adequately allege sufficient factual

7    allegations to establish aiding and abetting liability.

8    　　　　　　　　　B.　　　Whether Defendants Are Subject to Manifest Injustice

9    　　　The parties also dispute whether Defendants will be subject to manifest injustice if

10   discovery proceeds on the aiding and abetting claim. (*See* ECF Nos. 27, 28, 31.) Because the

11   Court finds that its prior decision was made in "clear error," it need not and does not address

12   whether continued discovery will subject Defendants to manifest injustice. *See Allstate Ins. Co.*,

13   634 F.3d at 1111 (noting that a Rule 59(e) motion may be granted "if necessary to correct

14   manifest errors of law or fact upon which the judgment rests" *or* "if such motion is necessary to

15   prevent manifest injustice"). However, the Court does note that courts have held "that to compel

16   the parties . . . to incur the expense of discovery without resolution of [whether subject matter

17   jurisdiction exists] could result in a manifest injustice." *Council for Endangered Species Act*

18   *Reliability v. Jackson*, No. CV-10-8254-SMM, 2011 WL 5882192, at *4 (D. Ariz. Nov. 23, 2011)

19   (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); Fed. R. Civ. P. 12(h)(3) ("If

20   the court determines that at any time it lacks subject-matter jurisdiction, the court must dismiss

21   the action.")).

22   　　　Based on the foregoing, Defendants' motion for reconsideration is GRANTED.

23   Defendants' motion to dismiss the claims against the Standing Defendants is GRANTED with

24   leave to amend. (ECF No. 6 at 15–17.) Because the Court previously denied Defendants' motion

25   to strike the allegations of conspiracy, alter ego, and aiding and abetting liability based on a

26   finding that Plaintiffs adequately established aiding and abetting liability, the Court notes that

27   Defendants may raise this argument again in any future responsive pleading.

28   ///

　　　　　　　　　　　　　　　　　　　　10

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for

Reconsideration.  (ECF No. 27.)  Defendants' motion to dismiss the claims against the Standing

Defendants is GRANTED with leave to amend.  (ECF No. 6 at 15–17.)  The Court hereby

STRIKES Plaintiffs' Second Amended Complaint (ECF No. 30) from the docket.  Plaintiffs may

file an amended complaint consistent with this Order and the Court's March 4, 2022 Order (ECF

No. 26) not more than 30 days from the electronic filing date of this Order.  Defendants shall file

a responsive pleading not more than 21 days after the electronic filing date of the amended

complaint.

IT IS SO ORDERED.

**DATED:  June 13, 2022**

Troy L. Nunley
United States District Judge

11