UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHA LEASER, et al., individually, and on behalf of others similarly situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>PRIME ASCOT, L.P, et al.,<br><br>           Defendants | No. 2:20-CV-02502-DJC-AC<br><br><br>ORDER |

Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, and Prime Administration, LLC ("Defendants") bring the present Motion to Strike seeking to strike all allegations related to a previously dismissed set of defendants from the operative Second Amended Complaint ("SAC"). Defendants also request, in the alternative, that the Court join the previously dismissed defendants under Federal Rule of Civil Procedure 19. As discussed below, there is no basis to strike the allegations in the SAC, and it is not feasible to join the previously dismissed defendants. Accordingly, Defendants' motion is DENIED.

////

////

////

I. **Background**

   A. **Factual Background**

Plaintiffs bring the present action against Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, and Prime Administration, LLC, the owners and property managers of apartment buildings rented by the Plaintiffs. (SAC (ECF No. 37) ¶¶ 1-3, 10-17.) Plaintiffs allege that Prime Administration is the manager of all of the apartment complexes rented by Plaintiffs, and that each of the other Defendants are alter egos of Prime Administration which ultimately controls and operates each of the properties it manages. (*Id.* ¶¶ 18-21.) Plaintiffs allege that Defendants collectively and systematically engaged in misrepresentation and unfair or fraudulent practices which violated Plaintiffs' rights, and breached various implied warranties. (*Id.* ¶¶ 4-9.) These practices and policies are allegedly common and shared among all properties operated and managed by Prime Administration. (*Id.* ¶ 25.)

Plaintiffs Nicha Leaser, Atchara Wongsaroj, and Katina Magee specifically allege that while they resided at Blue Rock Village under a lease agreement with Defendant Prime Ascot, L.P., their apartments were infested with mice. (*Id.* ¶¶ 32-34, 52, 54.) They allege that Defendants were aware of and failed to disclose or address the infestation despite Plaintiffs' repeated complaints to Defendants. (*Id.* ¶¶ 35-36, 52, 56-60.) The alleged infestation interfered with Plaintiffs Leaser and Wongsaroj's enjoyment of the leased property, caused property damaged, and caused physical and emotional illness. (*Id.* ¶¶ 39-45, 54, 57.) Plaintiff Magee eventually began to withhold rent on the basis that her apartment was not habitable, and Defendants ultimately evicted her. (*Id.* ¶¶ 58, 61.) Plaintiffs believe the entire building was similarly infested, and that all Blue Rock Village residents suffered similar harm. (*Id.* ¶¶ 35, 42.)

Plaintiffs Leaser and Wongsaroj also allege that during their tenancy, they were charged late fees for not paying sewer, water, and garbage charges on time. (*Id.*

¶¶ 46-47.) However, they allege that those fees were routinely posted after their due date, providing Plaintiffs no opportunity to pay them on time and thus avoid the late penalty. (*Id.*) Plaintiff Magee was also assessed late fees for late rent payments after she began withholding rent. (*Id.* ¶¶ 58-59.) Plaintiff Joyce Eisman, who rented an apartment at Park LaBrea under a lease agreement with Defendant Prime/Park LaBrea Titleholder, LLC, alleges that Defendants charged her late fees for late payment of rent as well. (*Id.* ¶¶ 63, 68.) Plaintiffs allege that these late fees were all exorbitant, unreasonable, and unjustified. (*Id.* ¶¶ 47, 62, 68.)

In addition, each Plaintiff alleges that when they moved out of their respective apartments, Defendants failed to provide a full refund of their security deposits, failed to provide an accurate itemized accounting of the charges withheld, and wrongfully withheld funds. (*Id.* ¶¶ 49-51, 61-62, 65-67.) Plaintiffs also allege they were improperly charges fees for defendant to unnecessarily repaint their apartments. (*Id.*)

**B. Procedural Background**

Plaintiffs brought the present suit as a putative class action against Defendants on behalf of three classes of plaintiffs: (1) persons who experienced a mice infestation at Blue Rock Village; (2) persons who were charged excessive fees by Defendants; and (3) persons who had their security deposits wrongfully withheld and/or were not provided proper accounting of the charges. (*Id.* ¶ 69.) This suit was originally filed in California Superior Court, Solano County, and was removed to this Court on December 17, 2020. (Not. of Removal (ECF No. 1).)

Defendants moved to dismiss the First Amended Complaint, which the Court initially denied. (Order (ECF No. 26).) However, on reconsideration, the Court determined that Plaintiffs did not have standing to sue the owners/landlords of properties managed by Prime Administration, which no Plaintiff had resided in. Specifically, the Court found that Plaintiffs had not adequately alleged that those owners/landlords had aided and abetted either Prime Administration or the owners/landlords of the properties Plaintiffs had resided in. (Order (ECF No. 34) at 9-

3

10.)  The Court accordingly dismissed those owners/landlords, (*id.* at 11), and Plaintiffs filed the operative Second Amended Complaint not naming them.  (ECF No. 37.)

Defendants now move to strike the SAC, arguing that the owners/landlords the Court previously dismissed (referred to as the "Absent Landlords") are actually required parties under Rule 19.  Defendants request that the Court strike the portions of the Complaint that reference the Absent Landlords, their properties and lease provisions, and allegations related to Plaintiffs' alter ego, aiding and abetting, and conspiracy theories.  In the alternative, Defendants request that the Court join the Absent Landlords, and also require Plaintiffs to join additional plaintiffs.

This matter is hereby submitted upon the record and briefs of the Parties, without oral argument, pursuant to Local Rule 230(g).

**II.     Legal Standard**

Under Rule 12(f) "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Board of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975).  "Motions to strike are disfavored and infrequently granted.  Such motions should be granted only where it can be shown that none of the evidence in support of an allegation is admissible." *Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1162 (E.D. Cal. 2008) (internal citations omitted).

Federal Rule of Civil Procedure 19 governs compulsory joinder of parties.  Under Rule 19, a party may move the court to join a "required" party to the action if feasible.  *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).  A party is required to be joined, if, "in [a] person's absence, the court cannot accord complete relief among existing parties," or, if that person claims an interest in the action such that their absence may impair their ability to protect their interest, or their

4

interest leaves an existing party subject to the risk of incurring additional or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). Even if the absent party is required, the party may only be joined if feasible. If a required party cannot be joined, a defendant may bring a motion to dismiss for failure to join the required party. *Diodem, LLC v. Lumenis Inc.*, No. CV-03-2142-GAF-RC, 2005 WL 6219898, at *11–*12 (C.D. Cal. Sept. 14, 2005) (discussing the different standards applied to a Rule 19 motion to join and a motion to dismiss under Rule 12(b)(7)); *see also E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005) (stating that "dismissal for failure to join a party must be decided on a motion to dismiss" (citing *Dredge Corp. v. Penny,* 338 F.2d 456, 463–64 (9th Cir. 1964)).

### III. Discussion

#### A. Motion to Strike Allegations Related to Absent Landlords

Although Defendants have brought this motion as a Motion to Strike under Rule 12(f), they devote the majority of their Motion to discussing whether the "Absent Landlords" – the owners of the properties managed by Prime Administration which were dismissed under the Court's prior order – are required under Rule 19. Defendants' main contention is that "all allegations relating to properties owned by the Absent Landlords should be stricken from the SAC pursuant to Rule 19." However, striking allegations is not the remedy provided by Rule 19, and whether a party is required under Rule 19 is irrelevant to whether allegations related to that absent party are "redundant, immaterial, impertinent, or scandalous" under Rule 12(f). The Court instead addresses Rule 19 in response to Defendants' alternative request to join the Absent Landlords in Section III.B, below.

Defendants request the Court strike the allegations in paragraphs 19 through 31 of the SAC which are related to "aiding and abetting, conspiracy[,] and alter ego" and to strike allegations related to the "absent landlords, their properties, and their lease provisions" because these allegations are "immaterial" or "impertinent." Defendant fails to point to specific allegations which relate to the absent landlords,

5

but the Court's review of the Complaint has determined that any references related to the absent landlords, their properties, or lease provisions also occur in paragraphs 19 through 31.

As an initial matter, Plaintiffs' allegations that Prime Administration is the alter ego of the Absent Landlords and ultimately responsible for the allegedly unlawful conduct is a central factual allegation of the SAC. Although the Court previously found that Plaintiffs did not have standing to directly sue the Absent Landlords because they did not adequately allege how the Absent Landlords aided and abetted Prime Administration, (*see* ECF No. 34 at 9–10), the Court did not determine that Plaintiffs had failed to establish an alter ego theory of liability. Though a subsidiary may not be liable for the acts of its parent, a parent company may be held liable where "(1) [ ] the parent exercised so much control over the subsidiary so as to have effectively assumed the subsidiary's day-to-day operations in carrying out the policy, and (2) [ ] an inequitable result would obtain in the absence of the Court applying this standard." *Kundanmal v. Safeco*, No. 2:17-CV-06339-SVW-JEM, 2017 WL 6942758, at *2 (C.D. Cal. Dec. 13, 2017); *see also Ruiz v. Gen. Ins. Co. of Am.*, No. 1:20-CV-00218-AWI-EPG, 2020 WL 4018274, at *4 (E.D. Cal. July 15, 2020) (stating the first element as "the parent must control 'the subsidiary to such a degree as to render the latter the mere instrumentality of the former'" (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995))).

Here, Plaintiffs allege that the Absent Landlords are "merely instrumentalities of Prime Administration, are all part of the same scheme, and are controlled and managed collectively." (SAC ¶ 21.) Plaintiffs further allege that the Absent Landlords, "allow[ed] Prime Administration to implement and effectuate the unfair and unlawful policies and practices." (*Id.*) There are two sentence in the SAC directly alleging that the Absent Landlords aided and abetted the named Defendants: the first states "to the extent the nominal titleholders have any independent existence, they are co-conspirators and aiders and abettors of Prime Administration in committing the

conduct described in this Complaint;" the second states "Defendants all knowingly aided and abetted the violations of law described in this Complaint and knowingly aided and abetted the conduct related to the scheme, agreed to commit the unlawful and unfair conduct, and gave substantial assistance and encouragement in committing the unlawful and unfair conduct . . . ." These sentences, though directed at the dismissed aiding and abetting theory, are sufficiently related to whether Prime Administration exercised control over the Absent Landlords. The first sentence alleges that the Absent Landlords are not independent of Prime Administration, and the second sentence can be read as alleging that Prime Administration orchestrated the alleged scheme. Accordingly, the Court does not find that the allegations are "immaterial" or "impertinent" such that striking them would be necessary. See *Kempthorne*, 539 F. Supp. 2d at 1162.

Next, Plaintiffs reference the Absent Landlords' properties and lease provisions insofar as they allege that Defendant Prime Administration operated and managed each of these properties, and "develop[ed], institut[ed], and enforc[ed] the same unlawful policies against tenants of [the properties]." These allegations relate directly to Plaintiffs' Seventh and Eighth Causes of Action which allege that Prime Administration engaged in unlawful practices in its management of all the properties. In the Seventh Cause of Action, Plaintiff alleges that "Defendant Prime Administration, LLC also, upon information and belief, sets the security deposit amounts, and sets and effectuates policies related to charges to and deductions from security deposits for every unit at every one of the Prime Properties in California." (SAC ¶ 129.) Plaintiffs' Eighth Cause of Action alleges that Prime Administration's policies and practices of charging excessive fees and retaining security practices as to all of the properties it manages are unfair and unlawful in violation of the UCL. (*Id.* ¶¶ 140–146.) Even though Plaintiffs are not suing the Absent Landlords, their properties and lease provisions are directly related to Plaintiffs' allegations against Prime Administration

////

related to Prime Administration's management of those properties and alleged control over the relevant lease provisions.

Further, as discussed above, the references to the Absent Landlords, their properties, and lease provisions relate to Plaintiffs' alter ego theory. Plaintiffs reference the Absent Landlords' properties and leases to the extent that it supports their allegations "that all Prime Properties are primarily operated and managed through the same Defendant, Prime Administration, LLC." (SAC ¶ 19.) For example, Plaintiffs assert that "control of the Prime Properties can also be discerned by Defendants' own lease agreements" because all the properties utilize "substantially the same form." (*Id.* ¶ 23.)

Defendants rely on *Kempthorne* to assert that Plaintiffs' complaint can only "address" those contracts between Defendants and Plaintiffs, not between other contracting parties not party to the lawsuit. 539 F. Supp. 2d at 1184 ("This lawsuit can address only those contracts between the Bureau and contracting entities that are parties to this lawsuit, not other contracts between the Bureau and absent contracting parties."). This language from *Kempthorne* is taken out of context and inapposite to Defendant's motion. First, the *Kempthorne* court did not strike any of the plaintiff's allegations. *Id.* at 1166. Second, the quote is part of an unrelated Rule 19 discussion, not a discussion about striking allegations. *Compare id.* at 1162–66 *with id.* at 1180–84.[1] Third, Plaintiffs' claims differ from those in *Kempthorne* in that Plaintiffs here seek to enjoin Prime Administration's management practices, not to enjoin an absent party's contract. *See id.* at 1162.[2] While Plaintiffs may not be able to enjoin an Absent

////

---

[1] In the section of *Kempthorne* quoted by Defendants, the court addressed whether the plaintiffs could seek to "invalidate any water service contracts," and whether they needed to join additional defendants to do so. *Id.* at 1180. The court determined that the plaintiffs could obtain relief as to the parties already joined in the suit, but determined that the plaintiffs could not seek to enjoin the defendant from performing its obligations under contracts executed between the defendant and third-parties not joined in the lawsuit. *Id.* at 1184.

[2] Moreover, in this case Plaintiff alleges Prime Administration is the alter ego of any absent contracting party, which, if proven, would mean that there are no absent contracting parties.

Landlord's contracts under *Kempthorne*, that does not make the allegations which are merely related to those contracts wholly irrelevant such that they should be stricken.

In sum, the allegations regarding Plaintiffs' alter ego theory are both material and pertinent to central claims in this case, and the references to the Absent Landlords' properties and lease provisions are both material and pertinent to Plaintiffs' Seventh and Eighth Causes of Action regarding Prime Administration's management policies and practices, and to Plaintiff's alter ego theory. The Court accordingly DENIES Defendants' Motion to Strike these allegations.

### B. Joinder Under Rule 19

Defendants also request, in the alternative, that the Court join the Absent Landlords *and* order joinder of additional plaintiffs who have standing to sue those Absent Landlords. Under Rule 19, "required" parties to the action must be joined if feasible. Fed. R. Civ. P. 19(a)–(b). However, in response to the Defendants' motion, this Court has already ruled that the absent landlords cannot be joined because the Plaintiffs lack standing to sue them, *i.e.*, it is not feasible to join the Absent Landlords. (ECF No. 34 at 9–10.) Despite this order, Defendants suggest that the Court may make it feasible to join the Absent Landlords by ordering Plaintiffs to join unidentified additional plaintiffs who do have standing to sue the Absent Landlords. Rule 19 is concerned with whether the action may be equitably adjudicated as to the *existing* parties. *See* Fed. R. Civ. P. 19(a)–(b) (asking whether the court can "accord complete relief among existing parties"); *Zeff v. Greystar Real Est. Partners*, *LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *4 (N.D. Cal. Feb. 18, 2021) ("[N]onjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties*. In other words, joinder is required only when the absentee's nonjoinder precludes the court from rendering complete justice *among those already joined* . . . ." (quoting Moore's Fed. Prac. – Civ. § 19.03[2][b][ii]) (emphasis in original)). The Court

////

////

may not order parties to be joined who are otherwise not required under Rule 19 in order to make joinder feasible for required parties.[3]

If joinder of a required party is not feasible, the Court is limited to dismissing the action, or moving forward without the Rule 19 party. Fed. R. Civ. P. 19(b). Defendants have notably not requested that the Court dismiss this case or any claims. If Defendants wish to request such relief, a motion to dismiss for failure to join Rule 19 parties is properly brought under Fed. R. Civ. P. 12(b)(7). *Peabody W. Coal Co.*, 400 F.3d at 778 (stating that "dismissal for failure to join a party must be decided on a motion to dismiss" (citing *Dredge Corp.*, 338 F.2d at 463–64)); *see, e.g.*, *Zeff*, 2021 WL 632614, at *1 (requesting dismissal under Rule 12(b)(7) for failure to join parties required under Rule 19). The alternative request to join parties under Rule 19 is therefore DENIED.

**IV.     Conclusion**

For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to Strike (ECF No. 38) is DENIED.

IT IS SO ORDERED.

Dated:    **February 21, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Leaser20cv02502.mtstrike

---

[3] To be clear, a court may join a plaintiff under Rule 19, but only if that party is a required party. *See* Fed. R. Civ. P. 19(a)(2). Defendants have not discussed how the proposed plaintiffs are required parties, provided any facts for the court to make a determine about those parties, or even identified the proposed plaintiffs.

10