UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHA LEASER, et al., individually, and on behalf of others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>PRIME ASCOT, L.P., et al.,<br><br>                Defendants | No. 2:20-CV-02502-DJC-AC<br><br><br>ORDER |

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") on the basis that Plaintiffs have failed to join parties required under Rule 19.  As discussed below, these parties are not required both because the Plaintiffs will be able to receive complete relief among the named parties, and because the absent parties' interest in the litigation is merely hypothetical at this point in the litigation.  Defendants also move for dismissal of Plaintiffs' alter ego and conspiracy allegations.  For the reasons discussed, the Court finds that Plaintiffs have adequately alleged the alter ego claim, but have failed to plead the conspiracy claim with sufficient factual detail.  Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

////

1   **I.      Background**

2        Plaintiffs bring the present action against Defendants Prime Ascot, L.P., Prime

3   Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, and Prime Administration,

4   LLC, the owners and property manager of apartment buildings rented by the Plaintiffs.

5   (SAC (ECF No. 37) ¶¶ 1–3, 10–17.)  Plaintiffs allege that Prime Administration is the

6   manager of all of the apartment complexes rented by Plaintiffs, and that each of the

7   other Defendants are alter egos of Prime Administration which ultimately controls and

8   operates each of the properties it manages.  (*Id.* ¶¶ 18–21.)  Plaintiffs allege that

9   Defendants conspired to, and engaged in, unlawful and unfair practices which

10  violated Plaintiffs' rights under California law, and breached various implied

11  warranties.  (*Id.* ¶¶ 4–9.)  These practices and policies are allegedly common and

12  shared among all the properties operated and managed by Prime Administration.  (*Id.*

13  ¶ 25.)

14        Plaintiffs Nicha Leaser, Atchara Wongsaroj, and Katina Magee specifically allege

15  that while they resided at Blue Rock Village under a lease agreement with Defendant

16  Prime Ascot, L.P., their apartments were infested with mice.  (*Id.* ¶¶ 32–34, 52, 54.)

17  They allege that Defendants were aware of and failed to disclose or address the

18  infestation despite Plaintiffs' repeated complaints to Defendants.  (*Id.* ¶¶ 35–36, 52,

19  56–60.)  The alleged infestation interfered with Plaintiffs Leaser and Wongsaroj's

20  enjoyment of the leased property, caused property damaged, and caused physical

21  and emotional illness.  (*Id.* ¶¶ 39–45, 54, 57.)  Plaintiff Magee eventually began to

22  withhold rent on the basis that her apartment was not habitable, and Defendants

23  ultimately evicted her.  (*Id.* ¶¶ 58, 61.)  Plaintiffs believe the entire building was

24  similarly infested, and that all Blue Rock Village residents suffered similar harm.  (*Id.*

25  ¶¶ 35, 42.)

26        Plaintiffs Leaser and Wongsaroj also allege that during their tenancy, they were

27  charged late fees for not paying sewer, water, and garbage charges on time.  (*Id.*

28  ¶¶ 46–47.)  However, they allege that those charges were routinely posted after their

1   due date, providing Plaintiffs no opportunity to pay them on time and thus avoid the

2   late penalty. (*Id.*)  Plaintiff Magee was also assessed late fees for late rent payments

3   after she began withholding rent due to the alleged inhabitability of her apartment.

4   (*Id.* ¶¶ 58–59.)  Plaintiff Joyce Eisman, who rented an apartment at Park LaBrea under

5   a lease agreement with Defendant Prime/Park LaBrea Titleholder, LLC, alleges that

6   Defendants charged her late fees for late payment of rent as well. (*Id.* ¶¶ 63, 68.)

7   Plaintiffs allege that these late fees were all exorbitant, unreasonable, and unjustified.

8   (*Id.* ¶¶ 47, 62, 68.)  In addition, Plaintiffs allege that Prime Administration engaged in

9   a practice of applying rent payment first to the late fees, resulting in unpaid rent and

10  additional late fees, which Plaintiffs call a "pyramiding" scheme. (*Id.* ¶ 142.)

11          Each Plaintiff also alleges that when they moved out of their respective

12  apartments, they were improperly charged fees to unnecessarily repaint their

13  apartments. (*Id.* ¶¶ 49–51, 61–62, 65–67.)  Defendants then failed to provide a full

14  refund of their security deposits, wrongfully withheld funds, and failed to provide an

15  accurate itemized accounting of the charges withheld. (*Id.*)

16          **A. Procedural Background**

17          Plaintiffs brought the present suit as a putative class action against Defendants

18  on behalf of three classes of plaintiffs: (1) persons who experienced a mice infestation

19  at Blue Rock Village; (2) persons who were charged excessive fees or subject to the

20  alleged pyramiding scheme; and (3) persons who had their security deposits

21  wrongfully withheld or not reimbursed in time, and/or were not provided proper

22  accounting of the charges. (*Id.* ¶ 69.)  This suit was originally filed in California

23  Superior Court, Solano County, and was removed to this Court on December 17,

24  2020. (Not. of Removal (ECF No. 1).)

25          Defendants moved to dismiss the First Amended Complaint, which the Court

26  initially denied. (Order (ECF No. 26).)  However, on reconsideration, the Court

27  determined that Plaintiffs did not have standing to sue the owners/landlords of

28  properties managed by Prime Administration, which no Named Plaintiff had resided

                                             3

1   in, because those entities did not cause them injury.  Specifically, the Court found that

2   Plaintiffs had not adequately alleged that those owners/landlords had aided and

3   abetted either Prime Administration or the owners/landlords of the properties

4   Plaintiffs had resided in.  (Order (ECF No. 34) at 9–10.)  The Court accordingly

5   dismissed those Defendants, (*id.* at 11), and Plaintiffs filed the operative SAC which

6   did not name them.  (ECF No. 37.)

7          Defendants brought a Rule 12(f) Motion to Strike the allegations in the SAC

8   related to the owners/landlords the Court previously dismissed (referred to as the

9   "Absent Landlords") arguing that they were required parties under Rule 19.  In

10  denying that motion, the Court advised that a challenge seeking to dismiss claims

11  under Rule 19 is properly brought under Rule 12(b)(7).  Defendants now renew their

12  request, bringing the present Motion to Dismiss claims seven and eight pursuant to

13  Rule 12(b)(7).  They also move to dismiss Plaintiffs' alter ego and conspiracy claims

14  under Rule 12(b)(6).

15  **II.    Legal Standard**

16         **A.  12(b)(6)**

17         A party may move to dismiss for "failure to state a claim upon which relief can

18  be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint

19  lacks a "cognizable legal theory" or if its factual allegations do not support a

20  cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th

21  Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

22  The Court assumes all factual allegations are true and construes "them in the light

23  most favorable to the nonmoving party."  *Steinle v. City and Cnty. of San Francisco*,

24  919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51

25  F.3d 1480, 1484 (9th Cir. 1995)).  A complaint need contain only a "short and plain

26  statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

27  8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

28  (2007).  But this rule demands more than unadorned accusations; "sufficient factual

4

1  matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  If the

2  complaint's allegations do not "plausibly give rise to an entitlement to relief," the

3  motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

4  **B.  12(b)(7)**

5  Rule 12(b)(7) provides that a party may seek to dismiss a complaint for failure to

6  join a party under Rule 19.  Such motions require a three step inquiry.  *E.E.O.C. v.*

7  *Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  First, the court must

8  determine whether the absent is "necessary" under Rule 19(a).  Fed. R. Civ. P. 19(a).  If

9  the absent party is necessary, the court must join the party if feasible.[1]  However, if it is

10  not feasible to join the party, the court proceeds to determining whether the party is

11  "indispensable," or whether the action may, in "in equity and good conscience"

12  proceed without the absent party.  *Id.* at 779–80; Fed. R. Civ. P. 19(b).  If the absent

13  party is indispensable – meaning the action cannot proceed without the party – the

14  action must be dismissed.  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d

15  1176, 1179 (9th Cir. 2012).

16  **III.    Discussion**

17  **A.  Rule 12(b)(6) Motion**

18  **i.  Late filed motion under 12(g)**

19  Although Plaintiffs are correct that Defendants' Rule 12(b)(6) Motion on this

20  issue would ordinarily be waived under Rule 12(g) due to the failure to consolidate

21  with Defendants' previous Rule 12 Motions,[2] the Court will nonetheless entertain the

22

23  [1] This Court has already ruled that the absent landlords cannot be joined because the Plaintiffs lack standing to sue them, *i.e.*, it is not feasible to join them.  (ECF No. 34 at 9–10; Order (ECF 50) at 9.)

24  Accordingly, the Court will only assess whether the Absent Landlords are necessary, and, if so, whether the action may proceed without them.

25  [2] Under Rule 12(g), a party must bring all arguments under Rule 12 in a consolidated motion or else waive their remaining Rule 12 arguments.  "[A] party that makes a motion under [Rule 12] must not

26  make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. Pro. § 12(g)(2); *see Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*, 329 F.R.D. 247, 254 (S.D. Cal. 2018).  A party cannot, for example, "first

27  [attempt] to attack the opposing party's pleading under Rule 12(e) or Rule 12(f) and then . . . follow with a Rule 12(b) motion when these defenses and objections might have been presented together."

28  *Quechan Tribe*, 329 F.R.D. at 255 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice*

1   Motion because it will expedite resolution of the case, and because Defendants have

2   asserted this defense consistently and at each opportunity from the inception of the

3   case, such that the Motion was not brought for "any strategically abusive purpose"

4   such as delay.  *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 320 (9th Cir.

5   2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

6         Defendants initially brought a Motion to Dismiss and Strike the FAC, seeking

7   only to strike Plaintiffs' secondary liability allegations.  (*See* ECF No. 6.)  In its Order on

8   that Motion, the Court found that Plaintiffs had sufficiently alleged its secondary

9   liability theories.  (ECF No. 26.)  Defendants then sought reconsideration of the Court's

10   order only as to whether the Plaintiffs had sufficiently plead their "aiding and abetting"

11   theory, and therefore whether they had standing under Article III to sue the Absent

12   Landlords, not as to the sufficiency of the alter ego or conspiracy claims.  (ECF No. 27.)

13   The Court granted the Motion for Reconsideration and invited the Defendants to

14   bring new motion as to the alter ego claims.  (EFC No. 34.)  Once Plaintiffs filed the

15   SAC, Defendants brought a second Motion to strike the alter ego and conspiracy

16   allegations.  A Rule 12(f) motion to strike is considered under a different legal

17   standard than a Rule 12(b)(6) motion, and this Court found that those allegations were

18   not "redundant, immaterial, impertinent, or scandalous" to warrant striking.

19         Under Rule 12(g), while Defendants would ordinarily be precluded from

20   bringing a second Rule 12 motion on an issue that could have been raised in the first,

21   Defendants would still be able to file an Answer, and then a Rule 12(c) motion

22   asserting the same arguments, which would be assessed under a similar standard.  In

23   *In re Apple iPhone Antitrust Litigation*, the Ninth Circuit stated that in such a

24   circumstance, the District Court may rule on the merits of a late-filed 12(b)(6) motion in

25   _____

26   *and Procedure* § 1388 (3d ed. 2018)).  The only exceptions to Rule 12(g) are motions brought under
     rule 12(c), trial motions, and other pleadings under Rule 7(a).  As Plaintiffs made the same factual

27   allegations in their First Amended Complaint, Defendants should have brought a Motion challenging
     the sufficiency of the claim at that time.  "[T]he right to file a motion to dismiss for failure to state a claim
     is not revived when the claim is pled again in an amended complaint."  *City of Las Cruces v. Lofts at*

28   *Alameda, LLC*, 591 F. Supp. 3d 1038, 1050 (D.N.M. 2022).

1  order to expedite resolution of the issue.  846 F.3d at 318–20.  The Court also

2  recognizes that Defendants intended to challenge the sufficiency of the secondary

3  liability claims, and that this motion is a renewal of the prior motion intended to cure

4  procedural defect, not for delay.  Accordingly, the Court exercises its discretion to rule

5  on the 12(b)(6) Motion.

6  **ii.  Sufficiency of the alter ego claim**

7  A parent of a subsidiary company ordinarily cannot be held liable for the acts of

8  the subsidiary merely because of the parent-subsidiary relationship.  *See United States*

9  *v. Bestfoods*, 524 U.S. 51, 61–62 (1998).  However, liability may be imputed "where the

10  subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent

11  of the parent," or where it "participates in the wrongdoing."  *Cattie v. Wal-Mart Stores,*

12  *Inc.*, 504 F. Supp. 2d 939, 945 (S.D. Cal. 2007) (quoting *Harris Rutsky and Co. Ins.*

13  *Servs., Inc. v. Bell and Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) and citing

14  *Bestfoods*, 524 U.S. at 64–65).  "With increasing frequency, courts have demonstrated

15  a readiness to disregard the corporate entity when a wholly owned subsidiary is

16  merely a conduit for, or is financially dependent on, a parent corporation."  *Inst. Of*

17  *Veterinary Pathology, Inc. v. California Health Lab'ys, Inc.*, 116 Cal. App. 3d 111, 119

18  (1981) (quoting 1A Ballantine & Sterling, California Corporation Laws (4th ed. 1980) §

19  296.02, at 14-32.1–14-33).  The elements of alter ego liability are "(1) that the parent

20  exercised so much control over the subsidiary so as to have effectively assumed the

21  subsidiary's day-to-day operations in carrying out the policy, and (2) that an

22  inequitable result would obtain in the absence of the Court applying this standard."

23  *Kundanmal v. Safeco*, No. 2:17-CV-06339-SVW, 2017 WL 6942758, at *2 (C.D. Cal.

24  Dec. 13, 2017); *see also Ruiz v. Gen. Ins. Co. of Am.*, No. 1:20-CV-00218-AWI-EPG,

25  2020 WL 4018274, at *4 (E.D. Cal. July 15, 2020) (restating the first element as "the

26  parent must control 'the subsidiary to such a degree as to render the latter the mere

27  instrumentality of the former'" (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D.

28  Cal. 1995))); *Inst. Of Veterinary Pathology*, 116 Cal. App. 3d at 119.

7

1    "In order to withstand a motion to dismiss, the plaintiff must, at a minimum,

2  'se[t] forth some examples of alleged domination[.]"  *Lovesy v. Armed Forces Ben.*

3  *Ass'n*, No. C-07-2745 SBA, 2008 WL 696991, at *4 (N.D. Cal. Mar. 13, 2008) (quoting

4  *In re Sunbeam Corp.*, 284 B.R. 355, 366 (S.D. N.Y. 2002)).  "Factors relevant to a

5  determination of alter ego include (1) commingling of funds and other assets of the

6  two entities, (2) the holding out by one entity that it is liable for the debts of the other,

7  (3) identical equitable ownership in the two entities, (4) use of the same offices and

8  employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6)

9  inadequate capitalization, (7) disregard of corporate formalities, (8) lack of

10  segregation of corporate records, and (9) appointment of identical directors and

11  officers."  *KEMA, Inc. v. Koperwhats*, No. C-09-1587 MMC, 2010 WL 3464737, at *8

12  (N.D. Cal. Sept. 1, 2010) (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App.

13  4th 523, 538–39 (2000)).  "No one characteristic governs"; rather, "courts must look at

14  all the circumstances to determine whether the doctrine should be applied."  *Sonora*,

15  83 Cal. App. at 539.

16    Here, Plaintiffs have alleged sufficient facts at the motion to dismiss stage

17  demonstrating plausibility that the owners of the properties Prime Administration

18  manages are the "mere shell or conduit" of Prime Administration.  Essentially, Plaintiffs

19  allege that each of the owners are shell companies set up for the sole purpose of

20  being the legal titleholder to the properties that Prime Administration effectively owns

21  and controls.  (SAC ¶¶ 18–22.)  Plaintiffs allege that Prime Administration fully owns

22  each entity that itself owns each of the individual properties managed by Prime

23  Administration, and that Prime Administration "ultimately control[s] and operate[s]"

24  each of the properties.  (*Id.* ¶ 20.)  On a shared, common website, the entities refer to

25  themselves collectively as the "Prime Group" and each titleholder's corporate name

26  contains "Prime" alongside the name of the street or the name of the building.  (*Id.*

27  ¶¶ 21, 22.)  Plaintiffs also allege that all of the property owners share management

28  personnel with Prime Administration and are governed by the same policies and

1  practices.  (*Id.* ¶¶ 21, 25.)  All of the properties allegedly utilize the same or similar

2  lease agreement which has Prime Administration's d/b/a name "Prime Residential"

3  stamped on the top of each page and "identif[ies] the 'company' on the lease as

4  'Prime Administration LLC dba Prime Group.'"  (*Id.* ¶ 23–24.)  These allegations taken

5  together are sufficient to infer that Prime Administration has "assumed the

6  subsidiar[ies'] day-to-day operations" based on the same shared personnel, form, and

7  common practices, and that the subsidiaries are a mere instrumentality of Prime

8  Administration as mere nominal titleholders of the properties.  While the SAC is silent

9  as to some of the factors the Court is required to consider, at this early stage of the

10  proceedings Plaintiffs state sufficient information to plead an alter ego theory of

11  liability.

12       Plaintiffs' allegations are unlike those in *Ranza v. Nike, Inc.*, where the plaintiffs

13  merely pleaded that Nike engaged in "micromanagement" of the subsidiary, not that

14  it directed the corporations "day-to-day operations."  793 F.3d 1059, 1074–75 (9th Cir.

15  2015).  Despite the parent company's substantial involvement in decisions, the

16  subsidiary "sets its own prices for its licensed Nike products, takes and fulfills orders

17  for its licensed products using its own inventory, negotiates its own contracts and

18  licenses, makes routine purchasing decisions without Nike's consultation and has its

19  own human resources division that handles day-to-day employment issues, including

20  hiring and firing decisions."  The subsidiary also has its own board of directors, "leases

21  its own facilities, maintains its own accounting books and records, enters into

22  contracts on its own and pays its own taxes."  *Id.* at 1074.  In contrast, here, Plaintiffs

23  allege that the landlords are merely legal titleholders and that Prime Administration

24  controls every aspect of the day-to-day operation of the titleholding entities.

25       As to the second element of alter ego liability, taking the facts in the light most

26  favorable to Plaintiffs, the Court can infer that an inequitable result would occur if the

27  court were to recognize the titleholders as separate entities.  To the extent the

28  Plaintiffs are able to prove their claims, it would be inequitable for Prime

1  Administration to hide assets behind its alleged corporate shells or to avoid injunctive
2  relief as to those entities.  Accordingly, the Court finds that, at this early stage, Plaintiffs
3  have plausibly alleged that Prime Administration is the alter ego of the titleholding
4  subsidiaries.

### iii.  Sufficiency of the conspiracy claim

6  Defendants next move to dismiss the conspiracy allegations.  Plaintiffs allege, in
7  the alternative, that if the property owners are not alter egos of Prime Administration,
8  then Prime Administration and the property owners conspired to carry out the alleged
9  illegal conduct.  Defendants argue that because Prime Administration was acting as
10  the agent of the property owners the agent's immunity rule precludes a conspiracy
11  theory.  They also assert that Plaintiffs have failed to adequately plead a conspiracy
12  theory.[3]

13  The agent-immunity rule provides that where an agent is acting within the
14  scope of its authority on behalf of a corporation, the agent is "one and the same" as
15  the corporation.  *Everest Invs. 8 v. Whitehall Real Est. Ltd. P'ship XI*, 100 Cal. App. 4th
16  1102, 1109 (2002).  Because a corporation cannot conspire with itself, an agent and a
17  corporation cannot form a conspiracy.  *Verrecchia v. Aviss*, No. EDCV-17-317-DMG-SP,
18  2017 WL 9486151, at *11 (C.D. Cal. Nov. 8, 2017).  However, "when the agent's
19  conduct is undertaken in pursuit of a personal interest or advantage and not solely on
20  behalf of the principal" the agent-immunity rule does not apply. *Villains, Inc. v. Am.*
21  *Econ. Ins. Co.*, 870 F. Supp. 2d 792, 796 (N.D. Cal. 2012).  "[M]erely receiving
22  monetary compensation for [the agent's] services to the principal is not enough" to
23  establish the exception.  *Id.* at 796–97 (quoting *Mintz v. Blue Cross of Cal.*, 172 Cal.
24  App. 4th 1594, 1606 (2009)).  Rather, the personal financial gain must be derived from
25  an external source.  For example, where an attorney merely charges for services

27  [3] Defendants also assert that Plaintiffs cannot be accorded complete relief because the co-conspirators
28  are absent from the litigation.  As this issue pertains to the rule 19 analysis and not failure to state a
claim, the Court discusses it below in Section III.B.i.a.

1   performed, even if excessively, the exception does not apply; but where an attorney

2   has taken assignment of the client's interests in a property, the attorney has a personal

3   stake in the conspiracy to regain ownership of the property.  *Id.* (citing *Mintz*, 172 Cal.

4   App. 4th at 1606 and *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 47 (1989)).

5         Here, while Plaintiffs  generally allege that Prime Administration acted as the

6   agent of titleholder and vice-versa, raising the possible application of the agent-

7   immunity rule, the exception applies.  Plaintiffs argue in their Opposition, based on

8   the Declaration of Selena Kerr, Executive Vice President of Property Management for

9   Prime Administration, LLC, that Prime Administration receives a percentage cut of the

10   monthly gross revenue of the profits received, including a percentage for each late

11   fee it charges.  (Decl. of S. Kerr (ECF No. 51-2) ¶ 3; Opp'n at 2.)  Therefore, Prime

12   Administration has a personal interest in charging additional late fees or wrongfully

13   retaining deposits because doing so would allow Prime Administration to receive

14   additional financial gain that is separate and apart from the landlords' own gain.  *See*,

15   *Sanchez v. Aviva Life & Annuity Co.*, No. CIV-S09-1454-FCD-DAD, 2010 WL 2606670,

16   at *8 (E.D. Cal. June 28, 2010)  (holding that the agency rule was inapplicable where

17   the agents were "motivated by the prospect of personal gain as much as they were

18   motivated by the profit potential for [the] corporate principal" in carrying out a Ponzi

19   scheme); *Villains*, 870 F. Supp. 2d at 797 (suggesting that the exception would be met

20   if the agent had received a cut of the withheld money).  Accordingly, the agency-

21   immunity rule does not apply to Plaintiffs' conspiracy allegations.

22         However, Plaintiffs have failed to sufficiently plead a conspiracy between Prime

23   Ascot and the Landlords.  A conspiracy claim consists of "(1) the formation and

24   operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3)

25   the damage resulting from such act or acts."  *Gen. Am. Life Ins. Co. v. Rana*, 769 F.

26   Supp. 1121, 1125 (N.D. Cal. 1991).  To establish the formation and operation of a

27   conspiracy, a plaintiff must allege specific facts showing that the conspirators

28   "directed themselves towards this wrongful goal by virtue of a mutual understanding

11

1   or agreement." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal.

2   1990).  Allegations of an explicit agreement are not required, but the complaint must

3   contain more than the bare assertion that the conspirators agreed to the conduct.  *Id.*;

4   *Love v. The Mail on Sunday*, No. CV-05-7798-ABC-PJW, 2006 WL 4046180, at *15

5   (C.D. Cal. Aug. 15, 2006).  Further, "[i]n civil conspiracy actions, courts insist upon a

6   higher level of specificity than is usually demanded of other pleadings."

7        Plaintiffs' SAC fails to plead sufficient facts establishing the formation and

8   operation of a conspiracy.  Plaintiffs alleges that "important management decisions

9   and policies . . . are common and shared among all Prime Properties,"  and that "all

10  Prime Properties are primarily operated and managed through the same Defendant,

11  Prime Administration, LLC."  (SAC ¶ 19, 25.)  However, the mere allegation that Prime

12  Administration made common management decisions does not establish any

13  agreement among the parties to carry out the management decisions.  "The

14  complaint [also] fails, for example, to allege how the conspiracy operated, or to

15  differentiate among the various different defendants and their alleged roles."  *Love*,

16  2006 WL 4046180 at *15; *accord Nelson v. Levy*, No. 16-CV-03797-MMC, 2016 WL

17  6892713, at *3 (N.D. Cal. Nov. 23, 2016).  Because there are no facts establishing the

18  formation of a conspiracy, Plaintiff's conspiracy allegations fail.

19        The Court accordingly DENIES Defendant's 12(b)(6) motion as to Plaintiff's alter

20  ego claims, and GRANTS the motion with respect to the conspiracy claims, with leave

21  to amend.

22        **B.  Failure to Join Under Rule 19**

23             **i.  Whether the Absent Landlords are necessary parties**

24        A party is considered necessary under Rule 19(a) if one of the following applies:

25  First, if in the party's absence, "the court cannot accord complete relief among existing

26  parties;" second, "if [the party] has an interest in the action and resolving the action in

27  [the party's] absence may as a practical matter impair or impede [the party's] ability to

28  protect that interest;" or, third, "if [the party] has an interest in the action and resolving

1  the action in [the party's] absence may leave an existing party subject to inconsistent

2  obligations because of that interest." *Salt River Project*, 672 F.3d at 1179.  Defendants

3  argue that the absent landlords are necessary parties in all three instances.[4]

4  **a.    Complete relief among the parties**

5      Defendants assert that Plaintiffs cannot seek complete relief under the UCL –

6  which allows for only restitution and injunctive relief – from the Named Defendants

7  alone.  First, they argue that any class plaintiff who was a tenant of the Absent

8  Landlords cannot receive restitution from Prime Administration because the funds

9  were not retained by Prime Administration but rather paid to the Absent Landlords.

10  Second, Defendants argue that Plaintiffs cannot obtain complete relief by enjoining

11  only the actions of Prime Administration because the individual Absent Landlords

12  would be free to engage in the same practices.

13      Rule 19 is concerned with whether the Court can accord complete relief

14  among the *existing* parties.  Fed. R. Civ. P. 19(a)(1) (requiring joinder if "in that

15  person's absence, the court cannot accord complete relief among existing parties");

16  *Zeff v. Greystar Real Est. Partners*, *LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *4

17  (N.D. Cal. Feb. 18, 2021) ("[N]onjoinder precludes the court from effecting relief not in

18  some overall sense, but between *extant parties*.  In other words, joinder is required

19  only when the absentee's nonjoinder precludes the court from rendering complete

20  justice *among those already joined* . . . ." (quoting Moore's Fed. Prac. – Civ.

21  § 19.03[2][b][ii]) (emphasis in original)).  Currently, the only parties to the suit are the

22  Named Plaintiffs, their former landlords, and the property manager, Prime

23  Administration.  Because the landlord of each Plaintiff is named in the suit, as it stands

24  the Court would be able to both enjoin each Plaintiff's landlord and order restitution

25

26  [4] Although the Court has determined that Plaintiffs have sufficiently alleged their alter ego claims, the
   court reviews whether the Absent Landlords are required without regard to the alter ego theory.

27  *Wilson v. Metals USA, Inc.*, No. CIV. S-12-0568 LKK, 2012 WL 5932990, at *5 (E.D. Cal. Nov. 27, 2012)
   (holding that the absent party was required despite an alter ego theory because a court cannot

28  disregard the corporate structure until there is a finding of fact that the entities are alter egos).

1    from those landlords.  Defendants' arguments about whether complete relief might

2    be accorded as to a hypothetical class of plaintiffs is in this sense premature.

3           In any event, as described below, Plaintiffs would be able to receive complete

4    relief from Prime Administration alone for Prime Administration's management

5    practices even if the landlords were not named.

6           ***Restitution***

7           Defendants assert that restitution can only be granted where the funds are paid

8    directly to a defendant and the defendant is in actual possession of those funds.

9    However, California courts tend to hold that restitution may be sought against the

10   perpetrator of the unfair business practice, regardless of whether they received a

11   direct benefit, where the defendant's wrongful conduct caused the plaintiff to pay the

12   funds for which they are seeking restitution.  Violators cannot "escape restitution by

13   structuring their schemes to avoid receiving direct payment from their victims."

14   *People ex rel. Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1562 (2014); *see, e.g.*, *Troyk v.*

15   *Farmers Group, Inc.* 171 Cal. App. 4th 1305, 1314–1315 (2009); *Shersher v. Superior*

16   *Court*, 154 Cal. App. 4th 1491, 1494–1495 (2007); *see also Matoff v. Brinker Rest.*

17   *Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) (finding that an employer may be

18   liable for misappropriation of tips despite the fact that the tips were given to and

19   retained by different employees); *Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-

20   WHO, 2018 WL 5617732, at *5–6 (N.D. Cal. Oct. 26, 2018) (finding that a car

21   manufacturer could be held liable in restitution for false advertising despite the fact

22   that it received no funds directly from the plaintiff).

23          The cases cited by Defendant in support of its position do not support a strict

24   requirement that a defendant must be in active possession of the funds, but rather

25   these cases simply affirm the distinction between restitution and ordinary damages.  In

26   *EchoStar Satellite Corp. v. NDS Group PLC*, the plaintiff could not show that the

27   defendant took money or property from the plaintiff; rather the plaintiff's argument

28   was one of damages resulting in the lost value of its secure system.  No. SA-CV-03-

14

1    0950-DOC-JTL, 2008 WL 4596644, *8 (C.D. Cal. Oct. 15, 2008).  Similarly, in *Zeppeiro*

2    *v. Green Tree Servicing, LLC*, the plaintiff alleged that he incurred "higher arrearages,

3    late fees, foreclosure fees, and interest charges" as a result of the defendant denying

4    his loan modification, but did not allege that he actually paid any of those charges.

5    No. CV-14-01336-MMM-JC, 2015 WL 12660398, at *11 (C.D. Cal. Apr. 15, 2015).  And

6    in *Colgan v. Leatherman Tool Grp., Inc.*, the court found that trial court erred by not

7    looking to the amount required to restore the purchasers to the status quo.  135 Cal.

8    App. 4th 663, 700 (2006), *as modified on denial of reh'g* (Jan. 31, 2006).

9           The purpose of restitution under the UCL is not to provide ordinary damages,

10    but to "compel a UCL defendant to return money obtained through an unfair business

11    practice to those persons in interest from whom the property was taken."  *Korea*

12    *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (quoting *Kraus v.*

13    *Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126–27 (2000)).  "These awards are for

14    'money that once had been in the possession of the person to whom it [is] to be

15    restored.'" *Colgan*, 135 Cal. App. 4th at 697 (quoting *Cortez v. Purolator Air Filtration*

16    *Prod. Co.*, 23 Cal. 4th 163, 177 (2000)).  "Moreover, in contrast to contract restitution,

17    statutory restitution [(like that under the UCL)] is not solely 'intended to benefit the

18    [victims] by the return of money, but instead is [also] designed to penalize a defendant

19    for past unlawful conduct and thereby deter future violations.'"  *People ex rel. Kennedy*

20    *v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 134 (2003), *as modified on denial of*

21    *reh'g* (Sept. 9, 2003) (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 25–26 (1984)).

22           Because of this broad interest in both providing relief to the victim and also

23    penalizing the wrongdoer, California courts have repeatedly authorized suit against a

24    party which has committed the wrongful act, but which is not in direct possession of

25    the funds.  In *Troyk v. Farmers Group, Inc.*, the court allowed the plaintiff to seek

26    restitution from both the insurance company and the company's attorney for unlawful

27    service charges engineered by those defendants despite the fact that a third-party

28    billing company was the direct recipient of the funds.  171 Cal. App. 4th at 1314–1315.

1    The court held that a plaintiff may "seek UCL restitution from a defendant whose
2    unlawful business practice caused the plaintiff to pay that money."  *Id.*

3          Similarly, in *Shersher v. Superior Court*, the court held that a plaintiff who
4    purchased a product from a retailer could sue the product's maker for restitution
5    under the UCL despite the plaintiff not having paid funds to that company.  154 Cal.
6    App. 4th at 1494–1495.  The court held that "[n]othing in [California Supreme Court's
7    caselaw] conditions the recovery of restitution on the plaintiff having made direct
8    payments to a defendant who is alleged to have engaged in false advertising or
9    unlawful practices under the UCL."  *Id.*

10         And, most applicable to this case, in *People ex rel. Harris v. Sarpas*, the court
11   held that the owners of a company who orchestrated a fraudulent scheme could be
12   liable in restitution under the UCL despite the company being in retention of the
13   funds.  225 Cal. App. 4th at 1562.  In that case, the plaintiffs alleged that the
14   defendants had fraudulently induced the plaintiffs to make payments to the company
15   which was owned by the defendants.  *Id.*  Despite the fact that no funds were paid
16   directly to or held by the defendants, the court ordered that the defendants, as
17   perpetrators of the fraudulent scheme, restore the funds to the plaintiffs.  *Id.* The court
18   also held that the restitution was not limited to the profits that the defendants had
19   received from the business, but that defendants were instead liable for the full amount
20   of money paid by the plaintiffs, emphasizing that the UCL is focused on restoring the
21   status quo of the victim and is not concerned with the position of the perpetrator.  *Id.*

22         The present case is similar to these foregoing cases in that the Plaintiffs are
23   alleging that Defendant Prime Administration is the entity that orchestrated and
24   engaged in the alleged excessive fee and security deposit schemes at issue.  Plaintiff
25   alleges that it was Prime Administration's business practices which caused the tenants
26   to pay the unlawful charges.  Therefore, Prime Administration may be held liable in
27   restitution for the harm caused by those business practices, even if the practices
28   ultimately primarily benefitted the individual landlords.  Such an outcome would serve

1    the dual purposes of restitution under the UCL: to penalize the alleged wrongdoer,

2    and return the Plaintiffs to the status quo.  Whether Prime Administration then has a

3    right to indemnification from the individual landlords who ultimately received the

4    funds has no bearing on whether Plaintiffs can obtain relief against Prime

5    Administration.  *See Coldani v. Hamm*, No. 2:07-CV-0660-JAM-EFB, 2008 WL

6    4104292, at *2 (E.D. Cal. Sept. 3, 2008); *cf. Regehr v. Greystar Mgmt. Servs., L.P.*, No.

7    A-15-CA-00501-SS, 2016 WL 3963220, at *1, *6 (W.D. Tex. July 21, 2016) (holding that

8    property owners were not necessary parties where the plaintiff alleged that he paid

9    the unlawful charge to the property manager).

10        ***Injunctive Relief***

11        Defendants further argue that Plaintiffs cannot obtain complete relief by only

12    enjoining the actions of Defendant Prime Administration because the individual

13    Absent Landlords would be free to engage in the same practices.  "This factor is

14    concerned with consummate rather than partial or hollow relief as to those already

15    parties, and with precluding multiple lawsuits on the same cause of action." *Disabled*

16    *Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004)

17    (*quoting Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.

18    1983)).  "In making its determination, the court asks whether the 'absence of the party

19    would preclude the district court from fashioning meaningful relief as between the

20    parties.'" *Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1205 (D. Nev.

21    2009) (quoting *Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship &*

22    *Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981)).  A plaintiff "need not name every

23    possible defendant" to be accorded complete relief.  *Zeff*, 2021 WL 632614, at *4;

24    *Coldani*, 2008 WL 4104292, at *2.

25        "[T]hat the absentee might later frustrate the outcome of the litigation does not

26    itself make the absentee necessary for complete relief.  The 'complete relief' clause

27    does not contemplate other potential defendants, or other possible remedies." *Zeff*,

28    2021 WL 632614, at *3–*4 (quoting Moore's Fed. Prac. – Civ. § 19.03[2][b][ii]).  In

1    *Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship & Training Comm.*,

2    the Ninth Circuit concluded that the possibility that a third party would subvert an

3    injunction against the defendant did not mean that complete relief could not be

4    accorded among the existing parties.  662 F.2d at 537.  A defendant "may not avoid

5    its own liability for [illegal practices] by relying on [a third party's] possible future

6    conduct that might frustrate the remedial purposes of any court-ordered

7    changes . . . ."  *Id.*; *accord Zeff*, 2021 WL 632614, at *4.

8         Defendants argue that complete relief may not be accorded where there is an

9    absent contracting party, relying on *Dawavendewa v. Salt River Project Agr. Imp. &*

10   *Power District*.  There, the plaintiff sought to enjoin the power district from enforcing a

11   specific hiring preference policy in the lease they held with the Navajo nation which

12   owned and leased the land.  276 F.3d 1150, 1155 (9th Cir. 2002).  The Ninth Circuit

13   concluded that because it had no authority to also enjoin the actions of the Navajo

14   nation, the Navajo nation would maintain the right to seek enforcement of the

15   provision regardless of the court's injunction against the power district.  *Id.*  Therefore,

16   even if the plaintiff was successful in securing an injunction, the relief would not be

17   meaningful because it would not actually prevent enforcement of the provision at

18   issue.

19        The *Dawavendewa* case is inapposite because, in contrast, Plaintiffs here seek

20   to enjoin Prime Administration from carrying out allegedly illegal or unfair practices

21   that operate independently of the terms of the lease.  These practices, such as the

22   pyramiding scheme, or withholding security deposits for repainting, are not

23   themselves part of or required by the lease agreement, but rather practices that Prime

24   Administration has allegedly developed to enforce the late fee and security deposit

25   provisions of the agreements.  According to Plaintiffs, Prime Administration

26   developed and is the main driver of these practices.  Enjoining Prime Administration's

27   actions will affect complete relief from the *specific practices* at issue, even if the lease

28   provisions, which do not require those practice, remain intact.  The possibility that the

18

Absent Landlords may choose to later engage in the same unlawful practices does not mean that they are necessary to afford complete relief as to the unlawful conduct currently perpetrated by Prime Administration.

In a case involving similar claims that the property management company engaged in wrongful conduct, the Northern District of California found that the plaintiffs could obtain complete relief against the property manager only.  There, the property manager's practices also "operate[d] independently of the Lease Contract" between the plaintiff and the owner/landlord because they were not prescribed by the lease itself.  Therefore, an injunction against the property manager preventing "further collection of illegal fees and retention of security deposits" would accord complete relief to the Plaintiffs without the need to enjoin the conduct of the owner/landlord.  *Zeff*, 2021 WL 632614, at *4.

The only contract provision which Plaintiffs challenge, discussed more fully below, is the amount of the late fee which is expressly outlined in the lease agreements.  Plaintiffs would not be able to seek meaningful relief from the amount of the fee without enjoining the landlord as well because the landlord would, like the other contracting party in *Dawavendewa*, remain entitled to enforce that provision. *Zeff* contained a similar provision which outlined the amount of the late fee as well, but there the court determined that "the challenged fee, in the context of the entire contract, [wa]s relatively minor" and did not make the absent party a necessary party. 2021 WL 632614, at *4.  Regardless, the landlords of the current Named Plaintiffs are part of the action and would be subject to injunction by this Court, obviating the issue in *Dawavendewa*.

### b.    The Absent Landlords' interest in the action

A party is also necessary to an action "if [the party] has an interest in the action and" either (1) "resolving the action in [the party's] absence may as a practical matter impair or impede [the party's] ability to protect that interest" or, (2) the party's absence "may leave an existing party subject to inconsistent obligations because of that

19

1   interest." *Salt River Project*, 672 F.3d at 1179.  Defendants assert that the Absent

2   Landlords have an interest in the action because the Seventh and Eighth Causes of

3   Action implicate provisions of the Absent Landlords' lease contracts with tenants.

4   They assert that adjudication of the claims will impair the Absent Landlords' ability to

5   exercise their contract rights or will leave their tenants subject to inconsistent

6   obligations.

7          As discussed above, Rule 19 is concerned only with existing parties.  *Id*.

8   Currently, all parties who have an interest in the disputed contracts are named in this

9   suit.  No tenant or former tenant of the Absent Landlords are named as plaintiffs, and

10  none of the Named Plaintiffs had a contract with the Absent Landlords.  The Absent

11  Landlords have no interest in the contracts between the Named Plaintiffs and the

12  Named Defendants because they are not party to those contracts.  Therefore, the

13  Absent Landlords' contract interests are not implicated.

14         However, if in the future the Excessive Fee class is certified, and those class

15  plaintiffs who have or had a contract with Absent Landlords are joined, then the

16  Absent Landlords' interest in the challenged contract provisions would be implicated

17  by the Eighth Cause of Action.  *See Hanney v. Epic Aircraft LLC*, No. 6:21-CV-01199-

18  MK, 2022 WL 960652, at *3 (D. Or. Mar. 15, 2022), *report and recommendation*

19  *adopted*, No. 6:21-CV-1199-MK, 2022 WL 959223 (D. Or. Mar. 30, 2022) (deferring

20  ruling on the motion to dismiss under Rule 19 because the necessity of the absent

21  party depended on whether the class was ultimately certified); *Bartle on Behalf of*

22  *Herself v. TD Ameritrade Holdings Corp.*, No. 20-CV-00166-SRB, 2020 WL 9211182, at

23  *3 (W.D. Mo. Aug. 7, 2020) (same).  In the Eighth Cause of Action, Plaintiffs allege that

24  late fee amounts, which are set by contract, are "excessive" and violate California law

25  and the UCL.  (SAC ¶¶ 140–141.)  Plaintiffs bring this claim on behalf of the "Excessive

26  Fees Class" which encompasses "[a]ll persons who leased an apartment at one of the

27  Prime Properties in California" who were charged the allegedly excessive fees.  In

28  contrast, Plaintiffs' Sixth Cause of Action, explicitly claiming breach of contract based

20

on the imposition of those fees is specifically limited to "members of the Excessive Fees Class and Security Deposit Class that had leases for the rental of an apartment at Blue Rock Village or Park LaBrea," *i.e.*, leases with the Named Defendants. (SAC ¶ 118.)  The Eighth Cause of Action contains no such limitation.  Based on the sample lease agreement provided by the Defendants, the fee for late payment is specifically outlined in the lease agreements.  (Mot., Ex. B at 2.)  Because the late fee amounts are set by the leases, the claim is a direct challenge to those contract provisions. Accordingly, if the Excessive Fee Class were certified, and current or former tenants of the Absent Landlords who entered into lease agreements with them became parties to this suit, this claim would implicate the contracts of the Absent Landlords, and the Absent Landlords would have an interest in litigating the lawfulness of the late fee amounts.

The Seventh Cause of Action, however, does not implicate any lease provisions and the Absent Landlords would therefore have no interest in that claim even if a class containing their current or former tenants were certified.  The Seventh Cause of Action does not challenge any lease provision, but rather  only challenges Prime Administration's conduct and policies.  Plaintiffs allege that Prime Administration violated California law by deducting security deposits for painting charges based on an improper determination about the useful life of the paint, not timely reimbursing the Plaintiffs' security deposits, and not providing an itemization of the withheld deposits as required by California Civil Code 1950.5.  The lease does not state that charges will be made for painting, or when the deposit will be returned.  Instead, according to the sample lease agreement provided by Defendants, the standard provision on security deposits merely states that the landlords will, upon "termination of the tenancy, comply with all applicable state laws in the refund of the security deposit" and may "use the security deposit, or portions thereof, to cover any charges related to Lessee's defaults in the performance of the Agreement, including, but not limited to, unpaid rent, late fees and returned check fees." (Mot., Ex. B at 2.)  Plaintiffs

21

1    allege that it is Prime Administration which "sets and effectuates policies related to

2    charges to and deductions from security deposits for every unit at every one of the

3    Prime Properties in California." (SAC ¶ 129.) Thus, it is Prime Administration's

4    policies, not the leases, which Plaintiffs challenge in the Seventh Cause of Action.  If

5    the Court were to find that Prime Administration illegally withholds security deposits

6    or fails to otherwise comply with the law, this would not impair the Absent Landlords'

7    ability to exercise their contractual rights to comply with California law or otherwise

8    lawfully use the security deposits for the outlined purposes.

9         Accordingly, while the Absent Landlords may theoretically have an interest in

10   this action if the Excessive Fee Class is certified and included tenants which resided in

11   the properties owned by the Absent Landlords, as the matter stands, the Absent

12   Landlords do not have a current interest in the case.  Therefore, the Absent Landlords

13   are not "necessary" under Rule 19.  The Court accordingly denies Defendants' Motion

14   without prejudice to its refiling if the Excessive Fee Class is certified.

15   **IV.    Conclusion**

16        For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to

17   Dismiss, ECF No. 51, is GRANTED IN PART with respect to Plaintiff's conspiracy claims

18   with leave to amend.  Within 30 days, Defendant is ordered to file an Amended

19   Complaint consistent with this Order or inform the Court of its election to stand on the

20   Second Amended Complaint.  Defendant's Motion is otherwise DENIED without

21   prejudice to refiling under Rule 19 after class certification.

22

23        IT IS SO ORDERED.

24   Dated:   **June 11, 2024**

25                                                         Hon. Daniel J. Calabretta
                                                          UNITED STATES DISTRICT JUDGE
26

27   DJC2 – Leaser20CV02502.mtd

28

                                              22