RICHARD R. PATCH (State Bar No. 88049)
HOWARD A. SLAVITT (State Bar No. 172840)
MARK L. HEJINIAN (State Bar No. 281417)
EVAN CAMPBELL (State Bar No. 342223)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California  94104-5500
Telephone: 415.391.4800
Facsimile:  415.989.1663
Email:     ef-rrp@cpdb.com
           ef-has@cpdb.com
           ef-mlh@cpdb.com
           ef-egc@cpdb.com

Attorneys for Defendants
PRIME ASCOT, L.P., *et al.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| NICHA LEASER, ATCHARA WONGSAROJ, KATINA MAGEE, and JOYCE EISMAN, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME ASCOT, L.P., a California limited partnership, *et al.*<br><br>Defendants. | Case No. 2:20-CV-02502-DJC-AC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>District Judge Daniel J. Calabretta<br>Courtroom 10, 13th Floor<br><br>Date:   November 14, 2024<br>Time:   1:30 p.m.<br>Crtm.:  10, 13th Floor<br>Judge:  The Hon. Daniel J. Calabretta<br><br>Trial Date:            None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    I.    INTRODUCTION.....................................................................................................1

    II.    PROCEDURAL BACKGROUND ...........................................................................2

    III.    LEGAL STANDARD ...............................................................................................5

    IV.    ARGUMENT ............................................................................................................6

        A.    This Court Must Apply California Choice-Of-Law Rules, Which Dictate That Alter Ego Analysis Is Evaluated Under Delaware Law ............6

        B.    To Pierce The Corporate Veil Under Delaware Law, Plaintiffs Must Plead Facts Sufficient To Satisfy A Single-Entity Element And A Fraud Element ......................................................................................................7

        C.    A Heightened Pleading Standard Applies When Evaluating The Sufficiency Of Allegations Relating To The Fraud Element .........................9

        D.    Plaintiffs' Allegations Do Not Satisfy Either Element Of Alter Ego Liability ..................................................................................................10

            1.    Plaintiffs' Allegations Do Not Satisfy The Single-Entity Element..................................................................................................10

            2.    Plaintiffs Have Failed To Allege Fraud ..........................................12

    V.    CONCLUSION .......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Clos-ette Too, L.L.C.*,
  No. 14 Civ. 1618(LAK)(JCF), 2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) ............ 8, 12, 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 5, 12

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ..................................................................................................... 13

*Banks v. Theodore Banks & S. Comfort, LLC*,
  No. 2022-0428-PWG, 2022 WL 17261512 (Del. Ch. Nov. 29, 2022),
  *report and recommendation adopted*, (Del. Ch. 2022) ................................................. 7, 8, 13

*BASF Corp. v. POSM II Properties P'ship, L.P.*,
  No. 3608-VCS, 2009 WL 522721 (Del. Ch. Mar. 3, 2009) ......................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 5, 10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ..................................................................................................... 5

*Case Financial, Inc. v. Alden*,
  No. 1184-VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009) .............................................. 7, 10

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ..................................................................................................... 4

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
  No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) .................................... 7, 10

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ..................................................................................................... 5

*Dumont v. Litton Loan Servicing, LP*,
  No. 12-CV-2677-ER-LMS, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014) ............................. 8, 12

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
  No. 3184-VCP, 2008 WL 4057745 (Del. Ch. Sept. 2, 2008) .............................................. 8, 10

*Greenlight Systems, LLC v. Breckenfelder*,
  No. 19-CV-06658-EMC, 2021 WL 2651377 (N.D. Cal. June 28, 2021),
  *aff'd*, No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022) ........................................... 6

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 9, 12, 14

*MacRae v. HCR Manor Care Servs., LLC*,
  No. SA CV 14-0715-DOC-RNB, 2017 WL 11480091 (C.D. Cal. Sept. 14, 2017) .................. 6

018018.0001 4879-6636-1310.38                                     ii                     Case No. 2:20-CV-02502-DJC-AC

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS;
MEMORANDUM OF POINTS AND AUTHORITIES**

*Papasan v. Allain*,
    478 U.S. 265 (1986) .................................................................................................... 5, 10

*Pizana v. SanMedica Int'l LLC*,
    345 F.R.D. 469 (E.D. Cal. 2022) ......................................................................... 6, 7, 9, 11

*Pizana v. SanMedica Int'l, LLC*,
    No. 1:18-cv-00644-ADA-SKO, 2023 WL 8528640 (E.D. Cal. Dec. 8, 2023) ............... 7, 8, 13

*Ruelas v. City of Sanger*,
    No. 1:23-CV-00742-SAB, 2023 WL 5105119 (E.D. Cal. Aug. 9, 2023),
    *report and recommendation adopted*, No. 1:23-CV-0742 JLT SAB, 2023 WL 6163975
    (E.D. Cal. Sept. 21, 2023) ............................................................................................. 5, 6

*Southeast Texas Inns, Inc. v. Prime Hosp. Corp.*,
    462 F.3d 666 (6th Cir. 2006) ............................................................................................. 8

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ........................................................................................................ 9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 9

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) ..................................................................................... 6, 8

*Wimbledon Fund, SPC v. Graybox, LLC*,
    No. 15-6633-CAS(AJWx), 2016 WL 7444709 (C.D. Cal. Aug. 31, 2016) ......................... 9

*Woo v. United Express Grp., Inc.*,
    No. 2:22-cv-01253-DAD-JDP, 2023 WL 6387225 (E.D. Cal. Sept. 29, 2023) ................... 5

*Yu v. GSM Nation, LLC*,
    No. 12293-VCMR, 2017 WL 2889515 (Del. Ch. July 7, 2017) ......................................... 7

**Statutes & Rules**

Cal. Corp. Code § 17708.01 ................................................................................................... 6

Fed. R. Civ. P. 8(a) ............................................................................................................ 9, 12

Fed. R. Civ. P. 9(b) ...................................................................................................... 9, 12, 14

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4, 5, 6

Fed. R. Civ. P. 12(b)(7) ........................................................................................................... 4

Fed. R. Civ. P. 12(c) ......................................................................................................... 2, 4, 5

Fed. R. Civ. P. 19 ..................................................................................................................... 4

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on November 14, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Daniel J. Calabretta, located in the United States Courthouse, 501 I Street, Sacramento, CA 95814, Defendants Prime Ascot, L.P., Prime Ascot Acquisition, LLC, Prime/Park LaBrea Titleholder, LLC, and Prime Administration, LLC ("Defendants") will and hereby do move this Court for an order:

(1) Holding that Delaware law governs the issue of alter ego liability with respect to Prime Administration, LLC, Prime Ascot Acquisition, LLC, and Prime/Park LaBrea Titleholder, LLC ;

(2) Holding that the Rule 9(b) heightened pleading standard applies to allegations relating to the fraud element of alter ego liability under Delaware law;

(3) Finding that the Second Amended Complaint (ECF No. 37), as modified by the Court's June 11, 2024 Order (ECF No. 60), fails to allege—or sufficiently allege—facts to meet either of the two elements of alter ego liability under Delaware law;

(4) Concluding that Plaintiffs have failed to plead alter ego liability under Delaware law; and

(5) Entering judgment in favor of Defendants on Defendants' Thirtieth Affirmative Defense (No Alter Ego Liability).

This Motion is made upon the following grounds:

(a) This Court must apply California choice-of-law rules, which dictate that alter ego analysis with respect to limited liability companies formed in Delaware is evaluated under Delaware law;

(b) To pierce the corporate veil under Delaware law, Plaintiffs must plead facts sufficient to satisfy a single-entity element and a fraud element;

(c) A heightened pleading standard applies when evaluating the sufficiency of allegations relating to the fraud element; and

(d) Plaintiffs' allegations do not satisfy either element of alter ego liability.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which

1 the Court may take judicial notice, and any argument or evidence that may be presented to or
2 considered by the Court prior to its ruling.

3     Counsel for Defendants certify that the parties have exhausted meet and confer efforts
4 prior to the filing of this motion. On October 2, 2023, Richard Patch, Howard Slavitt, and Mark
5 Hejinian, counsel for Defendants, met and conferred with counsel for Plaintiffs via teleconference
6 to discuss the substance and basis of the contemplated motion and any potential resolution.
7 Mr. Hejinian explained the basis for Defendants' motion, but the parties were unable to reach a
8 resolution.

9 DATED: October 10, 2024        COBLENTZ PATCH DUFFY & BASS LLP

By: _____
RICHARD R. PATCH
Attorneys for Defendants
PRIME ASCOT, L.P., PRIME ASCOT
ACQUISITION, LLC, PRIME/PARK LABREA
TITLEHOLDER, LLC, and PRIME
ADMINISTRATION, LLC

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants move for an order entering judgment that there is no alter ego liability on the grounds that the operative complaint has not alleged facts necessary or sufficient to satisfy the required elements under Delaware law, which controls the analysis.  This is not a repetition of any previously filed motion—this motion differs dispositively from its predecessors.  Previously, neither Defendants nor Plaintiffs had raised the issue of which state's law applies to the alter ego analysis, and so the Parties and the Court have worked under the implicit assumption that California law applies.  However, as another court in this district has made clear (*see infra* Part IV.A), California's statutory choice-of-law rule requires that courts conducting an alter ego analysis with respect to a foreign limited liability company apply the substantive law of the state where that LLC is formed.  In this case, that state is Delaware.

Under Delaware law, Plaintiffs must satisfy two elements to pierce the corporate veil.  The allegations in the operative complaint are insufficient to satisfy the first element, which requires that plaintiffs allege sufficient facts for the court to find it plausible that two corporate entities are in fact a single economic entity.  Although the single-entity element is somewhat similar to the first element of California's alter ego liability doctrine (the "unity of interest" element), its application here calls for a different result than the Court's previous analysis.  Perhaps more critically, with respect to the second element of alter ego liability, Delaware law differs materially from California law.  To satisfy the second element under *California* law, plaintiffs must plead that an inequitable result would obtain in the absence of a finding of alter ego.  To satisfy the second element under *Delaware* law, plaintiffs must go much further and plead that the corporate entity is a sham that exists for no other purpose than as a vehicle for fraud, and that such fraud must derive from the inequitable use of the corporate form itself, not from the plaintiffs' underlying claim.  Here, Plaintiffs have failed to allege a single fact from which the Court could infer such fraud.  Absent such an allegation and specific factual allegations supporting it, the operative complaint does not plead alter ego liability.

In June of this year, the Court denied Defendants' motion to dismiss (ECF No. 60), holding that, pursuant the requirements for piercing the corporate veil under *California* law, Plaintiffs had plausibly alleged an alter ego theory. In that order, the Court noted that, after answering, a defendant may properly bring a Rule 12(c) motion for judgment on the pleadings on an issue which was previously the subject of a motion to dismiss. This is that Rule 12(c) motion and, by way of this motion, Defendants seek an order, under *Delaware* law, entering judgment in favor of Defendants on Defendants' Thirtieth Affirmative Defense (No Alter Ego Liability) on the grounds that Plaintiffs have failed to plead alter ego liability.

## II.  PROCEDURAL BACKGROUND

On November 20, 2020, Plaintiffs filed their First Amended Complaint ("FAC"). ECF No. 1-2 at 1.

On December 17, 2020, Defendants removed the FAC to this district. ECF No. 1.

On December 23, 2020, Defendants filed a motion to dismiss and strike (the "December 23 Motion") that argued, *inter alia*, that Plaintiffs' "allegations of . . . alter ego . . . liability in the FAC are all woefully deficient and cannot establish cognizable claims against the Standing Defendants." ECF No. 6 at 12:18–19; *see id.* at 14:27–16:26 (citing California law). Additionally, or in the alternative, the December 23 Motion sought an order striking the alter ego liability allegations on the grounds that they were immaterial. ECF No. 6 at 12:20–21.

On March 4, 2022, the Court denied the December 23 Motion with respect to the alter ego liability allegations. ECF No. 26 (the "March 4 Order") at 10:6–8.

On March 14, 2022, certain Defendants filed a motion for reconsideration of the March 4 Order (the "March 14 Motion"), specifically seeking reconsideration of such Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and specifically, the finding that the Named Plaintiffs sufficiently alleged aiding and abetting liability. ECF No. 27 at 1:4–9 (citing ECF No. 26 at 7–9).

On April 4, 2022, Plaintiffs filed a second amended complaint. ECF No. 30.

On June 15, 2022, the Court issued an order (the "June 15 Order") granting the March 14 Motion and striking Plaintiffs' second amended complaint from the docket. ECF No. 34

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

at 11:2–5.  In the June 15 Order, the Court noted that, "[b]ecause the Court previously denied Defendants' motion to strike the allegations of conspiracy, alter ego and aiding and abetting liability based on a finding that Plaintiffs adequately established aiding and abetting liability [which the Court then reconsidered], . . . *Defendants may raise this argument again in any future responsive pleading*."  ECF No. 34 at 10:24–27 (emphasis added); *see* ECF No. 60 at 6:13-14 (the Court describing the June 15 Order as "invit[ing] the Defendants to bring a new motion as to the alter ego claims").

On July 29, 2022, Plaintiffs filed the operative second amended complaint (the "SAC") ECF No. 37.  The SAC names as Defendants Prime Ascot, L.P.; Prime Ascot Acquisition, LLC; Prime/Park LaBrea Titleholder, LLC; and Prime Administration, LLC (each a "Co-Defendant" and together, "Defendants").

On August 26, 2022, Defendants filed a motion to strike, or in the alternative, to join required parties (the "August 26 Motion").  ECF No. 38.  In the August 26 Motion, Defendants argued, *inter alia*, that the Court should strike Plaintiffs' allegations of alter ego on the grounds that the allegations did not satisfy *Iqbal/Twombly*.  *Id.* at 19:3–11.  Defendants further argued that, following the June 15 Order, Plaintiffs' SAC "made no changes whatsoever to any of their secondary liability allegations," and for this reason the identical claims should be stricken without leave to amend.  *Id.* at 19:12–20:6.

On February 22, 2024, the Court issued an Order in which it stated that it had not, in its June 15 Order, "determine[d] that Plaintiffs had failed to establish an alter ego theory of liability" (ECF No. 50 at 6:6–10 (citing ECF No. 34 at 9–10)), finding that "Plaintiffs' allegations that Prime Administration[, LLC ("Prime Administration"),] is the alter ego of the Absent Landlords and ultimately responsible for the allegedly unlawful conduct is a central factual allegation of the SAC."  *Id.* at 6:4–6 (citing California law); *id.* at 9:3–7 ("In sum, the allegations regarding Plaintiffs' alter ego theory are both material and pertinent to central claims in this case, and the references to the Absent Landlords' properties and lease provisions are both material and pertinent to Plaintiffs' Seventh and Eighth Causes of Action regarding Prime Administration's management policies and practices, and to Plaintiff's alter ego theory.").

On March 7, 2024, Defendants filed a motion to dismiss pursuant to Rules 12(b)(7) and 19, and in the alternative, Rule 12(b)(6) (the "March 7 Motion"). ECF No. 51. The March 7 Motion included an argument that Plaintiffs had not sufficiently pled alter ego under California law. *Id*. at 16:15-18:5 & n.9, 24:19-24.

On June 11, 2024, the Court issued an Order granting in part and denying in part Defendants' March 7 Motion (the "June 11 Order"). ECF No. 60. In the June 11 Order, the Court found, *under California law*, that "at this early stage, Plaintiffs have plausibly alleged that Prime Administration is the alter ego of the titleholding subsidiaries." *Id*. at 10:2–4. The Court noted that "Defendants would still be able to file an Answer, and then a Rule 12(c) motion asserting the same arguments, which would be assessed under a similar standard." *Id*. at 6:19-22.

On July 12, 2024, Plaintiffs filed a notice of their intent not to file an amended complaint, standing on their SAC, as modified by the Court's June 11 Order, as the operative complaint. ECF No. 61.

On August 16, 2024, Defendants filed an answer to the SAC. ECF No. 64. As their Thirtieth Affirmative Defense (No Alter Ego Liability), Defendants averred, as relevant to this Motion, as follows:

> Plaintiffs have not pleaded any cause of action for alter ego liability. To the extent that their untethered allegations of alter ego liability have legal significance (which Defendants deny), Plaintiffs bear the burden of proof to establish that any of Defendants are alter egos of any other Defendants or any non-parties, who Defendants allege would need to be named as parties before they could be subject to alter ego liability.

ECF No. 64 ("Answer") at 32:20–27.

On September 6, 2024, the Parties filed their Joint Rule 26(f) Report and Discovery Plan, in which Defendants noted they intended to file a Rule 12(c) motion for judgment on the pleadings as to their 30th Affirmative Defense (no alter ego liability). ECF No. 67 at 10:20–11:5.

On October 10, 2024, Defendants filed this motion for judgment on the pleadings (the "Motion").

## III. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)) (cleaned up).

"Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)) (internal quotation marks omitted). A Rule 12(b)(6) motion "tests the legal sufficiency" of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up) (citing, *inter alia*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted))). This standard requires "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Woo v. United Express Grp., Inc.*, No. 2:22-cv-01253-DAD-JDP, 2023 WL 6387225, at *2 (E.D. Cal. Sept. 29, 2023) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation and internal quotation marks omitted)).

"[T]o grant a Rule 12(b)(6) motion on the basis of an affirmative defense, the facts

establishing the defense must be definitively ascertainable from the complaint and other allowable sources of information, and suffice to establish the affirmative defense with certitude." *Ruelas v. City of Sanger*, No. 1:23-CV-00742-SAB, 2023 WL 5105119, at *8 (E.D. Cal. Aug. 9, 2023) (quoting *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) and *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint.")) (cleaned up), *report and recommendation adopted*, No. 1:23-CV-0742 JLT SAB, 2023 WL 6163975 (E.D. Cal. Sept. 21, 2023).

## IV.   ARGUMENT

Under Delaware law, which applies for purposes of this Motion, alter ego liability with respect to a Delaware LLC is only available when facts have been alleged with particularity that such LLC is a "sham and exist[s] for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). Since Plaintiffs have failed to plead such factual allegations, Defendants are entitled to judgment in their favor on the issue of alter ego liability.

### A.   This Court Must Apply California Choice-Of-Law Rules, Which Dictate That Alter Ego Analysis Is Evaluated Under Delaware Law

"When determining whether alter ego liability applies, federal courts apply the law of the forum state." *Greenlight Systems, LLC v. Breckenfelder*, No. 19-cv-06658-EMC, 2021 WL 2651377, at *17 (N.D. Cal. June 28, 2021) (citing *In re Schwarzkopf*, 626 F.3d 1032, 1036–37 (9th Cir. 2010)), *aff'd*, No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022). "California law provides that to determine whether a limited liability company is liable under the alter ego theory, courts apply the substantive law of the state where the limited liability company is formed." *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 486 (E.D. Cal. 2022) (*Pizana I*) (citing *MacRae v. HCR Manor Care Servs., LLC*, No. SA CV 14-0715-DOC-RNB, 2017 WL 11480091, at *3 (C.D. Cal. Sept. 14, 2017) (collecting cases) (citing Cal. Corp. Code § 17708.01(a) ("Section 17708.01")). "When a statute dictates choice-of-law, . . . the court can rely on the statute." *Greenlight Systems*, 2021 WL 2651377, at *17 (cleaned up). Section 17708.01

"encompasses the determination of an LLC's alter ego liability." *MacRae*, 2017 WL 11480091, at *3; *Pizana I*, 345 F.R.D. at 486; *Greenlight Systems*, 2021 WL 2651377, at *17 ("[T]he state of incorporation governs . . . alter ego liability[.]").

Here, Defendants Prime Administration, Prime Ascot Acquisition, LLC, and Prime/Park LaBrea Titleholder, LLC (each a "Delaware Entity"), are all Delaware LLCs . SAC ¶¶ 15–17; Answer ¶¶ 15–17. Thus, Delaware law governs the alter ego analysis with respect to any attempt to pierce the corporate veil of any of the Delaware Entities. *Pizana I*, 345 F.R.D. at 486.

### B. To Pierce The Corporate Veil Under Delaware Law, Plaintiffs Must Plead Facts Sufficient To Satisfy A Single-Entity Element And A Fraud Element

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, No. 12293-VCMR, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (citation and quotation marks omitted). "Delaware public policy does not lightly disregard the separate legal existence of corporations." *BASF Corp. v. POSM II Properties P'ship, L.P.*, No. 3608-VCS, 2009 WL 522721, at *8 n.50 (Del. Ch. Mar. 3, 2009). "Parties carry a 'substantial burden' when attempting to pierce the corporate veil because Delaware courts will do so only in exceptional cases." *Pizana v. SanMedica Int'l, LLC*, No. 1:18-cv-00644-ADA-SKO, 2023 WL 8528640, at *11 (E.D. Cal. Dec. 8, 2023) (*Pizana II*) (quoting *Case Financial, Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (citation omitted)).

For Plaintiffs to pierce the corporate veil under an alter ego theory, Delaware law requires that each of two elements be satisfied. The first element—that the two corporate entities appear to be a single entity (the "single-entity element")—is a "fact intensive inquiry" in which a court may "consider the following factors, none of which are dominant: (1) whether the company . . . was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Case Financial*, 2009 WL 2581873, at *4 (citation omitted). "No single factor is dispositive. Rather, an ultimate decision regarding veil-piercing is largely based on some combination of these factors[.]" *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,

No. 2022-0378-LWW, 2023 WL 5688392, at *5 (Del. Ch. Sept. 5, 2023) (citations omitted). Indeed, "[m]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity." *Banks v. Theodore Banks & S. Comfort, LLC*, No. 2022-0428-PWG, 2022 WL 17261512, at *5 (Del. Ch. Nov. 29, 2022) (citation omitted), *report and recommendation adopted*, (Del. Ch. Dec. 19, 2022). Nor is "[c]ommon central management, alone, . . . sufficient to pierce the corporate veil." *Pizana II*, 2023 WL 8528640, at *11 (citing *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. 7471-VCP, 2013 WL 5621678, at *28 (Del. Ch. Sept. 30, 2013)).

That is because Plaintiffs must also satisfy the second element of Delaware's alter ego liability doctrine, which demands that, "[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184. And such fraud "must come from an inequitable use of the *corporate form itself* as a sham, and not from the underlying claim." *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184-VCP, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (citations omitted) (emphasis added); *Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 680 (6th Cir. 2006) (applying Delaware law and affirming grant of motion to dismiss as to alter ego claims where the plaintiff (1) did "not allege that [the defendant] was 'involved in an elaborate shell game or [was] otherwise abusing the corporate form to effect a fraud'" (quoting *Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996)) and (2) did not "aver[] that 'the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud'" (quoting *In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001)).

Indeed, even if plaintiffs allege facts sufficient to satisfy the single-entity element, federal courts applying Delaware law have dismissed alter ego claims before discovery when plaintiffs have failed to allege the second element—fraud—sufficiently or at all. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, No. 14 Civ. 1618(LAK)(JCF), 2015 WL 136102, at *5 (S.D.N.Y. Jan. 9, 2015) ("While the plaintiff alleges facts supporting the inference that [the corporate entities] operated as a single economic entity, she does not allege that this arrangement was used to perpetrate an injustice or unfairness independent of her own claims. . . . [A]llegations that [the

corporate entities] had intermingled finances and shared ownership and control are not themselves sufficient to support the second element of alter-ego liability." (citations omitted)); *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 WL 815244, at *22 (S.D.N.Y. Mar. 3, 2014) ("The veil-piercing argument . . . fails . . . [m]ost importantly, . . . [because] there is absolutely no suggestion that either [corporate entity] existed solely as a sham corporation. The only alleged wrong is . . . the underlying misconduct; the [complaint] is silent with respect to fraudulent use of the corporate form itself.").

### C. A Heightened Pleading Standard Applies When Evaluating The Sufficiency Of Allegations Relating To The Fraud Element

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (citing Fed. R. Civ. P. 9(b)). "It is well established that 'Rule 9(b)'s particularity requirement applies to state-law causes of action.'" *Wimbledon Fund, SPC v. Graybox, LLC*, No. 15-6633-CAS(AJWx), 2016 WL 7444709, at *4 (C.D. Cal. Aug. 31, 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess,* 317 F.3d at 1103 (emphasis in original) (citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess,* 317 F.3d at 1106 (citation omitted)).

With respect to the fraud element of an alter ego liability claim, in particular, it has been noted recently in this district that "there is some disagreement among district courts in the Ninth Circuit as to whether Rule 9(b)'s heightened pleading standard applies[.]" *Pizana I*, 345 F.R.D.

at 486 n.13 (citing *Wimbledon Fund*, 2016 WL 7444709, at *5). "However, a majority of courts in this Circuit have found that plaintiffs must satisfy Rule 9(b)'s particularity standard as to the fraud element of plaintiff's alter ego theory." *Wimbledon Fund*, 2016 WL 7444709, at *5 (collecting cases). It is instructive that, in Delaware courts plaintiffs alleging alter ego liability are required to meet a heightened pleading standard. *See EBG Holdings LLC*, 2008 WL 4057745, at *12 n.103 (finding that a merely conclusory allegation unsupported by any specific facts was insufficient to meet the plaintiff's burden of pleading the fraud element of alter ego jurisdiction with particularity (citing Ct. Ch. R. 9(b)).

### D. Plaintiffs' Allegations Do Not Satisfy Either Element Of Alter Ego Liability

#### 1. Plaintiffs' Allegations Do Not Satisfy The Single-Entity Element

Plaintiffs have failed to sufficiently allege the single-entity element of alter ego liability under Delaware law. As noted above, the single-entity element involves consideration of five factors "none of which are dominant: (1) whether the company . . . was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Case Financial*, 2009 WL 2581873, at *4. "No single factor is dispositive[; r]ather, an ultimate decision regarding veil-piercing is largely based on some combination of these factors[.]" *Cleveland-Cliffs*, 2023 WL 5688392, at *5–6 (finding four out of five factors unmet and concluding, on balance, that the factors weigh against a finding of a single economic entity). Here, Plaintiffs have not made any material factual allegations relating to (1) capitalization, (2) solvency, (3) corporate formalities, or (4) the siphoning of funds.

Read in the light most favorable to Plaintiffs, the SAC attempts to broadly allege that Prime Administration (or another of the Delaware Entities) functioned as a "façade" of some other entity or vice versa (i.e., that there are facts sufficient to meet the fifth *Case Financial* factor). However, setting aside those of Plaintiffs' allegations that are merely legal conclusions,[1] the Court

---

[1] For purposes of this Motion, *Twombly* instructs the Court to set aside Plaintiffs' legal

can only draw the inference that Prime Administration or some other Delaware Entity serves as a "façade" from the following factual allegations: that Prime Administration operated and managed the Prime Properties through separate limited partnerships and limited liability companies (SAC ¶¶ 18–21); that "the same group of individuals operates and manages both Prime Administration and the entities holding title to the Prime Properties" (*id.* ¶ 21); that Defendants use the same employees or agents "identified as 'management'" to communicate with tenants (*id.* ¶ 25); that "important management decisions and policies . . . are common and shared among all Prime Properties" (*id.* ¶ 25; *see also id.* ¶¶ 4, 26–28, 61); that the Prime Properties use substantially the same lease agreements on which the term "Prime Residential" variously appears (*id.* ¶ 23–24); and that certain correspondence from Prime Administration included a "PRIME group" graphic or logo. *Id.* ¶¶ 49, 61. Defendants have previously argued that these allegations are insufficient to establish the "unity of interest" element under California law. ECF No. 51 at 17:5–23. The same argument applies to the façade factor specifically, and the single-entity element more broadly, under Delaware law.

But, should the Court find that Plaintiffs have alleged facts sufficient to satisfy the façade factor, that factor alone is insufficient to satisfy the multi-factor single-entity element. *See Pizana I*, 345 F.R.D. at 489 (finding that "some factual support" as to the façade factor was insufficient to state a plausible claim where there was "a dearth of alleged facts addressing any of

---

conclusions that are couched as factual allegations (*see* 550 U.S. at 555–56 (citing *Papasan*, 478 U.S. at 286)), including Plaintiffs' allegations that "these limited partnerships and limited liability company titleholders are merely instrumentalities of Prime Administration" (SAC ¶ 21); that "Defendants were the agents, servants, or employees for one another, and acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment" (*id.* ¶ 30); that Defendants "knowingly participated in [a] common scheme . . . including . . . the application of common unlawful and unfair policies and practices to the tenants of all of the Prime Properties" (*id.* ¶ 29); and that Prime Administration, with Co-Defendants, "impos[ed] and collect[ed] excessive late rent and late utility payment penalties" (*id.* ¶ 140), "intentionally appl[ied] California tenants' payment to their previously recorded debt first (including the assessed penalties), rather than the rent due for the month in which payment is actually made" (*id.* ¶ 142), "improperly charg[ed] . . . continued rent" and "early termination fees regardless of the damages . . . suffered by Defendants " (*id.* ¶¶ 144–45), and "demand[ed] and collect[ed] security deposits . . . and then fail[ed] to comply with California law regarding the charging and refunding of those security deposits." *Id.* ¶ 146.

the remaining factors that courts are to consider in determining alter ego liability"). Just as in *Pizana I*, Plaintiffs here allege no *facts* supporting any of the other factors of—and therefore have failed to satisfy—the single-entity element of alter ego liability under Delaware law.

### 2.     Plaintiffs Have Failed To Allege Fraud

Plaintiffs have failed to plead alter ego liability under Delaware law because they do not allege that the corporate "arrangement was used to perpetrate an injustice or unfairness independent of [Plaintiffs'] own claims." *Allison*, 2015 WL 136102, at *5 ("[A]llegations that [the corporate entities] had intermingled finances and shared ownership and control are not themselves sufficient to support the [fraud] element of alter-ego liability."). "The only alleged wrong is . . . the underlying misconduct; the [SAC] is silent with respect to fraudulent use of the corporate form itself." *Dumont*, 2014 WL 815244, at *22 ("Most importantly, . . . there is absolutely no suggestion that [any corporate entity] existed solely as a sham corporation.").[2] It is not enough to plead "the underlying misconduct"—Plaintiffs must plead "fraudulent use of the corporate form itself." *Id*. (holding that plaintiffs must plead that at least one of the corporate entities at issue here "existed solely as a sham corporation"). Under Rule 9(b), such "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (citation omitted).[3] None of Plaintiffs' material factual allegations come anywhere close to carrying this burden.

In *Allison*, the plaintiff sought to pierce the corporate veil of one entity, which was the alleged parent company of another. 2015 WL 136102, at *1, *4. In her employment-related proposed amended complaint, the plaintiff sought to allege that a single individual was solely

---

[2] The analysis does not change even if the Court were to find that the allegations characterized by Defendants as legal conclusions (*see supra* n.1) are also material factual allegations because each of those allegations relate to Plaintiffs' claims regarding Defendants' alleged underlying misconduct. *Allison*, 2015 WL 136102, at *5; *Dumont*, 2014 WL 815244, at *22.

[3] Even if the Court does not require Plaintiffs to meet a heightened pleading standard as to the fraud element of alter ego liability (*cf. supra* Part IV.C), Plaintiffs have, under Rule 8(a), still failed to allege any facts sufficient to state a claim of alter ego theory that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

responsible for hiring and firing decisions for both companies, that the two companies shared an office space and telephone number, that the two companies had intermingled finances, that loan payments between the two companies were undocumented and without expectation of reimbursement, that the two companies' sole employee routinely performed work for both but was compensated by just one, that one fulfilled orders for the other's clients without reimbursement, and that the two companies shared a single bank account and filed business taxes as a single entity. *Id*. at *4. From these allegations, the court found that it could draw the reasonable inference that the two corporations were a single economic entity. *Id*. at *5. But, since the plaintiff did not also propose to "allege that this arrangement was used to perpetrate an injustice or unfairness independent of her own [employment-related] claims," the court concluded that the proposed amendments were futile in that they were insufficient to satisfy the fraud element of alter ego liability under Delaware law. *Id.* (citation omitted).

Earlier, analyzing the SAC under California law, this Court previously held that Plaintiffs had plausibly alleged that "the owners of the properties Prime Administration manages are the 'mere shell or conduit' of Prime Administration." ECF No. 60 at 8:16–9:4 (citing SAC ¶¶ 18–25).[4] But, now, even if the Court were to find—like in *Allison*—that Plaintiffs have alleged sufficient information to plead the single-entity element of alter ego liability, the Court must also conclude—like in *Allison*—that these findings are not sufficient to establish alter ego liability. *Pizana II*, 2023 WL 8528640, at *11 ("Common central management, alone, is not sufficient to pierce the corporate veil." (citation omitted)); *Banks*, 2022 WL 17261512, at *5 ("Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of

---

[4] The Court also held that Plaintiffs had plausibly alleged the second element of alter ego liability under *California* law, namely that "an inequitable result would occur if the court were to recognize the titleholders as separate entities." ECF No. 60 at 9:25–27 ("To the extent the Plaintiffs are able to prove their claims, it would be inequitable for Prime Administration to hide assets behind its alleged corporate shells or to avoid injunctive relief as to those entities."); *see id.* at 7:19–28 (citing California law). But an inequitable result is not enough to satisfy the fraud element under *Delaware* law. *Allison*, 2015 WL 136102, at *4 ("While the facts used to show that business entities operated as a single enterprise can support the element of fraud or inequality, disregard of the corporate form is not itself sufficient without an allegation that such disregard was actually used to perpetrate an injustice." (internal citations omitted)).

a separate corporate entity." (citation omitted)).

Simply put, Plaintiffs have not alleged a single fact that addresses the fraud element (*Balistreri*, 901 F.2d at 699 (holding that dismissal can be based on absence of sufficient facts alleged under a cognizable legal theory)), much less "the who, what, when, where, and how" (*Kearns*, 567 F.3d at 1124 (citation and internal quotation marks omitted)) from which the Court could find that Prime Administration (or any of the Delaware Entities) is "a sham [that] exist[s] for no other purpose than as a vehicle for fraud." *Allison*, 2015 WL 136102, at *4 (internal quotation marks omitted) (quoting *Wallace*, 752 A.2d at 1184). Given that failure, there can be no alter ego liability.

## V.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter an order holding that Delaware law governs the issue of alter ego liability with respect to Prime Administration and the other Delaware Entities; holding that the Rule 9(b) heightened pleading standard applies to allegations relating to the fraud element of alter ego liability under Delaware law; finding that the SAC (ECF No. 37), as modified by the Court's June 11 Order (ECF No. 60), fails to allege—or sufficiently allege—facts to meet either of the two elements of alter ego liability under Delaware law; concluding that Plaintiffs have failed to plead alter ego liability under Delaware law; and entering judgment in favor of Defendants on Defendants' Thirtieth Affirmative Defense (No Alter Ego Liability).  *See* Answer at 32:20–27.

DATED:  October 10, 2024         COBLENTZ PATCH DUFFY & BASS LLP

By: _____
RICHARD R. PATCH
Attorneys for Defendants
PRIME ASCOT, L.P.,
PRIME ASCOT ACQUISITION, LLC,
PRIME/PARK LABREA TITLEHOLDER, LLC,
& PRIME ADMINISTRATION, LLC