UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHA LEASER, et al.,<br>Plaintiffs,<br>v.<br>PRIME ASCOT, L.P., et al.,<br>Defendants. | No. 2:20-cv-02502-DJC-AC<br><br>ORDER |

Plaintiffs Nicha Leaser, Atchara Wongsaroj, Katina Magee, Joyce Eisman ("Plaintiffs" or "Class Representatives") and Defendants Prime Ascot L.P., Prime Administration LLC, Prime Ascot Acquisition LLC, and Prime/Park LaBrea Titleholder, LLC move for preliminary approval of the class action settlement. In particular, the Parties seek: (1) preliminary approval of the Settlement Agreement; (2) certification of the proposed settlement class for the purpose of determining whether the Settlement Agreement is fair, reasonable, and adequate; (3) approval of the form of Notice of Pendency and Settlement of Class Action and a direction to disseminate the Notice to class members; and (4) to schedule a formal fairness hearing for the final settlement approval.

////

Having considered the Parties Motion, the Court GRANTS IN PART AND DENIES IN PART the Motion.

**FACTUAL AND PROCEDURAL HISTORY**

The Parties seek approval of their Federal Rule of Civil Procedure Rule 23 ("Rule 23") Class Settlement Agreement ("Settlement Agreement" or "Agreement") on behalf of themselves and approximately 2,246 individuals who were residents of Blue Rock Village or Park La Brea and paid at least one late fee exceeding $55.00 between May 8, 2014, and February 18, 2025, whose claims have not been extinguished, released, or waived prior to the Effective Date. (Mot. Prelim. Approval ("Mot.") (ECF No. 110) at 12, (citing Hejinian Decl. (ECF No. 110-3) ¶ 14).)

In 2018, Plaintiffs Leaser and Wongsaroj filed a class action complaint in San Francisco Superior Court against Prime Ascot L.P., Prime Ascot Acquisition, LLC, and Prime Administration LLC based on allegations of pest control problems at Blue Rock Village, improper late fees, early termination option fees, and deductions from security deposits paid by tenants at Blue Rock Village. (*See generally* ECF No. 1-1, Ex. A.) Plaintiffs Leaser and Wongsaroj then filed a First Amended Complaint, naming Magee and Eisman as Plaintiffs and included over twenty other legal entities that owned other apartment complexes across the state as Defendants. (*See generally* ECF No. 1-2, Ex. B.) Defendants then removed the action to federal court. (Not. Removal (ECF No. 1).) After various challenges, Plaintiffs then filed a Second Amended Complaint against Defendants that omitted the additional legal entities in the FAC. (*See generally* SAC (ECF No. 30).) After the Court granted dismissal of Defendants' motion for judgment on the pleadings, Plaintiffs filed a Third Amended Complaint against Defendants. (TAC (ECF No. 97).)

The TAC asserted claims on behalf of three putative classes: (1) the "Habitability Class," consisting of all persons who leased an apartment at Blue Rock Village who experienced "an infestation of vermin" (*Id.* ¶ 73a); (2) the "Excessive Fees Class," consisting of all persons who leased an apartment who paid allegedly improper

charges, including late fees and early termination option fees (*Id.* ¶ 73b); and (3) the "Security Deposit Class," consisting of all persons who leased an apartment who did not receive a full refund of their security deposit and did not receive an itemized statement indicating the basis for the retained amounts (*id.*¶¶ 73c–80). The TAC asserts several claims, individually and on behalf of others similarly situated, arising out of the tenancies at Blue Rock Village and Park La Brea. Specifically, Plaintiffs allege: (1) tortious breach of warranty of habitability; (2) tortious breach of warranty of quiet possession and enjoyment; (3) negligence; (4) nuisance; (5) intentional misrepresentation; (6) breach of contract; (7) violation of California Civil Code § 1950.5; (8) violation of Business & Professions Code § 17200. (*See generally* TAC.)

The Parties classify these claims in four categories: (1) Plaintiffs Wongsaroj, Leaser, and Magee's claims for breach of the warranty of habitability at Blue Rock Village arising out of mouse infestation of their apartments; (2) Defendants alleged unlawful liquidated damages relating to a $75 late fee at Blue Rock Village and a different late fee at Park La Brea; (3) Defendants allegedly charging unlawful liquidated damages when tenants decided to end their lease in the middle of the lease term and selected an early termination fee rather than liability for all damages incurred through the remainder of the lease term; and (4) Defendants allegedly failing to comply with California Civil Code § 1950.5. (Mot. at 4; Hejinian Decl. ¶ 8.) Defendants deny any wrongdoing of any kind. (Hejinian Decl. ¶ 9.)

Following discovery and extensive motion practice, the Parties engaged in settlement negotiations over the course of several months. (*See id.* ¶¶ 10–13.) The Parties also attempted one mediation session, which was unsuccessful. (Tomasevic Decl. (ECF No. 110-2) ¶ 18.) After further motion practice, the Parties engaged in settlement talks again, resulting in the terms discussed below. (Hejinian Decl. ¶ 13.)

## PROPOSED SETTLEMENT TERMS

For settlement purposes, the Parties request approval of the following class: all Persons who were a resident of Blue Rock Village or Park La Brea and paid at least one

late fee exceeding $55.00 during the Class Period whose claims have not been extinguished, released, or waived prior to the Effective Date (defined as the "Settlement Class"). (Agreement (ECF No. 111, Ex. 1)[1] § I.A.22.) The Class Period extends from May 9, 2014, through February 18, 2025. (*Id.* § I.A.4.) Settlement Class Members are any Person who is included within the definition of the Settlement Class who does not validly and timely request exclusion from the Settlement Class in accordance with the provisions of the Notice of Pendency and Settlement of Class Action. . . ." (*Id.* § I.A.23.)

The Parties have agreed to settle the claims for $292,960.07, with no part of the fund reverting back to Defendants. (*Id.* § III.A.) Each Class Member will be paid the amount of any late fee exceeding $55.00 paid between May 9, 2014, and February 18, 2025. (*Id.*) Any unpaid funds remaining in the Late Fees Class Settlement Fund shall be paid into the appropriate state or local government's unclaimed property funds in the name of the Settlement Class Members. (Hejinian Decl. ¶ 15.) No later than thirty days after the Effective Date, Defendants will deliver the sum total of cash payments to be made to Settlement Class Members to a non-interest-bearing account, which shall be disbursed by the Settlement Administrator in accordance with the Agreement. (Agreement § VII.A.) Defendants will also provide all finalized electronic data necessary to determine the final payment accounts to each Settlement Class Member. (*Id.*) No later than fourteen days after Defendants deliver the money to the settlement fund, the Settlement Administrator shall provide payment to Settlement Class Members who are primary tenants, did not opt out, and are due payment. (*Id.* § VII.B.) Physical checks that are sent have a stale date of 180 days after they are sent. (*Id.* § VII.E.) After that point, the uncashed check shall be deposited with the state of California's Unclaimed Property program. (*Id.*)

---

[1] A version of the Agreement is also located at (ECF No. 110-3, Ex. 1) which was missing three signatures. The cited Agreement is materially the same as the initial Agreement but includes the three missing signatures. (Supp. Hejinian Decl. (ECF No. 111) ¶ 2.)

The Parties have also agreed to the following injunctive relief: (1) for two years following the date of the Agreement, Defendants' late fee charge for any tenant of Blue Rock Village and Park La Brea who fails to pay the rent, or any portion of the rent in excess of $55.00, timely shall not exceed $55.00 per monthly charge; (2) after two years of the Agreement, Defendants' late fee charge for any tenant of Blue Rock Village and Park La Brea who fails to pay the rent timely may be increased, at Defendants' discretion, by no more than the amount equal to the preceding annual increase in the CPI as set forth by the U.S. Bureau of Labor Statistics in the month immediately preceding any such fee increase. (Agreement § III.B.1.) Further, Defendants will implement and/or maintain procedures to prohibit the assessment of late fees solely on unpaid laid fees at the Properties. (*Id.* § III.B.2.) Finally, Defendants shall implement and/or maintain procedures to ensure compliance with the requirements of California Civil Code § 1950.5 with respect to security deposits at the Properties. (*Id.* § III.B.3.) For Plaintiffs Leaser and Wongsaroj's Habitability claims specifically, Defendants shall pay them, collectively, $100,000, inclusive of attorneys' fees and costs in exchange for a dismissal of Plaintiffs Leaser and Wongsaroj's claims with prejudice. (*Id.* § III.C.)

The Agreement provides that Defendants will not oppose an application by Class Representative Plaintiffs for a separate Incentive Payment of up to $10,000 for each Class Representative Plaintiff. (*Id.* § V.C.) The Class Representative Plaintiffs and Class Counsel agree not to seek an Incentive Payment in excess of $10,000 for each Class Representative Plaintiff. (*Id.*) The incentive payments will be paid by Defendants. (Hejinian Decl. ¶ 18.)

The proposed Class Counsel are counsel from Craig M. Nicholas, Alex Tomasevic and Jordan Belcastro of Nicholas & Tomasevic, LLP. (Agreement § I.A.2.) The Agreement provides that Defendants have agreed to pay Class Counsel, separate and apart from the Late Fee Settlement Fund, $387,500 for attorney's fees and $11,514.26 for litigation costs, subject to the Court's approval and determination. (*Id.*

§ V.B.) The proposed Class Representatives are Plaintiffs Nicha Leaser, Atchara Wongsaroj, Katina Magee, and Joyce Eisman. (Agreement at 1.)

In exchange for the above, the Agreement defines the claims that will be released as follows ("Released Claims"):

> [A]ny and all manner of actions, causes of actions, claims, compensations, controversies, costs, damages, debts, demands, expenses, liens, liabilities, losses, rights or suits, including claims or suits for contribution or indemnity of every kind and nature or description whatsoever, whether foreseen or unforeseen, developed, fixed or contingent, direct or indirect, liquidated, unliquidated, at law, in equity, or otherwise arising at any time prior to the Agreement Execution Date, (i) that concerned late fees, security deposits, and/or early termination fees and were or could have been asserted in the Litigation or in any of the predecessor complaints and/or (ii) in connection with, arising out of, or relating to any of the facts, circumstances, transactions, events, occurrences, acts, disclosure statements, submissions or failures to act concerning late fees, security deposits, and/or early termination fees as alleged in the Complaint or in any of the predecessor complaints.

(*Id.* § I.A.16.) And the Released Habitability Claims, which would be released and forever discharged by Plaintiffs Leaser and Wongsaroj (*id.* § III.C), as follows:

> [A]ny and all manner of actions, causes of actions, claims, compensations, controversies, costs, damages, debts, demands, expenses, liens, liabilities, losses, rights or suits, including claims or suits for contribution or indemnity of every kind and nature or description whatsoever, whether foreseen or unforeseen, developed, fixed or contingent, direct or indirect, liquidated, unliquidated, at law, in equity, or otherwise arising at any time prior to the Agreement Execution Date, (i) that concerned the Habitability Claims and were or could have been asserted in the Litigation or in any of the predecessor complaints and/or (ii) in connection with, arising out of, or relating to any of the facts, circumstances, transactions, events, occurrences, acts, disclosure statements, submissions or failures to act

> concerning the Habitability Claims as alleged in the Complaint or in any of the predecessor complaints.

(*Id.* § I.A.17.)

The Notice will be administered with the assistance of Angeion Group, LLC, ("Angeion") a neutral third-party class action settlement administrator. (Hejinian Decl. ¶ 20.) Notice to the Class will be achieved in two ways: (1) Notice will be provided no later than thirty days after preliminary approval via email and/or U.S. Mail using the last known contact information in Defendants' records for each Settlement Class Member; and (2) the Administrator will create a website regarding the settlement. (*Id.* ¶ 20; *see* Agreement § IV.)

Membership in the Class is automatic, although members will be given an opportunity to opt-out within forty-five days of the Class Notice being sent out. (Agreement § VI.A.) If more than twenty-five Settlement Class Members submit timely valid requests for exclusion, then Defendants shall have, in their sole discretion, the option to void the Agreement. (*Id.* § VI.D.) The Settlement Administrator shall promptly provide copies of all requests for exclusion, objections, and/or related correspondence from Settlement Class Members to Class Counsel and the Court. (*Id.* § VI.B.)

Finally, upon receiving an order granting final approval of the settlement, Plaintiffs shall dismiss with prejudice all claims in this litigation, and Defendants shall cause the judgment to be entered. (*Id.* § IX.B(1)–(2).)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23, in order to approve a preliminary settlement agreement, a court must determine if it "will likely be able to" both (1) "certify the class for purposes of judgment on the proposal" under Rule 23(a) and 23(b), and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). For classes

likely to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," imposing specific requirements on the contents of the notice. Fed. R. Civ. P. 23(c)(2)(B). After determining certification is appropriate, the Court must then decide whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. At the preliminary approval stage, the court considers the likelihood that it will ultimately approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The determination as to whether to grant final approval is given after class members have been notified and given the opportunity to provide feedback. Fed. R. Civ. P. 23(e)(2).

## ANALYSIS

### I. Certification of the Rule 23 Class

Class certification for a Rule 23 settlement requires satisfaction of four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). To satisfy commonality, there must be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The court considers "the capacity of [the] class wide proceeding to generate common answers" and takes note of "[d]issimilarities within the proposed class [ ] [that] have the potential to impede the generation of common answers." *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (internal quotation marks omitted). "[C]ommonality is generally satisfied where. . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F. 3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).

**A. Numerosity**

For a class to be certified, the class must be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). There are no absolute limitations on the number of individuals that can constitute a class because it depends on the facts of each case. *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). As few as thirty-nine members may be sufficient to satisfy the numerosity requirement. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit guidance regarding numerosity and listing cases).

The Parties estimate approximately 2,246 Class Members. (*See* Hejinian Decl. ¶ 14.) This is a large population at almost every measure. As such, the numerosity requirement is satisfied.

**B. Commonality**

Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this commonality requirement, "[the plaintiff representatives'] claims must depend upon a common contention. . .capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal–Mart*, 564 U.S. at 350) (quotation marks omitted). Individualized damages cannot defeat class certification under Rule 23(b)(3) provided the plaintiff can show the damages stemmed from the defendant's acts at issue. *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

The Parties contend that commonality is satisfied because Defendants are alleged to have breached standardized form leases in the same manner with respect to Plaintiffs and the other members of the proposed class. Additionally, Defendants

are alleged to have improperly charged late fees and early termination fee options and failed to comply with California's Security Deposit statutes or regulations. The Court notes that some of the claims involve different properties – Park La Brea and Blue Rock Village. However, the allegations across all properties "arise from a standard course of conduct adversely affecting a group of individuals," such that the property difference does not change the outcome. *Zepeda v. PayPal, Inc.,* No. C10-1668-SBA, 2015 WL 6746913, at *6 (N.D. Cal. Nov. 5, 2015); *see Millan,* 310 F.R.D. at 604 ("Many California Courts and United States District Courts have found that claims based on a policy that is applicable and applied to all putative class members can satisfy the commonality requirement of Rule 23(a)"); *see also In re Med. Cap. Sec. Litig.,* No. 09-cv-01048-DOC, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts."). Thus, the commonality requirement is satisfied.

**C. Typicality**

In order to determine whether typicality exists, the Court must consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). The claims of the class representatives do not need to be identical to those of class members but must be "reasonably co-extensive with those of absent class members[.]" *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020).

Here, Plaintiffs' claims are typical of the class as they arise out of the same conduct alleged against Defendants: namely, management policies and practices at their respective apartments. The Parties concede that the Plaintiffs may have been affected by the alleged practices differently from other Class Members but contend that the injuries need not be identical. The Court agrees. Since "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries

result from the same, injurious course of conduct," *Armstrong*, 275 F.3d at 869, the Court finds this requirement satisfied.

**D. Adequacy of Representation**

The class representatives must also show that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determining the adequacy of representation requires the court to determine "(a) [if] the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali*, 909 F.3d at 1007.

**1. Conflicts of Interest**

Beginning with the proposed Class Counsel, the Court notes a clear sailing provision and discusses issues pertaining to attorney's fees below. Other than that, however, there are no major issues related to conflicts of interest.

Turning to the proposed Class Representatives, the Court notes they are part of the class or classes they seek to represent and share an interest and injury with the respective class. Notably, however, the Agreement provides for an incentive to the proposed Class Representatives in the form of an application of up to $10,000 in exchange for providing a "broader, general, release of claims than compared with the rest of the class." (Mot. at 3; Tomasevic Decl. ¶ 19.) Incentive awards are considered typical in class action cases and are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Nevertheless, the Court must still consider the propriety of the incentive awards based on the actions of the proposed Class Representatives in protecting the Class's interests, the benefit the Class has received from those actions, and the time and effort expended by the proposed Class Representatives in pursuing litigation. *Staton*, 327 F.3d at 977; *see Radcliffe v. Experian Info. Solutions, Inc.*, 715

F.3d 1157, 1164 (9th Cir. 2013) ("[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives.").

Here, the Parties justify the award for the proposed Class Representatives based on their assistance throughout the litigation and subjecting themselves to public attention by associating their names with the lawsuit. (Tomasevic Decl. ¶ 9.) Further, the proposed Class Representatives helped in drafting the pleadings, searched for and produced documents, participated in discovery, assisted in settlement efforts, and were engaged with counsel throughout the case. (*Id.*) While the Court has no doubt as to the amount of effort the proposed Class Representatives have input throughout the course of the litigation, the Court nevertheless reserves judgment of the incentive award until final approval. The payment of the incentive award would come from the Defendants rather than from the Settlement Fund. (*See* Hejinian Decl. ¶ 18.) After considering the amounts that individual class members would receive from the Settlement Fund, an award of up to $10,000 would be significantly larger than what other Class Members would receive. *See Radcliffe,* 715 F.3d at 1164–65 (explaining that incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded in settlement, should often not be approved). Accordingly, the Court declines to make a final determination at this point.

Additionally, the Agreement provides that Plaintiffs Leaser and Wongsaroj would release their Habitability Claims and release and forever discharge the Related Persons from the Released Habitability Claims in exchange for $100,000[2], inclusive of attorneys' fees and costs. (Agreement § III.C.) The remaining claims would be

---

[2] This would be Plaintiffs Leaser and Wongsaroj's First through Fifth Causes of Action and the Eighth Cause of Action to the extent it is based on allegations of mice and vermin infestations. (Agreement § I.A.9.)

dismissed without prejudice. Before the Court can assess the propriety of this arrangement, the Court ORDERS further briefing on the structure of this settlement with an explanation as to whether this constitutes a further incentive payment in addition to the up to $10,000 discussed above, including a valuation of the Habitability Claims. The parties should also address the proposed release of Habitability Claims given that the proposed class will not be receiving a settlement amount with respect to those claims.

**2. Vigorous Prosecution**

All indications suggest that Plaintiffs and their counsel have vigorously prosecuted this case and will continue to do so. Counsel has experience with representing and settling class action suits across the nation. (Tomasevic Decl. ¶¶ 2– 7.) Thus, the Court finds that this requirement is satisfied.

* * *

To summarize, the Court finds the Rule 23(a) requirements have largely been met but reserves preliminary approval until further briefing is provided about the proposed Class Representatives.

**E. Rule 23(b) Requirements**

Along with the requirements outlined in Rule 23(a), the Parties must also satisfy the Rule 23(b). The Parties seek certification of the putative class under Rule 23(b)(3). To certify the class, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

The Rule 23(b) predominance requirement is a more demanding test than what is required under Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). In considering whether the questions of fact and law predominate, the Court must determine "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Id.* at 623. The predominance requirement is generally satisfied when a class action challenges a uniform procedure or policy by the defendant. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016).

Here, Plaintiffs' claims turn on Defendants' uniform policies, standardized lease provisions, and common course of conduct. Moreover, Plaintiffs argue that Defendants acted uniformly by using such standardized form leases and have uniformly breached those leases in the same manner with respect to Plaintiffs and the Class Members. *See Zepeda,* 2015 WL 6746913, at *2–3 (finding that predominance existed where the plaintiffs alleged defendants used standardized form contracts and breached them in the same way with respect to the plaintiffs and class members). The Parties also contend that the injunctive relief provided would remedy the conduct underlying the Plaintiffs' claims. Thus, the predominance requirement is satisfied.

**2. Superiority**

The superiority requirement is used to decide whether a class action suit is preferable to other methods by reducing costs and promoting efficiency. *Amchem Prods.,* 521 U.S. at 620. Here, the class members' interests likely favor a class suit as the damages suffered by individual members may be small and the burden of individual litigation may make recovery impossible. Additionally, it is possible that individual recovery in separate suits might be less. *See Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001); Fed. R. Civ. P. 23(b)(3)(B).

As such, common questions of law and fact predominate, and a class action is the superior mechanism for bringing these claims. The requirements of Rule 23(b)(3) are met at this time.

**F. Appointment of Class Counsel & Representatives**

The Court defers its ruling on the appointment of the Class Representatives until the identified issues surrounding the incentive payment and the details of Plaintiffs Leaser and Wongsaroj's separate settlement of claims are resolved.

However, the Court preliminarily approves Class Counsel. Appointment of Class Counsel requires the appointing court to consider, ""(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Here, Plaintiffs seek to appoint Craig M. Nicholas, Alex Tomasevic and Jordan Belcastro of Nicholas & Tomasevic, LLP. Based on the representations made this far, the Court concludes that provisional appointment of Class Counsel is appropriate. (*See* Tomasevic Decl. ¶¶ 5–17.) In particular, Class Counsel have demonstrated that they have experience with class action settlements, and cases involving apartment late fees specifically. (*Id.* ¶ 7.) Thus, the Court approves the firm Nicholas & Tomasevic, LLP and individuals Craig M. Thomas, Alex Tomasevic, and Jordan Belcastro as Class Counsel. (Agreement § I.A.2.)

## II. Preliminary Approval of Proposed Settlement

Under Rule 23(e), a court may approve a class action settlement only if it is a "fair, reasonable, and adequate" resolution of the dispute, considering several factors including, (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). "[P]reliminary approval of a settlement has both a procedural and a substantive component" and is appropriate if: (1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (2) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) (citation omitted). Settlement agreements are

considered as a whole, not by their individual components. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012).

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 610–11 (9th Cir. 2018) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011)). Three oft-cited "red flags" of unfair settlements are (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection, and (3) agreements that permit unpaid fees to revert to defendant (i.e., "reversionary" settlements). *In re Bluetooth*, 654 F.3d at 947 (citations omitted).

Here, the Agreement is non-reversionary and does not appear to include fees making up a disproportionately large part of the distribution to the class. However, the Agreement appears to include a clear sailing provision, wherein Defendants have "agreed to pay Class Counsel, separate and apart from the Late Fee Class Settlement Fund" $387,500. (*See* Agreement § V.B.)

Clear sailing provisions "are not prohibited" but "'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Roes 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1050 (9th Cir. 2019) (citation omitted). As such, "clear sailing agreements on attorneys' fees are important warning signs of collusion," because "[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Id.* at 1051 (citations omitted). When a court is confronted with a clear sailing provision, the district court has "a heighted duty to . . . scrutinize closely the relationship between attorneys' fees and benefit to the class,

because careful to avoid awarding 'unreasonably high' fees simply because they are uncontested. *Id.* (citation omitted).

Here, there are two concerns with the provision outlining attorneys' fees: first, the fact that there is an agreement for a certain amount of fees, and second, that the amount in fees would be separate and apart from the settlement fund. Although Class Counsel represents that the attorney's fee amount was negotiated after class-wide relief was settled, the Court will reserve its final determination until the Parties' motion for attorney's fees and final approval. Class Counsel also explains that the amount it seeks is lower than both the actual fees and the lodestar valuation. The Court will scrutinize the request for attorney's fees and costs at the time of final approval, including conducting a lodestar cross-check to determine if the request is reasonable, especially in light of the clear sailing provision. *See Roes, 1–2*, 944 F.3d at 1051. In the forthcoming Rule 23(h) motion, counsel shall outline the calculations it made in conducting its lodestar check and provide any necessary supporting evidence and data to confirm counsel's assessment. For the lodestar assessment, counsel shall note the differences in the prevailing rates between the Eastern District of California and other districts.

**A. Adequacy of Representation**

Determining the adequacy of representation is an identical inquiry to the one required by Rule 23(a)(4). *Mejia v. Walgreen Co.*, No. 2:19-cv-00218-WBS-AC, 2020 WL 6887749, at *9 (E.D. Cal. Nov. 24, 2020). The Court incorporates the above discussion here and reserves its final judgment as to the proposed Class Representatives until the necessary information has been provided but finds adequate representation as it to Class Counsel.

**B. Arm's Length Negotiation**

The Parties represent that the negotiations were adversarial and at arm's length. The Parties engaged in formal discovery and exchanged relevant information which they argue contributed to meaningful and sophisticated negotiations. (*See*

Hejinian Decl. ¶¶ 10–13; Tomasevic Decl. ¶ 18.) Moreover, the Parties participated in discussions over the course of several months and engaged in a mediation session. (Hejinian Decl. ¶ 10.) Considering these representations, and the efforts to vigorously prosecute this case, the Court finds this factor preliminarily satisfied. Fed. R. Civ. P. 23(e)(2)(B); *see also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020)).

**C. Adequacy of Relief Provided to the Class**

Determining the adequacy of the relief requires the Court to consider four factors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

**1. Costs, Risks and Delay of Trial**

In considering whether the relief provided to class members is adequate, courts compare the relief under the proposed settlement to the best possible outcome for the class. *Rodriguez*, 563 F.3d at 964. The Agreement provides for both monetary and injunctive relief for Class Members.

First, the Agreement provides for a "Late Fee Fund" consisting of $292,960.07 where all Class Members who paid at least one late fee exceeding $55.00 during the Class Period will receive a corresponding Benefit Payment. (Hejinian Decl. ¶ 15.)

However, there is no information about what the potential maximum recovery is for the Class. Absent any such discussion the Court cannot determine whether the agreed upon relief is within the range of recovery. Although the Parties present arguments as to why Plaintiffs and the class would face challenges moving forward, without information about the Defendants' maximum exposure, the Court cannot conduct the inquiry it needs to into whether the relief is adequate. *See Rodriguez,* 563 F.3d at 964 (explaining that courts compare the relief under the proposed settlement to the best possible outcome for the class); *see Botonis v. Bimbo Bakeries*

*USA, Inc.,* No. 2:22-cv-01453-DJC-DB, 2024 WL 100545, at *8–10 (E.D. Cal. Jan. 9, 2024) (comparing the settlement amount to the maximum exposure under plaintiffs' claims). Thus, information about the value of the case, including how actual damages were incurred from the late fee, how the late fee was calculated, and the maximum exposure for Defendants shall be addressed prior to receiving approval.

Additionally, the Parties have agreed to the following injunctive relief: (1) for two years following the date of the Agreement, Defendants' late fee charge for any tenant of Blue Rock Village and Park La Brea "who fails to pay the rent, or any portion of the rent in excess of $55.00, timely shall not exceed $55.00 per monthly charge"; (2) after two years of the Agreement, Defendants' late fee charge for any tenant of Blue Rock Village and Park La Brea who fails to pay the rent timely may be increased, at Defendants' discretion, by no more than the amount equal to the preceding annual increase in the CPI as set forth by the U.S. Bureau of Labor Statistics in the month immediately preceding any such fee increase. (*Id.* § III.B.1.) Further, Defendants will implement and/or maintain procedures to prohibit the assessment of late fees solely on unpaid laid fees at the Properties. (*Id.* § III.B.2.) Finally, Defendants shall implement and/or maintain procedures to ensure compliance with the requirements of California Civil Code § 1950.5 with respect to security deposits at the Properties. (*Id.* § III.B.3.)

The Court preliminarily finds that the injunctive relief as it relates to the late fees is fair and reasonable. Although on its own, such relief may not be considered "meaningful", *see Marshal v. Monster Energy Co.,* No. 14-cv-06311-MWF-PLA, 2016 WL 11758806, at *12 (C.D. Cal. Feb. 29, 2016), the Court is satisfied that other aspects of the Settlement provide sufficient relief for Class Members.

**2. Effectiveness of Proposed Method of Distributing Relief**

In determining the adequacy of the relief provided to the prospective class, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ.

P. 23(e)(2)(C)(ii). The parties have proposed a Notice of Settlement (Notice of Settlement (ECF No. 110-3)), as well as settlement administration procedures in the Settlement Agreement (Agreement § IV.A–B)).

The Notice provides information about the Settlement Agreement, including the Settlement Agreement's terms and expected distribution to putative class members. It also explains what the recipients' options are, the process and deadlines for submitting objections or requesting exclusion and outlines what claims are released if Class Members do not opt out.

However, the Court finds the terms of the settlement as to the amount paid to each Class Member to be ambiguous. While it appears the intent of the parties is to refund Class Members any late fees that were paid exceeding $55.00 (see Class Action Settlement Notice ("Class Notice") (ECF No. 110-3, Ex. 3) at 1), that is not expressly stated in the Settlement Agreement. Moreover, while it may be in error, the description of the payments in the underlying Motion appears to suggest that an *additional* $55.00 will be deducted from the late fees that exceed $55.00 (Mot. at 5 ("Out of the Late Fees Class Settlement Fund, each Settlement Class Member will be paid the amount of any late fee exceeding $55.00 paid between May 9, 2014, and February 18, 2025, less $55.00.").) In their supplemental filing, the parties are directed to clarify this ambiguity.

The Settlement Agreement also provides for injunctive relief, which involves Defendants capping late fees, and limiting fee increases at Blue Rock Village and Park La Brea and implementing and/or maintaining procedures to prohibit assessing late fees solely on unpaid late fees and to comply with security deposit requirements at Blue Rock Village and Park La Brea. This form of relief will presumably apply uniformly without additional steps needed by Class Members.

The Court is satisfied that the proposed methods of distributing relief to class members are effective and are tailored to the strength of individual class member claims. The procedures set by the Settlement Agreement will ensure distribution to all

reasonably ascertainable class members and does not appear to require additional, unnecessary steps to obtain relief.

**3. Terms of Proposed Attorney Award**

The Settlement Agreement provides that $387,500 will be allocated to attorneys' fees and $11,514.26 will be allocated to costs. (Tomasevic Decl. ¶¶ 20, 28.) In settlements that produce a common fund, courts may use either the lodestar method or the percentage-of-recovery method to determine the reasonableness of attorney's fees. *In re Bluetooth,* 654 F.3d at 942. Because "[i]njunctive relief is inherently difficult to monetize," the lodestar method is more appropriate for circumstances where injunctive relief is sought. *See Kim v. Allison,* 8 F.4th 1170, 1180–81 (9th Cir. 2021) (citations omitted). Courts are to consider the fact that counsel obtained injunctive relief in addition to monetary relief as a relevant circumstance in determining what percentage of the fund is reasonable as fees. *See Roes 1–2,* 944 F.3d at 1055–56 (citation omitted). "Only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Id.* at 1056 (citation omitted).

Here, the Parties argue that the amount of fees they request is significantly lower than the actual fees incurred or the amount under lodestar. (Tomasevic Decl. ¶¶ 22, 25.) The Court also considers the fact that injunctive relief has been secured as a consideration in attorneys' fees, although some of the relief is not significant as it compels compliance with existing legal obligations. Moreover, the Agreement contains a clear sailing provision. The Court is also cognizant of the fact that the amount in attorney's fees would be more than the entirety of the amount of the Late Fee Fund. Thus, the Court reserves judgment until further information is provided at final approval.

////

**4. Agreements Made in Connection with the Proposal**

Additionally, the Court considers whether there are other agreements made in connection with the proposed Settlement Agreement. Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). As mentioned above, the Agreement provides that Plaintiffs Leaser and Wongsaroj's Habitability Claims would be dismissed with prejudice and would agree to release and forever discharge the Released Persons from the Habitability Claims in exchange for a total payment of $100,000, inclusive of attorneys' fees and costs. (Agreement § XX.C.)

The Court has concern about this arrangement. Specifically, the Court is troubled that the class may receive less than it would have otherwise received while Plaintiffs Leaser and Wongsaroj would benefit from a significant payment for claims that may not otherwise be worth that amount. Additionally, the lack of clarity as to what becomes of the class members' habitability claims is concerning. The Court requires more information about this separate Agreement, including how the habitability claims were valued, and whether the amount that Plaintiffs Leaser and Wongsaroj is an additional incentive payment.

**D. Equitable Treatment of Class Members**

The fourth factor addresses whether the proposed Settlement Agreement "treats class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers both equity across sub-categories, or segments, of the class, and equity between class representatives and unnamed class members.

Here, the Agreement provides one Late Fee Settlement Fund for the Class. There are no identified distinctions between Class Members. As for the incentive payment, the Court reserves any final conclusion as to whether it is appropriate until more information is provided. Thus, the Court does not determine at this point whether the treatment of Class Members is appropriate.

////

////

**E. Additional Factors**

The Ninth Circuit has articulated other factors not explicitly listed in Rule 23(e)(2) to be considered when determining whether to preliminarily approve a proposed class settlement. *See In re Volkswagen*, 895 F.3d at 610 n.18 (quoting the additional factors listed in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (1998) before the Rule 23(e)(2) factors had been created). Most of these factors, such as the strength of Plaintiff's case, the risk, expense, complexity, and likely duration of further litigation the risk of maintaining class action status throughout the trial, the amount offered in settlement, and the experience and views of counsel, *see id.*, have already been addressed at various points above. The additional factors that have been identified by the Ninth Circuit also weigh in favor of approval.

As to "the extent of discovery completed and the stage of the proceedings[,]" *see In re Volkswagen*, 895 F.3d at 610 n.18, the parties represent that the settlement occurred after "extensive investigation" and "formal and informal discovery." (Tomasevic Decl. ¶ 21; Hejinian Decl. ¶ 12.) This extensive document and data exchange, as it is presented by the parties, is sufficient for this factor to weigh in favor of approval.

There have, thus far, been no objections or requests to opt out of the proposed Agreement. Thus, the "the reaction of the class members to the proposed settlement[,]" *see In re Volkswagen*, 895 F.3d at 610 n.18, also weighs in favor of approval at this stage.

**III. Settlement Administration and Notice to Class**

**A. Settlement Administration**

To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or (for those who remain in the settlement) object to any of the settlement's terms, and were provided the chance to appear at the fairness hearing. Fed. R. Civ. P. 23(e)(1)-(5). To effectuate the settlement procedures identified in the Settlement Agreement

and administer the settlement, Defendants agree to engage Angeion. (Henjian Decl. ¶ 20.) The Agreement provides that Defendants will pay Angeion costs up to and including the amount of $30,000, including costs associated with preparing and disseminating the Class Notice, the cost of providing notice to appropriate federal and state officials as required by CAFA and the costs of distributing all settlement proceeds, if approved by the Court. (Agreement § IV.A.7.) The language of the Agreement indicates that amount designated for Angeion would not be coming out of the settlement fund. Although the maximum potential fee amount is slightly higher than other arrangements approved, *see, e.g., Martinez v. Knight Transp., Inc.,* No. 1:16-cv-01730-SKO, 2023 WL 2655541, at *17 (E.D. Cal. Mar. 27, 2023) (approving a maximum administrator fee of $29,558 for a settlement with a GSA of $400,000), the Court does not find it to be unreasonable and approves Angeion Group, LLC as the Settlement Administrator.

**B. Notice**

**1. CAFA Notice**

CAFA requires that defendants serve appropriate federal and state officials with notice of a proposed class action settlement within ten days of the filing of a motion for preliminary approval. 28 U.S.C § 1715(b). The Preliminary Approval Motion was filed on November 24, 2025, and the CAFA Notice was sent on December 4, 2025. (Bruggebrew Decl. (ECF No. 113) ¶¶ 2, 5.) Angeion issued the required notice to the appropriate federal and state officials and contained the documents and information required by 28 U.S.C. § 1517(b)(1)–(8) to the extent known as of the date of mailing. (*Id.* ¶¶ 3,6.) Thus, the Court finds that the CAFA notice requirement has been satisfied.

**2. Class Members**

When accepting a proposed settlement under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Individuals who would be bound by a settlement

agreement must have the opportunity to remove themselves from the class. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 848 (1999). For settlements under Rule 23(b)(3), the court is required to:

> [D]irect to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, [by] United States mail, electronic means, or other appropriate means, [concerning] the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members. . . .

Fed. R. Civ. P. 23(b)(3); *see also* Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court to provide class members with an opportunity to be excluded from the settlement or object to the terms). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Beginning with the method of Notice, the Agreement provides that no later than seven days before the hearing on the Motion for Preliminary Approval, Defendants will provide to the Settlement Administrator a list of Settlement Class Members, last known addresses, and last known email addresses (if any) for Settlement Class Members, and the amount of Benefit Payments each Settlement Class Member (and any co-lessees, in the aggregate) is entitled pursuant to the Settlement.[3] (Agreement § IV.A.1.) Prior to issuing the Class Notice, the Settlement Administrator shall perform a national change of address and email change of address database review of Settlement Class Members' email addresses. (*Id.*

[3] Because co-lessees may not evenly split their financial responsibilities under the lease, the payment will be made to the Settlement Class Member who is the primary tenant. (*Id.*)

§ IV.A.3.) No later than thirty days after preliminary approval of the Agreement, the Settlement Administrator shall cause the Class Notice to be issued. (*Id.*) If any emails or mailed Class Notices are returned undeliverable, the Settlement Administrator shall promptly notify Class Counsel and attempt to locate the Class Member through a skip trace to identify an alternative electronic or physical mailing address by which to effect notice. (*Id.* § IV.A.4.) If skip trace is successful, the Settlement Administrator shall attempt one additional email and/or one additional physical mail execution for each Class Member. (*Id.*)

Additionally, within twenty days of execution of the Settlement Agreement, the Settlement Administrator shall create a website regarding the settlement using a website name to be mutually agreed upon by the Parties. (*Id.* § IV.B.2.) Prior to the distribution of the Settlement Notice, the Settlement Administrator shall establish an email address and toll-free telephone number for Settlement Class Members to submit inquiries regarding the Agreement. (*Id.* §§ IV.B.3–4.) The Settlement Administrator shall track, compile and report to Defendant's Counsel and Class Counsel each Opt-Out within five business days of receiving from such person a valid and timely exclusion from the Settlement Class that fully complies with the provisions of the Notice of Pendency and Settlement of Class Action. (*Id.* § IV.B.5.) The Court is satisfied with the means of distribution of the Class Notice. *See* Fed. R. Civ. P. 23(b)(3), (e)(4)–(5).

The content of the Class Notice describes the nature of the lawsuit and generally outlines the claims at issue. The Notice also defines the class, explains the amount that an individual Class Member would receive and that the amount they would receive is calculated based on the difference between the actual late fee paid and the agreed late fee amount of $55.00. (Class Notice at 1.) The Notice further explains the amount that will be paid to Class Counsel and the amount paid in incentive fees will not come from the Class Fund. (*Id.* at 4.) Additionally, the Notice describes how a class member can object to the settlement, what happens if a class

member excludes themselves and discloses the date and time of the final fairness hearing. (*Id.* at 4–6.) As for information about Class Counsel, the Notice details their contact information, explains that Class Members will not be charged for these lawyers and that if a Class Member wishes to be represented by their own counsel, they may do so at their own expense. (*Id.* at 4.)

Overall, the Notice largely complies with the requirements under Rule 23. However, the Court requires the following changes:

- On the cover page, there should be language explaining that the individual is receiving the Notice <u>because</u> they were identified as a Class Member.
- On page 2, under the heading "[h]ow can I get a benefit?" the Parties shall include more specific information the methods by which a Class Member can receive their payment. Currently, the statement that the funds "will be distributed by the claims administrator to the Settlement Class Members who do not exclude themselves" is too general.
- On pages 4 and 5, there is a sentence that reads, "If you file an objection, Class Counsel or counsel for Prime may take your deposition and seek evidence from you that is relevant to your objection." The Court finds that this language is unnecessarily deterring and shall strike "counsel for Prime" and include limiting language.
- In describing the relief, the Parties shall include a description of the injunctive relief was reached in the Settlement.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT:

1. The Joint Motion for Preliminary Approval of Settlement (ECF No. 110) is GRANTED as to:
    a. Approval of the following counsel as adequate to serve as Class Counsel for the Settlement Class: Craig M. Nicholas, Alex Tomasevic, Jordan Belcastro from Nicholas & Tomasevic, LLP;

b. Approval of Angeion Group, LLC as the Settlement Administrator;

c. Approval of the proposed method of distribution of the Class Notice.

2. The Joint Motion for Preliminary Approval of Settlement is DENIED without prejudice as to:

a. Certification of the Settlement Class pursuant to Rule 23 for settlement purposes only;

b. Approval of the Settlement Agreement as fair, reasonable, and adequate;

c. Approval of named Plaintiffs Nicha Leaser, Atchara Wongsaroj, Katina Magee, and Joyce Eiseman as Class Representatives;

d. Approval of the form of the Class Notice.

3. The Parties are ORDERED to submit supplemental briefing addressing the issues identified by the Court and are ORDERED to submit a revised Notice in accordance with this Order. The Parties shall file their supplemental briefing within 28 days of this Order.

IT IS SO ORDERED.

Dated: **August 21, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – LEASER20cv02502.pacs_v4